# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| SBARRO, INC., *et al.*,[1] | ) Case No. 11-11527 (SCC) |
|  | ) |
| Debtors. | ) Joint Administration Requested |
|  | ) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION LENDERS, (III) SCHEDULING A FINAL HEARING AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***"), dated April 4, 2011, of Sbarro, Inc. (the "***Borrower***") and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the "***Debtors***"), in the above-captioned cases (the "***Cases***") pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "***Bankruptcy Code***"); rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"); and rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***"), seeking, among other things:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sbarro, Inc. (1939); Holdings (3819); Carmela's of Kirkman Operating, LLC (1182); Carmela's of Kirkman LLC (7703); Carmela's, LLC (8088); Corest Management, Inc. (9134); Demefac Leasing Corp. (2379); Larkfield Equipment Corp. (7947); Las Vegas Convention Center LLC (7645); Sbarro America Properties, Inc. (9540); Sbarro America, Inc. (9130); Sbarro Blue Bell Express LLC (1419); Sbarro Commack, Inc. (4007); Sbarro Express LLC (0253); Sbarro New Hyde Park, Inc. (6185); Sbarro of Las Vegas, Inc. (2853); Sbarro of Longwood, LLC (0328); Sbarro of Virginia, Inc. (2309); Sbarro Pennsylvania, Inc. (3530); Sbarro Properties, Inc. (9541); Sbarro Venture, Inc. (3182); Sbarro's of Texas, Inc. (5139); Umberto at the Source, LLC (8024); Umberto Deer Park, LLC (8728); Umberto Hauppauge, LLC (8245); Umberto Hicksville, LLC (0989); Umberto Huntington, LLC (8890); and Umberto White Plains, LLC (8159). The Debtors' service address is: 401 Broadhollow Road, Melville, New York 11747.

(1)     authorization for the Borrower to obtain post-petition financing (the "*Financing*"), and for each of the other Debtors (the "*Guarantors*") to guaranty the Borrower's obligations in connection with the Financing, up to the aggregate principal amount of $35,000,000 (the actual available principal amount at any time being subject to those conditions set forth in the DIP Documents (as defined below)), from Cantor Fitzgerald Securities ("*CFS*"), acting as Administrative Agent and Collateral Agent (in such capacity, the "*DIP Agent*"), for itself and any future syndicate of financial institutions (the "*DIP Lenders*") to be arranged by CFS (the "*Lead Arranger*");

(2)     authorization for the Debtors to execute and enter into the DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

(3)     the granting of adequate protection to (i) the lenders (the "*Pre-Petition First Lien Lenders*") under or in connection with that certain Credit Agreement, dated as of January 31, 2007 (as heretofore amended, supplemented or otherwise modified, the "*First Lien Credit Agreement*"), by and among MidOcean SBR Acquisition Corp., the Borrower, Sbarro Holdings, LLC ("*Holdings*"), the lenders party thereto, CFS, as successor to Bank of America, N.A. ("*BofA*"), as administrative agent for the Pre-Petition First Lien Lenders (the "*Pre-Petition First Lien Agent*"), and BofA as collateral agent (the "*Pre-Petition First Lien*

2

*Collateral Agent*") and that certain Security Agreement, dated as of January 31, 2007, by and among the Borrower, BofA as collateral agent, and the other parties thereto (as heretofore amended, supplemented or otherwise modified, the "*Security Agreement*" and, collectively with the First Lien Credit Agreement, the Guaranty (as defined in the First Lien Credit Agreement) and all other Loan Documents (as defined in the First Lien Credit Agreement, the "*Pre-Petition First Lien Documents*"), or any other documents governing Finance Obligations as defined in the First Lien Credit Agreement, the "*Pre-Petition First Lien Facility*"), and (ii) the lenders (the "*Pre-Petition Second Lien Lenders*" and together with the Pre-Petition First Lien Lenders, the "*Pre-Petition Lenders*") under or in connection with that certain Second Lien Credit Agreement, dated as of March 26, 2009 (as heretofore amended, supplemented or otherwise modified, the "*Second Lien Credit Agreement*" and together with the Pre-Petition First Lien Facility, the "*Pre-Petition Facilities*"), by and among the Borrower, Holdings, the lenders party thereto, and Wilmington Trust FSB ("*Wilmington*"), as successor to Natixis, New York Branch as administrative agent and collateral agent for the Pre-Petition Second Lien Lenders (the "*Pre-Petition Second Lien Agent*" and together with the Pre-Petition First Lien Agent, the "*Pre-Petition Agents*"), in each case, whose liens and security interests are being primed by the Financing;

3

(4)     authorization for the Debtors to use cash collateral (as such term is defined in the Bankruptcy Code) in which the Pre-Petition Lenders have an interest, and the granting of adequate protection to the Pre-Petition Lenders with respect to, inter alia, such use of their cash collateral and all use and diminution in the value of the Pre-Petition Collateral (as defined below);

(5)     approval of certain stipulations by the Debtors with respect to the Pre-Petition First Lien Facility and the liens and security interests arising therefrom;

(6)     the granting of superpriority claims to the DIP Lenders payable from, and having recourse to, all pre-petition and post-petition property of the Debtors' estates and all proceeds thereof (including, subject only to and effective upon entry of a Final Order (as defined below), any Avoidance Proceeds (as defined below)), subject to the Carve-Out (as defined below);

(7)     subject only to and effective upon entry of a final order granting such relief and such other relief as provided herein and in such final order, the limitation of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code;

(8)     pursuant to Bankruptcy Rule 4001, that an interim hearing (the "***Interim Hearing***") on the Motion be held before this Court to consider entry of the proposed interim order annexed to the Motion (the

