# EXHIBIT 1

**Blackline of Payment Procedures Marked Against Version Filed April 4, 2011**

James H.M. Sprayregen, P.C.
Edward O. Sassower
Nicole L. Greenblatt
Paul Wierbicki (**admitted** *pro hac vice* pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Proposed Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| SBARRO, INC., *et al.*,[1] | ) Case No. 11-~~(~~**11527 (SCC**) |
| Debtors. | ) ~~Joint Administration Requested~~**Jointly Administered** |

## PAYMENT PROCEDURES

On ~~[        ],~~**April 4,** 2011 (the "***Petition Date***"), Sbarro, Inc. ("***Sbarro***") and certain of its affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), each filed a voluntary petition for relief under title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of New York (this "***Court***").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sbarro, Inc. (1939); Sbarro Holdings, LLC (3819); Carmela's of Kirkman Operating, LLC (1182); Carmela's of Kirkman LLC (7703); Carmela's, LLC (8088); Corest Management, Inc. (9134); Demefac Leasing Corp. (2379); Larkfield Equipment Corp. (7947); Las Vegas Convention Center LLC (7645); Sbarro America Properties, Inc. (9540); Sbarro America, Inc. (9130); Sbarro Blue Bell Express LLC (1419); Sbarro Commack, Inc. (4007); Sbarro Express LLC (0253); Sbarro New Hyde Park, Inc. (6185); Sbarro of Las Vegas, Inc. (2853); Sbarro of Longwood, LLC (0328); Sbarro of Virginia, Inc. (2309); Sbarro Pennsylvania, Inc. (3530); Sbarro Properties, Inc. (9541); Sbarro Venture, Inc. (3182); Sbarro's of Texas, Inc. (5139); Umberto at the Source, LLC (8024); Umberto Deer Park, LLC (8728); Umberto Hauppauge, LLC (8245); Umberto Hicksville,

The Debtors are operating their business**es** and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On ~~the Petition Date, the Debtors filed a motion seeking joint administration of the above-captioned chapter 11 cases~~**April 5, 2011, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). On April 12, 2011, the United States Trustee for the Southern District of New York (the "*U.S. Trustee*") appointed an official committee of unsecured creditors (the "*Creditors' Committee*")**. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. ~~No committees have been appointed or designated.~~

On ~~[_____],~~**April 4,** 2011, this Court entered an **interim** order [Docket No. ~~\_\_~~**39**] (the "*Order*") authorizing, among other things, the Debtors in their discretion based on their reasonable business judgment, to pay all or part of certain amounts due and owing to certain vendors that are "critical" to maintaining the going-concern value of the Debtors' business enterprise. (the "*Critical Vendors*").

To ensure the continued postpetition delivery of goods and services on favorable terms, including credit terms, and facilitate orderly negotiations relating thereto, the Bankruptcy Court approved the procedures set forth herein (the "*Payment Procedures*") for the payment of prepetition trade claims of certain Critical Vendors the Debtors determine, in their sole discretion based on their sound business judgment, are essential to their ongoing business operations and who

---

LLC (0989); Umberto Huntington, LLC (8890); and Umberto White Plains, LLC (8159). The Debtors' service address is: 401 Broadhollow Road, Melville, New York 11747.

2

K&E 18865375

agree to, among other things, provide postpetition goods and/or services to the Debtors on Customary Trade Terms (defined below).

1. Customary Trade Terms. The Debtors will use their best efforts to condition the payment of Critical Vendor Claims on the agreement of individual Critical Vendors to continue to supply goods and/or services to the Debtors on the normal and customary trade terms, practices and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability and other applicable terms and programs), applicable to the Debtors in light of industry practices (the "*Customary Trade Terms*"). The Debtors reserve the right to negotiate trade terms with Critical Vendors who demand less favorable terms for the postpetition delivery of goods and services (to the extent the Debtors determine such terms are necessary to obtain such goods or procure such services), subject to the conditions set forth herein and/or in this Order.

2. Trade Agreement. To commit Critical Vendors to Customary Trade Terms, the Debtors are authorized, but not directed, to enter into letter agreements, or other agreements with Critical Vendors who receive Critical Vendor Payments, which will constitute a legally binding contractual arrangement among the Debtors and the Critical Vendor that will govern the parties' postpetition commercial relationship (once executed, each, a "*Trade Agreement*").

3. Termination. All Trade Agreements will be deemed to have terminated, together with the other benefits to Critical Vendors set forth in this Order, upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. **A Critical Vendor may cease providing Customary Trade Terms if (a) the Debtors fail to pay the Critical Vendor as set forth in the Trade Agreement, which failure to pay is not cured within 10 days of the due date; (b) there is an Event of Default under the DIP Credit Agreement that is not cured or waived pursuant to the terms thereof; (c) the DIP Credit Agreement expires upon maturity or otherwise, unless extended or replaced by a comparable facility; (d) there is a default under that certain master contract with the Debtors' independent wholesale food distributor that is not cured or waived pursuant to the terms thereof; or (e) there is a cessation of the Debtors' business operations.** Further, if a Critical Vendor breaches the terms and conditions of its respective Trade Agreement, the Debtors may declare, in their discretion and without further order of the Bankruptcy Court or action by any person or entity, that the respective Trade Agreement is terminated and that payments received by the breaching Critical Vendor on account of its Critical Vendor Claim will be deemed to have been in payment of then outstanding postpetition obligations owed. Upon such declaration, the breaching Critical Vendor shall immediately repay the Debtors any payments made to it on account of its Critical Vendor Claim to the extent such payment exceeds postpetition amounts owed, if any, to the Critical Vendor outstanding at that time, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims or otherwise.

3

4. <u>Reinstatement</u>.  To the extent a Trade Agreement is terminated on account of breach of the terms or conditions thereof by a Critical Vendor, such terminated Trade Agreement may nevertheless be reinstated as the result of one or more of the following:

- after notice and a hearing (following a motion filed by the respective Critical Vendor), the Bankruptcy Court reverses the Debtors' decision to terminate the Trade Agreement for good cause shown that the Debtors' determination was materially incorrect;

- the Critical Vendor fully cures the underlying default of the Trade Agreement within five (5) business days from the date of receipt of notice of termination of the Trade Agreement; or

- the Debtors, in their discretion, reaches a favorable alternative agreement with the Critical Vendor.

5. <u>Reservation of Rights</u>.  Nothing contained herein, in this Order or as a result of any payment made pursuant thereto, is intended to or should be construed as an admission of the validity, priority or extent of any claim or lien against the Debtors, a waiver of the Debtors' rights to dispute any claim or lien or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve the right to contest any demand for payment made with respect to the subject matter of the Motion under applicable non-bankruptcy law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Bankruptcy Court's order is not intended to and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' right to dispute such claim subsequently.

6. <u>Waiver</u>. Any Critical Vendor who accepts payment from the Debtors on account of a Critical Vendor Claim shall be deemed to have agreed to the terms and provisions of this Interim Order and shall be deemed to have waived, to the extent so paid, (a) any and all prepetition claims, of whatever type, kind or priority, against the Debtors, their properties and estates, their directors, officers and members and any funds and other property held in trust by the Debtors that do not constitute "property of the estate" under section 541 of the Bankruptcy Code and (b) the right to demand a lump-sum payment for amounts outstanding but not yet payable upon consummation of the Debtors' plan of reorganization.

*[Remainder of page intentionally left blank.]*

K&E 18865375