UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: SBARRO, INC., et al.,[1] | ) | Case No. 11-11527 (SCC) |
|  | ) |  |
|  | ) | Jointly Administered |
|  | ) |  |
|  | ) | Chapter 11 |
| Debtors | ) |  |
|  | ) |  |

**DECLARATION OF STEPHEN B. DARR IN SUPPORT OF
APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF SBARRO, INC. ET AL. TO RETAIN
MESIROW FINANCIAL CONSULTING, LLC, AS
FINANCIAL ADVISOR, NUNC PRO TUNC TO APRIL 12, 2011**

I, Stephen B. Darr of Mesirow Financial Consulting, LLC ("MFC") hereby declare;

1.      I am a Senior Managing Director and Chief Risk Officer of MFC and I am authorized to make this declaration.  I submit this declaration pursuant to sections 330(a) and 1103(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code") and Rules 2014(a) and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in support of the Application (the "Application")[2] of the Official Committee of Unsecured Creditors appointed in the above-referenced chapter

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Sbarro, Inc. (1939); Sbarro Holdings, LLC (3819); Carmela's of Kirkman Operating, LLC (1182); Carmela's of Kirkman LLC (7703); Carmela's, LLC (8088); Corest Management, Inc. (9134); Demefac Leasing Corp. (2379); Larkfield Equipment Corp. (7947); Las Vegas Convention Center LLC (7645); Sbarro America Properties, Inc. (9540); Sbarro America, Inc (9130); Sbarro Blue Bell Express LLC (1419); Sbarro Commack, Inc. (4007); Sbarro Express LLC (0253); Sbarro New Hyde Park, Inc. (6185); Sbarro of Las Vegas, Inc. (2853); Sbarro of Longwood, LLC (0328); Sbarro of Virginia, Inc. (2309); Sbarro Pennsylvania, Inc. (3503); Sbarro Properties, Inc., (9541); Sbarro Venture, Inc. (3182); Sbarro's of Texas, Inc. (5139); Umberto at the Source, LLC (8024); Umberto Deer Park, LLC (8728); Umberto Hauppauge, LLC (8245); Umberto Hicksville, LLC (0989); Umberto Huntington, LLC (8890); and Umberto White Plains, LLC (8159).  The Debtors' service address is 401 Broadhollow Road, Melville, New York 11747.

11 cases (the "Committee") to employ and retain MFC as financial advisor pursuant to the terms set forth in the Application. Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

2.      I am submitting this Declaration on behalf of MFC pursuant to the request of the United States Trustee for the Southern District of New York for information supplemental to the Affidavit of Larry Lattig in Support the Application of the Official Committee of Unsecured Creditors of Sbarro, Inc. et al. to Retain Mesirow Financial Consulting, LLC, as Financial Advisor, Nunc Pro Tunc to April 12, 2011 (the "Lattig Affidavit"), relating to issues concerning the organizational structure of MFC and its affiliated companies, as well as those steps taken by MFC and its affiliated companies to (i) prevent the trading personnel and the investment advisory personnel who are employed by certain of MFC's affiliated companies from receiving any non-public information concerning the chapter 11 cases of the above captioned debtors (the "Debtors") through MFC's personnel, representatives or agents ("MFC Personnel") performing activities related to the Committee and to (ii) prevent MFC Personnel from receiving information regarding trading in Securities[3] of the Debtors by such affiliates in advance of trading. In addition, I am providing supplemental information relating to an MFC employee who was formerly employed by the Debtors as well as relationships that were reported on Exhibit B of the Lattig Affidavit.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

[3] The term "Securities" is used as such term is defined in Section 2(a)(l) of the Securities Act of 1933, including the following, but only to the extent they constitute securities thereunder: stocks; notes; bonds; debentures; participations in, or derivatives based upon or relating to, any of the Debtors' debt obligations or equity interests.

## Organizational Structure and General Trading Activities

3.  MFC is a wholly-owned subsidiary of Mesirow Financial Holdings, Inc.,

which is a diversified financial services holding firm that also offers services in

investment management, insurance services, investment services, investment banking and

real estate (collectively "Mesirow Financial"). Services rendered on behalf of the

Committee will be performed solely by MFC Personnel.