4

"*Interim Order*") (a) authorizing the Borrower, on an interim basis, to obtain the Financing forthwith (subject to any limitations of borrowings under the DIP Documents) to provide operating cash for the Debtors: (i) $20,000,000 under a term loan borrowing, with $16,500,000 to be made available to the Borrower in a single draw upon entry of this Interim Order and the balance of $3,500,000 to be made available to the Borrower in a single draw within one business day following the entry of the Final Order and (ii) delayed-draw term loan borrowings in the aggregate amount of $15,000,000, which shall be made available to the Borrower until the Termination Date, either (A) in a single draw upon 3 business days' notice as a delayed-draw term loan or (B) in two draws of $7.5 million each upon 5 business days' notice, (b) authorizing the Debtors' use of cash collateral, and (c) granting the adequate protection described herein; and

(9)     that this Court schedule a final hearing (the "*Final Hearing*") to be held within 40 days of the entry of this Interim Order to consider entry of a final order (the "*Final Order*") authorizing the balance of the borrowings under the DIP Documents on a final basis, as set forth in the Motion and the DIP Documents filed with this Court.

(10)     due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtors on the forty largest unsecured creditors of each of the Debtors, on the DIP Agent, the DIP Lenders, the Pre-Petition Agents, the Pre-Petition

Lenders and the United States Trustee for the Southern District of New York.

(11)   the Interim Hearing having been held by this Court on April 5, 2011.

(12)   upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.   *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.   *Notice*.  Under the circumstances, the notice given by the Debtors of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(b) and (c) and Local Rule 4001-2.

3.   *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 18 and 23 below), the Debtors admit, for themselves but not their estates, stipulate and agree that:

(a)   (i) as of the filing of the Debtors' chapter 11 petitions (the "***Petition Date***"), the Borrower was indebted and liable to the Pre-Petition First Lien Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $172,697,500.00 in respect of revolving and term loans made and in the aggregate principal amount of approximately $3,470,611.53 in respect of

6

letters of credit issued and outstanding, in each case, by the Pre-Petition First Lien Lenders pursuant to, and in accordance with the terms of, the Pre-Petition First Lien Facility, plus, in each case, interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Pre-Petition First Lien Facility), charges and other obligations incurred in connection therewith as provided in the Pre-Petition First Lien Facility (collectively, the "***Pre-Petition First Lien Debt***"), (ii) the Pre-Petition First Lien Debt constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and (iii) no portion of the Pre-Petition First Lien Debt is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and

(b)        the liens and security interests granted to the Pre-Petition First Lien Agent pursuant to and in connection with the Pre-Petition First Lien Facility (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Pre-Petition First Lien Agent, for its benefit and for the benefit of the Pre-Petition First Lien Lenders), are (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the personal and real property described in the Pre-Petition First Lien Facility (the "***Pre-Petition Collateral***"); (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined

7

below) to which the DIP Liens are subject and (C) any valid, perfected and unavoidable liens permitted under the Pre-Petition First Lien Facility to the extent such permitted liens are senior to or pari passu with the liens of the Pre-Petition First Lien Agent on the Pre-Petition Collateral.

4.     *Findings Regarding the Financing.*

(a)     Good cause has been shown for the entry of this Interim Order.

(b)     The Debtors have an immediate need to obtain the Financing and use Cash Collateral (as defined below) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs. The access by the Debtors to sufficient working capital and liquidity through the use of Cash Collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out as provided for herein, the DIP Liens and the Superpriority Claims (as defined

8

below) under the terms and conditions set forth in this Interim Order and in the DIP Documents.

(d)     The terms of the Financing and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The Financing has been negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including, without limitation, (i) all loans made to the Debtors pursuant to the credit agreement (the "*DIP Credit Agreement*") and guaranteed by the Debtors pursuant to the guaranty, substantially in the forms attached as an exhibit to the DIP Credit Agreement and (ii) any other Senior Credit Obligations (as defined in the DIP Credit Agreement), in each case owing to the DIP Agent, any DIP Lender or any of their respective banking affiliates (all of the foregoing in clauses (i) and (ii) collectively, the "*DIP Obligations*"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)     The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) and Local Rule 4001-2.  Absent the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the Financing and the use of Cash Collateral in accordance with this Interim Order and the DIP Documents is therefore in the best interest of the Debtors' estates.

5.     *Authorization of the Financing and the DIP Documents.*

(a)     The Debtors are hereby authorized to enter into the DIP Documents.  The Borrower is hereby authorized to borrow money pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guaranty such borrowings and the Borrower's obligations with respect to such borrowings up to $16,500,000 upon entry of this Interim Order and,  subject to entry of the Final Order, an aggregate principal or face amount of $35,000,000 (plus interest, fees and other expenses and amounts provided for in the DIP Documents), in accordance with the terms of this Interim Order and the DIP Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, to provide working capital for the Borrower and the Guarantors, for other general corporate purposes and to pay interest, fees and expenses in accordance with this Interim Order and the DIP Documents.

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all

fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the Financing, including, without limitation:

(i)     the execution, delivery and performance of the Loan Documents (as defined in the DIP Credit Agreement) and any exhibits attached thereto, including, without limitation, the DIP Credit Agreement, the Collateral Documents (as defined in the DIP Credit Agreement) and any mortgages contemplated thereby (collectively, and together with the letter agreements referred to in clause (iii) below, the "***DIP Documents***");

(ii)     the execution, delivery and performance of one or more amendments to the DIP Credit Agreement for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the Financing among the DIP Lenders, in each case in such form as the Debtors, the DIP Agent and the DIP Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to the DIP Credit Agreement that do not shorten the maturity of the extensions of credit thereunder or increase the commitments or the rate of interest payable thereunder);

(iii)     the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of the fees referred to in the DIP Credit Agreement (and in the separate letter agreements between them in connection with the Financing) and reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the DIP Documents; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with their terms.   No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(d)    The Pre-Prepetition Second Lien Agent and the Pre-Petition Second Lien Lenders are deemed to have consented to the Debtors' execution of the DIP Documents and the DIP Facility provided thereunder pursuant to section 6.1(a) of the Intercreditor Agreement.