4.  MFC is a limited liability corporation and Mesirow Financial Holdings,

Inc. is its sole member. MFC's Board consists of

| Name | Principal Position |
| --- | --- |
| Richard S. Price | Director, Chairman, and Chief Executive Officer of Mesirow Financial. |
| | Director and Vice-Chairman of Mesirow Financial; President of Mesirow Insurance Services, Inc. |
| Dennis Black | General Counsel and Secretary of Mesirow Financial; |
| Kristie Paskvan | Chief Financial Officer of Mesirow Financial. |

In addition, MFC's Chief Financial Officer is also Chief Financial Officer of Mesirow

Financial. These individuals have no day-to-day operational duties with regard to MFC.

5.  MFC's operations are managed on a day-to-day basis by

- Ralph S. Tuliano - President of MFC
- Larry Lattig – Executive Vice President of MFC
- Thomas J. Allison – Executive Vice President of MFC
- Stephen B. Darr - Chief Risk Officer

6.  In the ordinary course of business, Mesirow Financial, Inc. ("MFI"),

Mesirow Financial's affiliated broker-dealer, may purchase or sell Securities on a

principal or agency[4] basis. MFI also executes Securities transactions on behalf of clients

---

[4] Securities transactions are conducted on a "principal" basis if the Mesirow BD/IA Subsidiary (as defined hereafter) is acting for MFI's own account and either buys securities from or sells securities to a client or another broker-dealer out of its account. Securities transactions are conducted on an "agency" basis if the

of introducing broker-dealers or unaffiliated investment advisors.[5] In the ordinary course of business, Mesirow Financial's affiliated investment advisor subsidiaries, together with MFI (collectively, the "Mesirow BD/IA subsidiaries"), may purchase Securities, sell Securities and/or provide investment advice to retail or institutional clients on a nondiscretionary or discretionary basis. The Securities transacted by the Mesirow BD/IA subsidiaries may include Securities issued by the Debtors. These activities may be transacted through brokerage and trading accounts maintained by the Mesirow BD/IA subsidiaries or their respective clients.

7. Under the applicable provisions of the securities laws and regulations, including Section 206 of the Investment Advisors Act of 1940 and various regulations promulgated by the Securities and Exchange Commission, the Mesirow BD/IA subsidiaries have fiduciary obligations to their clients and owe them a duty of utmost good faith to act solely in their best interests. The BD/IA subsidiaries have specific obligations, *inter alia*, to have a reasonable, independent basis for their investment advice; to obtain best execution for clients' securities transactions where the adviser is in a position to direct brokerage transactions; to ensure that their investment advice is suitable to the client's objectives, needs, and circumstances; to refrain from effecting personal securities transactions inconsistent with client interests and to be loyal to clients.

---

Mesirow BD/IA Subsidiary is acting on behalf of a third-party client in a transaction whereby a separate broker-dealer is acting on the opposite side of the buy-sell transaction.

[5] MFC provides clearing and back-office services for introducing broker-dealers as well as custodial and execution services for unaffiliated investment advisors. In connection with these services, all investment decisions occur between the introducing broker-dealer and unaffiliated investment advisor and their respective clients.

8.     Accordingly, pursuant to those fiduciary obligations, clients of the BD/IA subsidiaries may receive information and advice as well as execute trades in the Debtors' securities from the BD/IA subsidiaries' employees.  Those employees, however, are subject to the provisions of the Trading Wall and will not have any access to confidential information obtained by the MFC Personnel working on this engagement; similarly the MFC Personnel working on this engagement will have no knowledge of information, advice or securities executions provided by the BD/IA subsidiaries to any client.

9.     Because of the organizational structure of Mesirow Financial, the compensation of employees of MFC is not dependent upon or related to the performance of the Mesirow BD/IA subsidiaries.  Accordingly, the compensation of those employees of MFC that will be employed on the Sbarro engagement will not impacted in any way by any Securities transactions by the Mesirow BD/IA subsidiaries, either on a principal or agency basis.