6.    *Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the

12

Bankruptcy Code (the "***Superpriority Claims***"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, subject only to the Carve-Out to the extent specifically provided for herein.

(b)     For purposes hereof, the "***Carve-Out***" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $100,000 and (iii) (A) at any time after the first business day after the occurrence and during the continuance of an Event of Default (as defined in the DIP Credit Agreement) and delivery of a notice by the DIP Agent stating that such notice constitutes a "Carve Out Notice" (a "***Carve-Out Notice***") to (w) the United States Trustee for the Southern District of New York, (x) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attention: Jason Kanner, Esq. and Edward Sassower, Esq.), (y) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attention: Jinsoo Kim, Esq. and Timothy Graulich, Esq.) and (z) counsel for any Official Committee of Unsecured Creditors appointed in the chapter 11 cases (the "***Creditors' Committee***"), to the extent allowed at any time, whether before or after delivery of a Carve-Out Notice, whether by interim order, procedural order or otherwise, all professional fees, costs and expenses incurred or accrued by persons or firms retained by the Debtors and any statutory committees appointed in the chapter 11 cases (each a

13

"*Committee*") (but excluding fees and expenses of third party professionals employed by such Committees' members) and allowed by the Bankruptcy Court at any time (collectively, the "*Professional Fees*") in an aggregate amount not exceeding $4,000,000 (the "*Carve-Out Cap*"), plus all (B) unpaid Professional Fees allowed by the Bankruptcy Court at any time that were incurred on or prior to the day immediately following the business day after delivery of the Carve-Out Notice; *provided*, *however*, that (x) the dollar limitation in the clause 6(b)(iii)(A) on fees and expenses shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid prior to the delivery of a Carve-Out Notice or by any fees, expenses, indemnities or other amounts paid to the DIP Agent or any DIP Lender or such party's respective attorneys and agents under the DIP Credit Agreement or otherwise and (y) immediately upon delivery of a Carve-Out Notice, the Debtors shall be required to transfer from their concentration account to a segregated account (the "*Carve-Out Account*") not subject to the control of the DIP Agent an amount equal to the Carve-Out Cap, which segregated account funds shall be available only to satisfy obligations benefitting from the Carve-Out, and the DIP Agent and the DIP Lenders (1) shall not sweep or foreclose on cash of the Debtors necessary to fund the Carve-Out Account and (2) shall have a security interest in any residual interest in the Carve-Out Account available following satisfaction in full of all obligations benefitting from the Carve-Out. Nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (i), (ii) and (iii) above. Notwithstanding anything to the contrary in this Interim DIP Order, all liens and

14

claims granted pursuant to the Interim DIP Order, as well as all liens and claims granted pursuant to any Pre-Petition Facility, shall be subject to the Carve-Out.

7.     *DIP Liens*.

As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Agent of, or over, any Collateral (as defined below), the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below, including, without limitation the Pre-Petition Collateral, being collectively referred to as the "***Collateral***"), subject, only in the event of the occurrence and during the continuance of an Event of Default, to the payment of the Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders and the Senior Credit Parties (as defined in the DIP Credit Agreement) pursuant to this Interim Order and the DIP Documents, the "***DIP Liens***"):

(a)     <u>First Lien on Cash Balances and Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to valid, perfected and non-avoidable liens (collectively, "***Unencumbered Property***"), including, without

15

limitation, all cash and cash collateral of the Debtors (whether maintained with the DIP Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing. Unencumbered Property shall exclude the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "*Avoidance Actions*"), but subject only to and effective upon entry of the Final Order, shall include any proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions, whether by judgment, settlement or otherwise ("*Avoidance Proceeds*"). Notwithstanding anything contained herein to the contrary, the Borrower and the Guarantors shall not be required to pledge to the DIP Agent in excess of 65% of the voting capital stock of its first tier foreign subsidiaries (if, in the reasonable judgment of the Borrower, a pledge of a greater percentage could result in material adverse tax consequences to the Borrower).

(b) <u>Liens Priming Pre-Petition Lenders' Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition

16

Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to the existing liens presently held by the Pre-Petition Lenders (including in respect of issued but undrawn letters of credit). Such security interests and liens shall be senior in all respects to the interests in such property of the Pre-Petition Lenders arising from current and future liens of the Pre-Petition Lenders (including, without limitation, adequate protection liens granted hereunder), but shall not be senior to any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Pre-Petition Lenders become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c)     <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all pre- and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 7, as to which the liens and security interests in favor of the DIP Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected

17

subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent are junior to such valid, perfected and unavoidable liens.

(d) <u>Liens Senior to Certain Other Liens</u>. The DIP Liens and the Adequate Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors.

(e) The Pre-Prepetition Second Lien Agent and the Pre-Petition Second Lien Lenders are deemed to have consented to the adequate protection provided to the Pre-Petition First Lien Lenders in this Interim Order pursuant to section 6.1(a) of the Intercreditor Agreement.