10.     Mesirow Financial Holding, Inc.'s Corporate Organization Chart is attached as Exhibit 1.

11.     MFC's offices are located in New York, NY; Atlanta, GA; Boston, MA; Chicago, IL; Cleveland, OH; Dallas, TX; Los Angeles, CA; Miami, Fl; and Washington, DC.  The Mesirow BD/IA subsidiaries offices are located in  Chicago, IL; Birmingham, MI; Carmel, IN; Ft Lauderdale, FL; Tampa, FL; Highland Park, IL; Oakbrook Terrace, Il; New York, NY; Los Angeles, CA; San Juan, Puerto Rico; Pittsburgh, PA; Lawrence, KA; Durham, ME; Vonore, TN.  Each of these offices (with the exception of Chicago) is physically separate, located in different buildings and has restrictions on access to authorized personnel.  MFC's Chicago office, although located within Mesirow

Financial's office complex, is physically segregated from all other Mesirow Financial

offices and access is restricted to MFC Personnel.

### Trading Wall Procedures

12.     Mesirow Financial has implemented certain "Trading Wall" procedures

that preclude the flow of information concerning transactions by the Mesirow BD/IA

subsidiaries in the Debtors' Securities, as well as other Securities transactions by the

Mesirow BD/IA subsidiaries, to MFC Personnel.  A copy of the pertinent sections of

Mesirow Financial's Employee Manual  procedures is attached as Exhibit 2.  The

Mesirow Financial entities whose operations are behind the Trading Wall are highlighted

in the Organization Chart attached as Exhibit 1.  These Trading Wall procedures also

permit the Mesirow BD/IA subsidiaries to fulfill their fiduciary or other duties owed to

their clients in accordance with securities laws.  The Mesirow BD/IA subsidiaries are

operated as separate and distinct subsidiaries from MFC with separate and distinct

management.  Mesirow Financial has informed the employees of the Mesirow BD/IA

subsidiaries and MFC Personnel of the Trading Wall procedures.

13.     In conjunction with MFC's Trading Wall procedures and this Declaration,

MFC has established and will maintain the following internal procedures:

     a.    Offices of MFC Personnel assigned to this engagement will remain physically separate on a different floor with restricted card key access from those of the Mesirow BD/IA subsidiaries' employees;

     b.    MFC will immediately inform Committee counsel and the United States Trustee in writing if such procedures are materially breached;

c.   Subject to paragraph 15 hereof, MFC Personnel will not directly or

indirectly share any non-public information generated by, received from or

relating to Committee activities ("Information") with any other

employees, representatives or agents of the Mesirow BD/IA subsidiaries,

including the Mesirow BD/IA subsidiaries' investments advisory

personnel;[6]

d.   MFC Personnel will maintain all files containing Information received in

connection with or generated from Committee activities in secured

cabinets inaccessible to other employees of MFC and the Mesirow BD/IA

subsidiaries;

e.   MFC Personnel will not receive any information regarding Mesirow

BD/IA subsidiaries' trades in Debtors' Securities;

f.   Mesirow BD/IA subsidiaries' compliance personnel shall review Mesirow

BD/IA subsidiaries' trades of the Debtors' Securities to determine if there

is any reason to believe that such trades were not made in compliance with

the information blocking procedures and shall keep records of such

review; and

g.   MFC shall take those steps necessary to restrict the exchange of

Information through electronic means between MFC Personnel and all

other Mesirow BD/IA subsidiaries' personnel in a manner consistent with

the foregoing procedures, all electronic documents relating to this

---

[6] A good faith communication of publicly available information shall not be presumed to be a breach of the obligations of MFC or the Mesirow BD/IA Subsidiaries or their respective personnel.

7

engagement will be maintained on a separate server with access restricted to the MFC Personnel assigned to this engagement and me.

14. At the request of the Office of the United States Trustee, I have requested information regarding any interest in securities of the Debtors that the Mesirow BD/IA subsidiaries may hold as a principal. I have been informed that no Mesirow BD/IA subsidiaries had a principal position in securities of the Debtors as of April 27, 2011. Moreover, the Mesirow BD/IA subsidiaries will not hold a principal position in securities of these Debtors during the pendency of these chapter 11 cases.