8. *Protection of DIP Lenders' Rights.*

(a) Subject to the provisions of paragraph 17(b) of this Interim Order, so long as there are any borrowings or other amounts (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid) outstanding, or the DIP Lenders have any Commitment (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Pre-Petition Agents and the Pre-Petition Lenders shall (i) have no right to and take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Pre-Petition Facilities or this

18

Interim Order, or otherwise seek or exercise any enforcement rights or remedies against any Collateral or in connection with any of the Adequate Protection Liens, including, without limitation, in respect of the occurrence or continuance of any event of default (as defined in the First Lien Credit Agreement and the Second Lien Credit Agreement, respectively), except to the extent authorized by an order of this Court, (ii) be deemed to have consented to any release of Collateral authorized under the DIP Documents, (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the Collateral unless, solely as to this clause (iii), the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the date of filing and (iv) deliver or cause to be delivered, at the Debtors' costs and expense (for which the Pre-Petition Lenders shall be reimbursed upon submission to the Debtors of invoices or billing statements), any termination statements, releases and/or assignments (to the extent provided for herein) in favor of the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of the Adequate Protection Liens on any portion of the Collateral subject to any sale or disposition approved or arranged for by the DIP Agent; and

(b)     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (i) upon the occurrence of an Event of Default (as defined in the

K&E 18687842

DIP Credit Agreement), and seven days' prior written notice to the Debtors (with a copy to counsel to the Creditors' Committee and to the U.S. Trustee), all rights and remedies under the DIP Documents other than those rights and remedies against the Collateral as provided in clause (ii) below and (ii) upon the occurrence and during the continuance of such an Event of Default and seven days' prior written notice to the extent provided for in the DIP Credit Agreement, all rights and remedies against the Collateral (A) provided for in the DIP Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender) or (B) of the Pre-Petition First Lien Collateral Agent provided for in the Pre-Petition First Lien Credit Agreement. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors and Pre-Petition Lenders shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Interim Order or the DIP Documents. In no event shall the DIP Agent, the DIP Lenders, the Pre-Petition First Lien Agent or the Pre-Petition First Lien Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

9.      *Limitation on Charging Expenses Against Collateral*.  Subject only to and effective upon entry of the Final Order, and to the extent provided for therein, except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other

proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent or the Pre-Petition First Lien Agent, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Pre-Petition First Lien Agent, the Pre-Petition First Lien Lenders, or any other party.

10. *The Cash Collateral*. To the extent any funds were on deposit with any Pre-Petition Lender as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with any Pre-Petition Lender immediately prior to the filing of the Debtors' bankruptcy petitions (the "***Petition Time***") (regardless of whether, as of the Petition Time, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "***Deposited Funds***") are subject to rights of setoff. By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of such Pre-Petition Lenders pursuant to sections 506(a) and 553 of the Bankruptcy Code. The Pre-Petition First Lien Lenders are obligated, to the extent provided in the Pre-Petition First Lien Facility, to share the benefit of such liens and setoff rights with the other Pre-Petition First Lien Lenders party to such Pre-Petition First Lien Facility. Similarly, the Pre-Petition Second Lien Lenders are obligated, to the extent provided in the Intercreditor Agreement (as defined below), to pay over any recovery or proceeds from such liens and setoff rights to the Pre-Petition First Lien Agent for the benefit of the Pre-Petition First Lien Lenders. Any proceeds of the Pre-Petition Collateral (including the Deposited Funds or any other funds on deposit at any of the Pre-

K&E 18687842

Petition Lenders or at any other institution as of the Petition Date) are cash collateral of the Pre-Petition First Lien Lenders within the meaning of section 363(a) of the Bankruptcy Code. The Deposited Funds, together with such other cash collateral of any of the Pre-Petition Lenders within the meaning of section 363(a) of the Bankruptcy Code (including, without limitation, all proceeds of Pre-Petition Collateral), are referred to herein as "*Cash Collateral*."

11. *Use of Cash Collateral.* The Debtors are hereby authorized, subject to the terms and conditions of the DIP Documents, to use all Cash Collateral of the Pre-Petition Lenders, and the Pre-Petition Lenders are directed promptly to turn over to the Debtors all Cash Collateral received or held by them; *provided* that the Pre-Petition Lenders are granted adequate protection as provided herein. The Debtors' right to use Cash Collateral shall terminate automatically on the Maturity Date (as defined in the DIP Credit Agreement). In addition, if the Borrower voluntarily terminates the Commitment prior to the Maturity Date, the Debtors shall, for the benefit of the Pre-Petition First Lien Lenders, continue to comply with the requirements of Articles 6 and 7 of the DIP Credit Agreement and, upon any failure by the Debtors to observe any such requirement or upon the occurrence of any event that would have constituted an Event of Default under the DIP Credit Agreement prior to the termination of the Commitments in their entirety, the Pre-Petition First Lien Agent on behalf of the Pre-Petition First Lien Lenders shall have the immediate right unilaterally to terminate the Debtors' right to use Cash Collateral, subject to giving five days prior written notice to the Debtors (with a copy to counsel to the Creditors' Committee and to the U.S. Trustee), it being understood that all parties

22

reserve all rights to challenge such termination and/or seek the continued use of Cash Collateral under the same, similar or different terms as the Court shall determine at such time.