15. Notwithstanding any of the above, MFC Personnel may share Information with:

   a. senior management of MFC who, due to their duties and responsibilities, have a legitimate need to know such Information provided that such individuals otherwise comply with the procedures herein and use such Information only in connection with their senior managerial responsibilities;

   b. regulators, auditors, designated legal and compliance personnel for the purpose of rendering legal advice to MFC or providing surveillance;

   c. MFC administrative personnel who service and maintain internal computer systems, to the extent that such information is available to such personnel, such personnel agree not to share Information with other employees and to keep such Information in files inaccessible to other employees; and

d.  other MFC employees, representatives and agents who are not involved with trading or investment advisory activities with respect to the Debtors' Securities and execute a Confidentiality Letter.

### Former Sbarro Employee

16.    As mentioned in the Lattig Affidavit, out of an abundance of caution, MFC discloses that an employee of MFC was formerly employed by the Debtors as their Vice President and Chief Financial Officer. This employment spanned approximately five months and ceased on May 3, 2009. The employee is not owed any money by the Debtors and has no continuing relationship with the Debtors. This employee was present at the formation meeting wherein the Committee was selected but has had no further involvement with MFC's representation of the Committee. MFC has "walled off" this employee from receiving information about or participating in the services contemplated to be rendered under this retention.

### Lattig Affidavit Exhibit B

17.    MFC has determined that none of the relationships with the parties listed on Exhibit B generate more than one percent of Mesirow Financial's annual revenue.

18.    During MFC's searched its records and certain records of Mesirow Financial to identify any connection or relationship as described in the Lattig Affidavit, we discovered that:

- Out of an abundance of caution, the Lattig Affidavit disclosed a prior relationship with Ares Corporate Opportunities Fund II LP ("Ares"). Ares was a party-in-interest in an unrelated bankruptcy proceeding and MFC

9

served as financial advisors to that proceeding's Official Committee of Unsecured Creditors.

- Also out of an abundance of caution, the Lattig Affidavit disclosed a relationship with the Bank of New York because;
  - o a subsidiary of Mesirow Financial maintains a bank account at Bank of New York.
  - o MFC was previously engaged to provide services to the Bank of New York as indenture trustee in an unrelated matter. That engagement has been completed.

Executed this _//_ day of May, 2011 at Boston, MA.

Stephen B. Darr
Chief Risk Officer
Senior Managing Director
Mesirow Financial Consulting, LLC
265 Franklin Street, 16th Floor
Boston, MA. 02110

**<u>Darr Declaration</u>**

**<u>Exhibit 1</u>**

**MESIROW FINANCIAL HOLDINGS, INC.**

- MESIROW FINANCIAL INTERNATIONAL UK, LIMITED
- MESIROW FINANCIAL, LIMITED
- MESIROW FINANCIAL WORLD VENTURES, LLC
- MESIROW FINANCIAL INTERIM MANAGEMENT, LLC
- MESIROW FINANCIAL CONSULTING, LLC
- MESIROW FINANCIAL SERVICES, INC.
  - MESIROW FINANCIAL COMMODITIES MANAGEMENT, LLC
  - MESIROW FINANCIAL PRIVATE EQUITY ADVISORS, INC.
  - MESIROW REALTY SERVICES, INC.
    - MESIROW FINANCIAL REAL ESTATE CONSULTING, LLC
    - MESIROW REALTY SALE-LEASEBACK, INC.
    - MESIROW FINANCIAL REAL ESTATE BROKERAGE, INC.
      - MESIROW FINANCIAL REAL ESTATE, INC.
    - MESIROW REAL ESTATE INVESTMENTS, INC.
  - MESIROW FINANCIAL INVESTMENT MANAGEMENT, INC.
  - MESIROW INSURANCE SERVICES, INC.
    - MESIROW FINANCIAL STRUCTURED SETTLEMENTS, LLC
- MESIROW FINANCIAL ADMINISTRATIVE CORPORATION
- MESIROW FINANCIAL PRIVATE EQUITY, INC.
- MESIROW ADVANCED STRATEGIES, INC.
- MESIROW FINANCIAL, INC.