12. *Pre-Petition First Lien Lenders' Adequate Protection.* The Pre-Petition First Lien Lenders are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Pre-Petition First Lien Lenders' interest in the Pre-Petition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition First Lien Agent's security interests and liens in the Pre-Petition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. As adequate protection, the Pre-Petition First Lien Agent and the Pre-Petition First Lien Lenders are hereby granted the following (collectively, the "***Senior Adequate Protection Obligations***"):

(a) <u>Senior Adequate Protection Liens</u>. The Pre-Petition First Lien Agent (for itself and for the benefit of the Pre-Petition First Lien Lenders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all the Collateral, subject and subordinate only to (i) the security interests

23

and liens granted to the DIP Agent for the benefit of the DIP Lenders in this Interim Order and pursuant to the DIP Documents and any liens on the Collateral to which such liens so granted to the DIP Agent are junior and (ii) the Carve-Out (such liens, the "*Senior Adequate Protection Liens*"). Without limiting the generality of the foregoing, (A) the Senior Adequate Protection Liens granted to the Pre-Petition First Lien Lenders hereunder shall be senior to all Junior Adequate Protection Liens upon and in the Collateral; (B) until such time as all of the DIP Obligations are indefeasibly paid in full in cash in accordance with the DIP Documents and this Interim Order, the Pre-Petition First Lien Lenders shall have no right to seek or exercise any enforcement rights or remedies in connection with the Senior Adequate Protection Liens, including, without limitation, in respect of the occurrence or continuance of any Event of Default (as defined in the First Lien Credit Agreement); (C) the Pre-Petition First Lien Lenders shall be deemed to have consented to the Financing (which Financing shall constitute a DIP Financing as defined in the intercreditor agreement dated as of March 26, 2009 by and between BofA as collateral agent under the First Lien Credit Agreement and the Pre-Petition Second Lien Agent as collateral agent under the Second Lien Credit Agreement (the "*Intercreditor Agreement*")); (D) the Pre-Petition First Lien Lenders shall be deemed to have consented to any sale or disposition of Collateral approved by, or arranged for or by, the Pre-Petition Agent at the direction of the Required Lenders (as defined in the First Lien Credit Facility) and shall terminate and release, upon any such sale or disposition, all of their liens on and security interests in such Collateral; and (E) the Pre-Petition First Lien Lenders shall deliver or cause to be delivered, at the Debtors' costs and expense (for

24

which the Pre-Petition First Lien Lenders shall be reimbursed upon submission to the Debtors of invoices or billing statements), any termination statements, releases or other documents necessary to effectuate and/or evidence the release and termination of the Pre-Petition First Lien Lenders' liens on or security interests in any portion of the Collateral subject to any sale or disposition approved or arranged for by the DIP Agent.

(b)     Section 507(b) Claim.  The Pre-Petition First Lien Agent and the Pre-Petition First Lien Lenders are hereby granted, subject to the payment of the Carve-Out, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the claims under section 364(c)(1) of the Bankruptcy Code held by the DIP Agent and the DIP Lenders; *provided, however*, that the Pre-Petition First Lien Agent and the Pre-Petition First Lien Lenders shall not receive or retain any payments, property or other amounts in respect of the superpriority claims under section 507(b) of the Bankruptcy Code granted hereunder or under the Pre-Petition First Lien Facility, unless and until the DIP Obligations have indefeasibly been paid in cash in full.

(c)     Interest, Fees and Expenses.  The Pre-Petition First Lien Agent shall receive from the Debtors (i) immediate cash payment of all accrued and unpaid interest on the Pre-Petition First Lien Debt and letter of credit fees at the contractual default rates provided for in the Pre-Petition First Lien Facility, and all other accrued and unpaid fees and disbursements (including, but not limited to, fees owing to the Pre-Petition Lien Agent and the reasonable fees and disbursements of counsel, financial and other consultants for the Pre-Petition First Lien Agent) owing to the Pre-Petition First Lien Agent under the Pre-Petition First Lien Facility and incurred prior to the Petition

25

Date; (ii) current cash payments of all fees and expenses payable to the Pre-Petition First Lien Agent under the terms of the Pre-Petition First Lien Facility (including, but not limited to, fees owing to the Pre-Petition First Lien Agent and the reasonable fees and disbursements of counsel and one financial advisor for the Pre-Petition First Lien Agent) promptly upon receipt of invoices therefor, provided, however, for the avoidance of doubt, that the Debtors shall compensate Conway Del Genio Gries & Co, LLC ("***CDG***") as the financial advisor for the Pre-Petition First Lien Agent in the amounts set forth in the engagement letter dated December 22, 2010 (as supplemented on April 1, 2011) between CDG and Davis Polk & Wardwell LLP; and (iii) on the first business day of each month, all accrued but unpaid interest on the Pre-Petition First Lien Debt and letters of credit and other fees at the contractual default rate applicable on the Petition Date (including LIBOR pricing options available in accordance with the Pre-Petition First Lien Facility) under the Pre-Petition First Lien Facility.

(d)     Information.  The Debtors shall provide the Pre-Petition First Lien Agent with any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Agent or the DIP Lenders.

(e)     Payment from Proceeds of Disposition of Collateral.  If all DIP Obligations shall have been indefeasibly paid in full and all Commitments terminated in their entirety, then the proceeds from asset sales shall be used to repay the Pre-Petition First Lien Debt.  If all DIP Obligations shall have been indefeasibly paid in full and all Commitments terminated in their entirety and all of the Pre-Petition First Lien Debt has

been indefeasibly paid in full, then the proceeds from asset sales shall be used to repay the Pre-Petition Second Lien Debt.

(f)      Successor Collateral Agent.

(i)      Pursuant to that certain Successor First Lien Agent Agreement dated as of April [1], 2011, by and among the Borrower, Holdings, certain other Debtors, CFS, BofA and certain Pre-Petition First Lien Lenders (the "**Successor Agreement**"), CFS shall, upon the occurrence of the Collateral Agency Effective Date (as defined in the Successor Agreement), succeed BofA as the Pre-Petition First Lien Collateral Agent.