**Darr Declaration**

**Exhibit 2**



## INFORMATION BARRIERS BETWEEN AFFILIATES, DIVISIONS AND UNITS OF MESIROW FINANCIAL

Due to the type and nature of the business of Mesirow Financial, business units of Mesirow Financial receive confidential and non-public information that, under applicable law, must be protected from disclosure to personnel outside such business unit. In addition, other regulations may prohibit a division, affiliate or unit from receiving confidential and non-public information from other affiliates, divisions and business units. As a result, the Company has implemented an "Information Barriers" to prevent the flow of confidential and non-public information out of the Company and into and out of each distinct business unit. The Information Barriers prohibits employees from sharing confidential or non-public information with any affiliates, divisions and units outside such employee's business group concerning the business, clients and details of any engagement in which such business group has been retained. Similarly, the Information Barriers prohibits

all other employees of the Company (and all of its subsidiaries, divisions and business units) from sharing confidential or non-public information with an employee of a business group concerning any clients or engagements in which such business group has been retained. **If you have any questions concerning the Information Barriers or if you have knowledge of any possible violation of the Information Barriers, then you must immediately contact your supervisor and the Legal and Compliance department.**

### CONFIDENTIAL INFORMATION

A considerable amount of information used in the Company's business is confidential and proprietary to the Company and/or its customers. By virtue of your employment with the Company, you may have access to some or all of this confidential information. Since the Company has a legitimate interest and need to maintain this information in confidence at all times, all employees are prohibited from using or disclosing confidential information to any person, company, corporation, association or other entity for any reason or purpose whatsoever during or after the term of their employment with the Company, except as required in the course of their employment in furtherance of the Company's interests.

In this context, "Confidential Information" refers to information such as business and financial records, investment strategies, business models or plans, customer lists, customer information, confidential planning or policy matters and any operational, management, financial, accounting, control system, computer software and databases, marketing or tax information relating to the business of the Company or its customers, or such other information as may, from time to time, be designated by the Company as confidential.

No materials containing confidential information shall be removed at any time from the premises of the Company either in original form or in computerized, duplicated or copied form without the approval of management in writing.

**Mesirow Financial** | Employee Policy Manual—02-2011

We view these confidentiality principles seriously. Accordingly, as a condition of employment with the Company, every employee must sign our Employee Agreement Concerning Nonsolicitation, Confidential Information and Other Property.

Customers and clients conduct business with the Company with the understanding that all information provided by them or related to the business they conduct with us will be maintained in confidence. The Company is engaged in a wide variety of business activities which enable employees to have access to such confidential information. It is the obligation of each and every employee to maintain such information in the strictest of confidence.

No employee is permitted to use or disclose confidential information, whether related to financial decisions, market trends, mergers, acquisitions or any other area in which the Company is involved, to derive personal benefit. Employees need to be mindful that they are prohibited from releasing confidential information to anyone, including without limitation, relatives, friends, customers and vendors without the prior written consent of the owner of the confidential information. Restriction on communication helps guard against breaches of client confidentiality and fiduciary responsibility.

Employees may not disclose or disseminate confidential information to any unauthorized employee within the Company or to any individual or entity outside the Company. The only exception is if an Employee obtains (1) his or her supervisor's written approval that disclosure is in furtherance of the Company's interests, and (2) a signed confidentiality agreement or written assurances from the individual or entity to whom disclosure is made that confidentiality shall be maintained. An employee's failure to comply with this directive does not change or lessen the confidential nature of this information. It merely subjects the employee to discipline, up to and including termination of employment, and possible legal action.

In addition, confidential information and documents

may not be circulated or discussed in the presence of unauthorized individuals. A person is not an authorized individual simply because that person is an employee of the firm. Special caution should be taken in any surrounding to ensure that neither casual conversation is overheard nor documents circulated. Non-public information should only be discussed with individuals who "need to know" such information.

Additionally, attached as Exhibit A is a memorandum describing the Company's obligations under the federal privacy regulation enacted under the Gramm-Leach-Bliley Act, as well as the Company's Privacy Notice that is delivered to our customers. We expect employees to become familiar with and adhere to the obligations outlined in these policies.