(ii)      Upon the Collateral Agency Effective Date, BofA is hereby authorized and directed to assign to CFS, pursuant to section 2(b) of the Successor Agreement, each of the Pre-Petition First Lien Lenders' liens and security interests granted to BofA under the Pre-Petition First Lien Documents, and CFS is hereby authorized and directed to assume all such liens, for its benefit and for the ratable benefit of all other secured parties, including the Pre-Petition First Lien Lenders, under the Pre-Petition First Lien Documents.  Such assignment and transfer shall have no effect on the validity, priority and perfection of such liens and security interests.

(iii)      Subject to the terms of the Pre-Petition First Lien Documents, pursuant to sections 362(b)(3) and 546(e)(2)of the Bankruptcy Code, and without further order of this Court or action by the

27

Debtors (except as may be required pursuant to the Successor Agreement), CFS is hereby authorized and directed to take all steps that it believes to be necessary or appropriate to maintain the perfection of the Pre-Petition First Lien Lenders' interests in and liens on the Collateral, including without limitation, by (A) filing or recording financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction; (B) entering into deposit account control agreements with the Debtors' depositary bank(s) (or assignment thereof); and (C) taking possession of or control over any of the Collateral.

13.     *Pre-Petition Second Lien Lenders' and Agent's Adequate Protection.* The Pre-Petition Second Lien Lenders and the Pre-Petition Second Lien Agent are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest (if any) in the Pre-Petition Collateral, for and equal in amount to the aggregate diminution in value of the Pre-Petition Second Lien Lenders' and the Pre-Petition Second Lien Agent's interests in the Pre-Petition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Pre-Petition Collateral, the priming pursuant to the DIP Documents and this Interim Order of the Pre-Petition Second Lien Lenders' and the Pre-Petition Second Lien Agent's security interests and liens in the Pre-Petition Collateral by the DIP Agent, the Pre-Petition First Lien Agent, the DIP Lenders and the Pre-Petition First Lien Lenders, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "***Junior Adequate Protection Obligations***" and together with the Senior

28

Adequate Protection Obligations, the "***Adequate Protection Obligations***"). The Pre-Petition Second Lien Lenders and the Pre-Petition Second Lien Agent shall be granted valid, binding, continuing, enforceable, fully-perfected junior security interests in and liens upon all of the Collateral (collectively, the "***Junior Adequate Protection Liens***" and together with the Senior Adequate Protection Liens, the "***Adequate Protection Liens***"). Without limiting the generality of the foregoing, (i) the Junior Adequate Protection Liens granted to the Pre-Petition Second Lien Lenders and the Pre-Petition Second Lien Agent hereunder shall be junior and subordinate in all respects to the Pre-Petition First Lien Lenders' liens and security interests (including, without limitation, the Pre-Petition First Liens and the Senior Adequate Protection Liens) upon and in the Collateral; (ii) the Junior Adequate Protection Liens shall be junior and subordinate in right of payment to all Senior Adequate Protection Obligations; (iii) until such time as all of the DIP Obligations and Senior Adequate Protection Obligations are indefeasibly paid in full in cash in accordance with the DIP Documents, the Pre-Petition First Lien Documents and this Interim Order, the Pre-Petition Second Lien Lenders and the Pre-Petition Second Lien Agent shall have no right to seek or exercise any enforcement rights or remedies in connection with the Junior Adequate Protection Liens, including, without limitation, in respect of the occurrence or continuance of any Event of Default (as defined in the Second Lien Credit Agreement); (iv) the Pre-Petition Second Lien Lenders and the Pre-Petition Second Lien Agent shall be deemed to have consented to any sale or disposition of Collateral approved by, or arranged for or by, the Pre-Petition First Lien Agent, and shall terminate and release upon any such sale or disposition all of its liens on and

29

security interests in such Collateral; and (v) the Pre-Petition Second Lien Lenders and the Pre-Petition Second Lien Agent shall deliver or cause to be delivered, at the Debtors' costs and expense (for which the Pre-Petition Second Lien Lenders and the Pre-Petition Second Lien Agent shall be reimbursed upon submission to the Debtors of invoices or billing statements), any termination statements, releases or other documents necessary to effectuate and/or evidence the release and termination of the Pre-Petition Second Lien Lenders' and the Pre-Petition Second Lien Agent's security interests in or liens on any portion of the Collateral subject to any sale or disposition approved or arranged for by the Pre-Petition First Lien Agent. Pursuant to sections 6.01 and 6.02 of the Intercreditor Agreement, the Pre-Petition Second Lien Lenders and the Pre-Petition Second Lien Agent are deemed to have consented to the adequate protection set forth herein. The Debtors shall provide the Pre-Petition Second Lien Lenders and the Pre-Petition Second Lien Agent with any written financial information or periodic reporting that is provided to, or required to be provided to, the Pre-Petition First Lien Agent, the DIP Agent or the DIP Lenders.

14.     *Funding of Carve-Out Account*.  Notwithstanding anything to the contrary herein, following delivery of a Carve-Out Notice and prior to any further payment to any Pre-Petition Agent or to any Pre-Petition Lender, the Carve-Out Account shall have been fully funded.

15.     *Reservation of Rights of Pre-Petition First Lien Lenders*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate

protection provided herein is reasonable and sufficient to protect the interests of the Pre-Petition Lenders; *provided* that the Pre-Petition First Lien Agent and the Pre-Petition First Lien Lenders may request further or different adequate protection, and the Debtors or any other party may contest any such request. Except as expressly provided herein, nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Pre-Petition First Lien Agent, any Pre-Petition First Lien Lender, the DIP Agent or any DIP Lender, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement, if any, with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).

16.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     Subject to the provisions of paragraph 8(a) above, the DIP Agent, the DIP Lenders, the Pre-Petition Agents and the Pre-Petition Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect, the liens and security interests granted to them hereunder. Whether or not the DIP Agent or the Pre-Petition Agents on behalf of their respective lenders shall, in their sole discretion (subject to the provisions of paragraph 8(a) above), choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection

31

of, the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order. Upon the request of the DIP Agent, the Pre-Petition Agents and the Pre-Petition Lenders, without any further consent of any party, are authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce any DIP Liens.

(b)     A certified copy of this Interim Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

(c)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or

32

sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP Documents or this Interim Order.

17.     *Preservation of Rights Granted Under this Interim Order.*

(a)     Other than those allowed in this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to any of (i) the DIP Agent and the DIP Lenders or (ii) the Pre-Petition First Lien Agent and the Pre-Petition First Lien Lenders shall be granted or allowed while any portion of the Financing (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations or the Senior Adequate Protection Obligations remain outstanding, and the DIP Liens and the Senior Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Unless all DIP Obligations shall have been indefeasibly paid in full and the Senior Adequate Protection Obligations shall have been paid in full, the Debtors shall not seek, and it shall constitute an Event of Default and shall terminate the right of the Debtors to use Cash Collateral if any of the Debtors seeks, or if there is entered, (i) any modifications or extensions of this Interim Order without the prior written consent of the DIP Agent and the Pre-Petition First Lien Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent and the Pre-Petition First Lien Agent or (ii) an order converting or dismissing any of the Cases.  If an

33

order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the DIP Agent and the DIP Lenders and, as applicable, the Pre-Petition Agents and the Pre-Petition Lenders pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, priming liens and replacement security interests shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations, Senior Adequate Protection Obligations or Junior Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Pre-Petition First Lien Agent, as applicable, of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Agreement with respect to any DIP Obligations, Senior Adequate Protection Obligations or Junior Adequate Protection Obligations.  Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations,

34

Senior Adequate Protection Obligations or Junior Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders, the Pre-Petition First Lien Agent the Pre-Petition First Lien Lenders, the Pre-Petition Second Lien Agent or the Pre-Petition Second Lien Lenders, as applicable, prior to the actual receipt of written notice by the DIP Agent and the Pre-Petition First Lien Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, DIP Lenders, Pre-Petition First Lien Agent, Pre-Petition First Lien Lenders, the Pre-Petition Second Lien Agent and the Pre-Petition Second Lien Lenders, as applicable, shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations, Senior Adequate Protection Obligations and Junior Adequate Protection Obligations.

(d)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Agent and the DIP Lenders granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents) or (iii) the entry of an order confirming a plan of reorganization in any of the

35

Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Agent and the DIP Lenders granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

18. *Effect of Stipulations on Third Parties*. The stipulations and admissions contained in this Interim Order, including, without limitation, in paragraph 3 of this Interim Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances. The stipulations and admissions contained in this Interim Order, including, without limitation, in paragraph 3 of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any official committee, unless (a) a party in interest has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 19) by no later than the date that is 60 days from the date of entry of the Final DIP Order in accordance with Local Rule 4001-2(f) (or such later date (x) as has been agreed to, in writing, by the Pre-Petition First Lien Agent in its sole discretion or (y) as has been ordered by the Court) (i) challenging the validity, enforceability, priority or extent of the Pre-Petition First Lien Debt or the Pre-Petition First Lien Agent's or the

36

Pre-Petition First Lien Lenders' liens on the Pre-Petition Collateral or (ii) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, "***Claims and Defenses***") against the Pre-Petition First Lien Agent or any of the Pre-Petition First Lien Lenders or their affiliates, representatives, attorneys or advisors in connection with matters related to the Pre-Petition First Lien Facility, the Pre-Petition First Lien Debt, the Pre-Petition Collateral, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter; *provided* that, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such adversary proceeding or contested matter is timely filed, (x) to the extent not theretofore repaid, the Pre-Petition First Lien Debt and all related obligations of the Debtors (the "***Pre-Petition First Lien Obligations***") shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 cases and (y) the Pre-Petition First Lien Agent's liens, the Pre-Petition First Lien Lenders' liens (including the Senior Adequate Protection Liens), and the DIP Liens, shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination or avoidance, and such liens shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for any of

37

the Debtors). If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph 3 of this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any official committee (including the Creditors' Committee) and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any official committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Pre-Petition First Lien Facilities or the Pre-Petition First Lien Obligations.

19. *Limitation on Use of Financing Proceeds and Collateral.*

(a) Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, Cash Collateral, Collateral or the Carve-Out may be used to (i) object or contest, or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Pre-Petition First Lien Facility, or the liens or claims granted under this Interim Order, the DIP Documents or the Pre-Petition First Lien Facility, (ii) assert any Claims and Defenses or causes of action against the DIP Agent, the DIP Lenders, the Pre-Petition First Lien Agent or the Pre-Petition First Lien Lenders or their respective agents, affiliates, representatives, attorneys or advisors, (iii) prevent, hinder or otherwise delay the DIP Agent's assertion, enforcement or realization on the Cash Collateral or the Collateral in

accordance with the DIP Documents or this Interim Order, (iv) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Pre-Petition First Lien Agent or the Pre-Petition First Lien Lenders hereunder or under the DIP Documents or the Pre-Petition First Lien Facility, in each of the foregoing cases without such parties' prior written consent or (v) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (A) approved by an order of this Court and (B) in accordance with the DIP Credit Agreement; *provided, however,* that in the case of clauses (i) and (ii) above, such limitations shall not apply to any investigation by an official committee to the extent that such amounts for all official committees in the aggregate do not exceed $50,000.

20. *Milestone Defaults.* The occurrence of any of the following (collectively, the "***Milestone Defaults***") shall be an Event of Default under the DIP Documents:

(a) <u>Interim and Final Order</u>. Within 45 days after the Petition Date, the Court shall not have entered the Final Order.

(b) <u>Acceptable Reorganization Plan</u>. Within 60 days after the Petition Date (or such later date as agreed to by the Required Lenders (as defined in the DIP Facility, the "***Required DIP Lenders***")), a plan of reorganization (an "***Acceptable Plan of Reorganization***") that provides for payment of all administrative claims, including without limitation the DIP Obligations shall not have been filed with the Court.

(c) <u>Disclosure Statement Order</u>. Within 90 days after the Petition Date (or such later day as agreed to by the Required DIP Lenders), the Court shall

39

not have entered an order approving the adequacy of a disclosure statement for an Acceptable Plan of Reorganization.

(d)     Confirmation Order.   Within 170 days after the Petition Date (or such later day as agreed to by the Required DIP Lenders), the Court shall not have entered an order (the "***Confirmation Order***") confirming an Acceptable Plan of Reorganization.

(e)     Consummation.   Within 180 days after the Petition Date (or, if earlier, within 30 days following the date of entry of the Confirmation Order), an Acceptable Plan of Reorganization shall not have been substantially consummated pursuant to section 1101(2) of the Bankruptcy Code.

21.     *Preservation of the Pre-Petition First Lien Agent's Right to Credit Bid*. Subject only to and effective upon entry of the Final Order, the Pre-Petition First Lien Agent shall have the right to credit bid the Pre-Petition First Lien Debt upon the direction of the Required Lenders (as defined in the Pre-Petition First Lien Facility), in connection with a sale of any Pre-Petition Collateral conducted pursuant to (i) an Acceptable Plan of Reorganization in any of the Cases that is subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code or (ii) section 363 of the Bankruptcy Code (subject to the consent of the DIP Agent, unless all DIP Obligations have been paid or other otherwise satisfied and all Commitments have been terminated in their entirety, and to the extent permitted by the DIP Credit Agreement).

22.    *Interim Order Governs.*   In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

23.    *Binding Effect; Successors and Assigns.*   The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Pre-Petition Agents, the Pre-Petition Lenders, any official committee appointed in these Cases and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Pre-Petition Agents, the Pre-Petition Lenders and the Debtors and their respective successors and assigns; *provided*, *however*, that the DIP Agent and the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

24.    *Leases.*   Notwithstanding anything in this Interim Order to the contrary, solely for the period covered by this Interim Order and solely with respect to the Debtors' non-residential real property leases, (i) neither the DIP Agent nor the DIP Lenders, nor the Pre-Petition Lenders will be granted liens pursuant to this Interim Order on the leases themselves, to the extent prohibited by the leases, but instead they will be granted fully perfected liens on any and all proceeds of such leases (without the need for the DIP Agent, the DIP Lenders or the Pre-Petition First Lien Lenders to take any further actions in connection therewith) and (ii) with respect to use and occupancy of any leased

41

premises upon the occurrence of an Event of Default (as defined in the DIP Credit Agreement), the rights granted the DIP Agent, the DIP Lenders, and the Pre-Petition Lenders by this Interim Order shall not be more extensive than the valid and enforceable rights of the Pre-Petition First Lien Agent or the Pre-Petition Lenders under the First Lien Credit Agreement and applicable law.

25.     *Notice of Professional Fees.*  With respect to professional fees payable by the Debtors pursuant to paragraphs 5(b)(iii) and 12(c) of this Interim Order after the date of closing of the Financing, invoices for such fees shall be submitted to the Debtors, the U.S. Trustee and any unsecured creditors' committee that has then been appointed in these cases, provided, that none of such fees shall be subject to approval by this Court, the U.S. Trustee or any such committee and no such professional shall be required to file with respect thereto any interim or final fee applications or comply with the U.S. Trustee fee guidelines.  To the extent that the U.S. Trustee or the committee has an objection to any of the invoices so provided, they shall have 10 business days after receipt of such invoice to raise a specific objection, including quantification of the disputed amount, with the applicable professional.  Payment of invoices shall not be delayed based on any such objections and the relevant professional shall only be required to disgorge any of the amounts objected to upon being "so ordered" to do so pursuant to a final order of this Court.

26.     *Final Hearing*.  The Final Hearing is scheduled for April 26, 2011 at 10 a.m. before this Court.

K&E 18687842

27.     *Notice*.  The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any official committee after the same has been appointed, or such committee's counsel, if the same shall have been appointed.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (A) the United States Trustee for the Southern District of New York; (B) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attention: Jason Kanner, Esq. and Edward Sassower, Esq.), counsel for the Debtors; (C) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attention: Jinsoo Kim, Esq. and Timothy Graulich, Esq.), counsel for CFS as the Pre-Petition First Lien Agent and as the DIP Agent and BofA as the Pre-Petition First Lien Collateral Agent; (D) Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, New York (Attention: Daniel Holzman, Esq.), counsel to the Pre-Petition Second Lien Lenders; (E) Milbank, Tweed, Hadley & McCloy LLP, One Chase Manhattan Plaza, New York, New York 10005-1413 (Attention: Blair M. Tyson & Brian Kinney), counsel to the Pre-Petition Second Lien Agent; and (F) counsel for the Official Committee of Unsecured Creditors, if any, and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of New York, in each

43

case to allow actual receipt by the foregoing no later than April 21, 2011 at 4:00 p.m., prevailing Eastern time.

Dated:   New York, New York
         April 5, 2011

                                        /S/ Shelley C. Chapman
                                        UNITED STATES BANKRUPTCY JUDGE

K&E 18687842