James H.M. Sprayregen, P.C.
Edward O. Sassower
Nicole L. Greenblatt
Paul Wierbicki (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SBARRO, INC., *et al.*,[1] | ) | Case No. 11-11527 (SCC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## PROPOSED JOINT CHAPTER 11 PLAN
## OF REORGANIZATION OF SBARRO, INC. AND ITS DEBTOR AFFILIATES

**THIS DRAFT PLAN OF REORGANIZATION IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL BE MADE ONLY IN COMPLIANCE WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.**

Dated: August 9, 2011

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sbarro, Inc. (1939); Sbarro Holdings, LLC (3819); Carmela's of Kirkman Operating, LLC (1182); Carmela's of Kirkman LLC (7703); Carmela's, LLC (8088); Corest Management, Inc. (9134); Demefac Leasing Corp. (2379); Larkfield Equipment Corp. (7947); Las Vegas Convention Center LLC (7645); Sbarro America Properties, Inc. (9540); Sbarro America, Inc. (9130); Sbarro Blue Bell Express LLC (1419); Sbarro Commack, Inc. (4007); Sbarro Express LLC (0253); Sbarro New Hyde Park, Inc. (6185); Sbarro of Las Vegas, Inc. (2853); Sbarro of Longwood, LLC (0328); Sbarro of Virginia, Inc. (2309); Sbarro Pennsylvania, Inc. (3530); Sbarro Properties, Inc. (9541); Sbarro Venture, Inc. (3182); Sbarro's of Texas, Inc. (5139); Umberto at the Source, LLC (8024); Umberto Deer Park, LLC (8728); Umberto Hauppauge, LLC (8245); Umberto Hicksville, LLC (0989); Umberto Huntington, LLC (8890); and Umberto White Plains, LLC (8159). The Debtors' service address is: 401 Broadhollow Road, Melville, New York 11747.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION..................................................1
    A.     Rules of Interpretation ..................................................................................................1
    B.     Defined Terms ..............................................................................................................1

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS,  PRIORITY TAX CLAIMS,
    AND UNITED STATES TRUSTEE STATUTORY FEES.........................................................10
    A.     Administrative Claims ................................................................................................10
    B.     DIP Facility Claims....................................................................................................12
    C.     Priority Tax Claims ....................................................................................................13
    D.     United States Trustee Statutory Fees .........................................................................13

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.....................13
    A.     Classification of Claims..............................................................................................13
    B.     Treatment of Claims and Interests Against the Debtors.............................................14
    C.     Intercompany Claims ..................................................................................................16
    D.     Special Provision Governing Unimpaired Claims .....................................................16
    E.     Acceptance or Rejection of the Plan ..........................................................................16
    F.     Nonconsensual Confirmation......................................................................................17
    G.     Subordinated Claims...................................................................................................17
    H.     Elimination of Vacant Classes ...................................................................................17

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ...............................................17
    A.     General Settlement of Claims .....................................................................................17
    B.     Restructuring Transactions .........................................................................................17
    C.     Corporate Existence ....................................................................................................17
    D.     Vesting of Assets in the Reorganized Debtors...........................................................18
    E.     Indemnification Provisions in Organizational Documents.........................................18
    F.     Cancellation of Agreements, Senior Notes and Equity Interests................................18
    G.     Sources of Cash for Plan Distributions and Transfers of Funds Among Debtors ..........19
    H.     Approval of Exit Credit Documents...........................................................................19
    I.     Reorganized Debtors' Equity Interests ......................................................................20
    J.     Section 1145 Exemption .............................................................................................20
    K.     Organizational Documents..........................................................................................21
    L.     Effectuating Documents; Further Transactions..........................................................21
    M.    Exemption from Certain Transfer Taxes and Recording Fees ...................................21
    N.     Directors and Officers of Reorganized Holdings and the Other Reorganized Debtors..................21
    O.     Preservation of Rights of Action ................................................................................22

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS  AND UNEXPIRED LEASES;
    EMPLOYEE BENEFITS; AND INSURANCE POLICIES .........................................................23
    A.     Assumption and Rejection of Executory Contracts and Unexpired Leases ....................23
    B.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases................23
    C.     Claims Based on Rejection of Executory Contracts and Unexpired Leases ...................24
    D.     Contracts and Leases Entered Into After the Petition Date ........................................24
    E.     Reservation of Rights ..................................................................................................24
    F.     Assumption of Directors and Officers Insurance Policies .........................................24
    G.     Indemnification and Reimbursement Obligations......................................................24
    H.     Employee Compensation and Benefits .......................................................................25

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ....................................................26
    A.     Distribution on Account of Claims and Interests Allowed as of the Effective Date ....................26
    B.     Distributions on Account of Claims and Interests Allowed After the Effective Date..................26

|   |   |   |   |
|---|---|---|---|
| C. | Timing and Calculation of Amounts to Be Distributed | ............................................... | 27 |
| D. | Delivery of Distributions | ......................................................................................... | 27 |
| E. | Compliance with Tax Requirements/Allocations | .......................................................... | 29 |
| F. | Setoffs | ...................................................................................................................... | 30 |
| G. | Surrender of Canceled Instruments or Securities | ........................................................ | 30 |
| H. | Claims Paid or Payable by Third Parties | ..................................................................... | 30 |

ARTICLE VII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
UNLIQUIDATED CLAIMS OR EQUITY INTERESTS ..................................................31
| A. | Allowance of Claims and Interests | ............................................................................. | 31 |
|---|---|---|---|
| B. | Prosecution of Objections to Claims | .......................................................................... | 31 |
| C. | Estimation of Claims and Interests | ............................................................................. | 31 |
| D. | Adjustment to Claims and Interests Without Objection | ............................................... | 32 |
| E. | Disallowance of Claims or Interests | ........................................................................... | 32 |
| F. | Offer of Judgment | ..................................................................................................... | 32 |
| G. | Amendments to Claims | .............................................................................................. | 32 |

ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE..............................32
| A. | Conditions Precedent to the Effective Date | ................................................................ | 32 |
|---|---|---|---|
| B. | Waiver of Conditions | ................................................................................................ | 33 |
| C. | Effect of Non-Occurrence of Conditions to the Effective Date | .................................... | 33 |

ARTICLE IX. RELEASE, INJUNCTIVE, AND RELATED PROVISIONS ..................................33
| A. | Discharge of Claims and Termination of Interests | ...................................................... | 33 |
|---|---|---|---|
| B. | **Releases by the Debtors** | ........................................................................................ | 34 |
| C. | **Releases by Holders of Claims and Equity Interests** | ............................................. | 34 |
| D. | **Exculpation** | .......................................................................................................... | 35 |
| E. | **Injunction** | ............................................................................................................. | 36 |
| F. | Setoffs | ...................................................................................................................... | 36 |
| G. | Release of Liens | ........................................................................................................ | 36 |

ARTICLE X. RETENTION OF JURISDICTION ......................................................................36

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN......................38
| A. | Modification of Plan | .................................................................................................. | 38 |
|---|---|---|---|
| B. | Effect of Confirmation on Modifications | .................................................................... | 38 |
| C. | Revocation of Plan | .................................................................................................... | 38 |

ARTICLE XII. MISCELLANEOUS PROVISIONS ...................................................................38
| A. | Immediate Binding Effect | .......................................................................................... | 38 |
|---|---|---|---|
| B. | Additional Documents | ................................................................................................ | 39 |
| C. | Payment of Statutory Fees | ......................................................................................... | 39 |
| D. | Reservation of Rights | ................................................................................................ | 39 |
| E. | Successors and Assigns | .............................................................................................. | 39 |
| F. | Service of Documents | ................................................................................................ | 39 |
| G. | Term of Injunctions or Stays | ..................................................................................... | 40 |
| H. | Entire Agreement | ...................................................................................................... | 40 |
| I. | Governing Law | .......................................................................................................... | 40 |
| J. | Exhibits | ..................................................................................................................... | 41 |
| K. | Nonseverability of Plan Provisions upon Confirmation | ............................................... | 41 |
| L. | Closing of Chapter 11 Cases | ...................................................................................... | 41 |
| M. | Conflicts | ................................................................................................................... | 41 |
| N. | Dissolution of Creditors' Committee | .......................................................................... | 41 |
| O. | Section 1125(e) Good Faith Compliance | ..................................................................... | 41 |
| P. | Further Assurances | .................................................................................................... | 42 |
| Q. | No Stay of Confirmation Order | ................................................................................... | 42 |

08/10/2011 2:31 AM

# PROPOSED JOINT CHAPTER 11 PLAN
## OF REORGANIZATION OF SBARRO, INC. AND ITS DEBTOR AFFILIATES

Sbarro, Inc. and 27 of its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), propose the following joint plan of reorganization for the resolution of the outstanding claims against, and equity interests in, the Debtors. These Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.B of the Plan.

Reference is made to the Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, results of operations, historical financial information, projections and future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan. Each of the Debtors is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I.

## DEFINED TERMS AND RULES OF INTERPRETATION

A.      *Rules of Interpretation*

1.      For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

B.      *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      "*Accrued Professional Compensation*" means, at any date, all accrued fees and reimbursable expenses (including success fees) for services rendered by all Retained Professionals in the Chapter 11 Cases through and including such date, to the extent that such fees and expenses have not been previously paid and regardless of whether a fee application has been filed for such fees and expenses.  To the extent that there is a Final Order denying some or all of a Retained Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

2.      "*Administrative Claim*" means a Claim (other than First Lien Adequate Protection Claims and DIP Facility Claims) for costs and expenses of administration under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and

through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Accrued Professional Compensation (to the extent Allowed by the Bankruptcy Court); and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

3. "*Administrative Claims Bar Date*" means the date that is the 45th day after the Effective Date.

4. "*Affiliate*" has the meaning set forth at section 101(2) of the Bankruptcy Code.

5. "*Allowed*" means with respect to Claims: (a) any Claim, proof of which is timely filed by the applicable Claims Bar Date (or that by the Bankruptcy Code or Final Order is not or shall not be required to be filed); (b) any Claim that is listed in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, and for which no Proof of Claim has been timely filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court (including pursuant to any stipulation approved by the Bankruptcy Court); provided that with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to any such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or such an objection is so interposed and the Claim shall have been Allowed by a Final Order; provided further that the Claims described in clauses (a), (b), and (c) above shall not include any Claim on account of a right, option, warrant, right to convert, or other right to purchase an Equity Interest. Except as otherwise specified in the Plan or an order of the Bankruptcy Court or with respect to Priority Tax Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. Any Claim that has been listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged without further action and without any further notice to or action, order, or approval of the Bankruptcy Court.

6. "*Assumed Executory Contract/Unexpired Lease List*" means the list (as may be amended), as determined by the Debtors or the Reorganized Debtors and that shall be in form and substance reasonably acceptable to the Prepetition First Lien Steering Committee, of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Reorganized Debtors pursuant to the Plan.

7. "*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

8. "*Ballot*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received by the Debtors' Notice and Claims Agent on or before the Voting Deadline.

9. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

10. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases.

11. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

12. "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

13. "*Bylaws*" means the bylaws of Reorganized Holdings, substantially in the form included in the Plan Supplement.

14. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

15. "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, in each case held by the Debtors, whether disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

16. "*Certificate*" means any instrument evidencing a Claim or an Interest.

17. "*Certificate of Incorporation*" means the certificate of incorporation of Reorganized Holdings, substantially in the form included in the Plan Supplement.

18. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the chapter 11 case filed for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases for all of the Debtors.

19. "*Claim*" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

20. "*Claims Bar Date*" means, as applicable, (a) July 8, 2011 at 5:00 p.m. prevailing Eastern Time (b) the Governmental Bar Date, or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for filing such Claims, pursuant to the Claims Bar Date Order.

21. "*Claims Bar Date Order*" means that certain Order (I) Setting Bar Dates for Filing Proofs of Claim, (II) Approving Procedures for Filing Proofs of Claim and (III) Approving Notice Thereof, entered by the Bankruptcy Court on May 26, 2011 [Docket No. 232], as may be amended from time to time.

22. "*Claims Register*" means the official register of Claims and Interests maintained by the Notice and Claims Agent.

23. "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

24. "*Compensation and Benefits Programs*" means all employment and severance agreements and policies, and all compensation and benefit plans, policies, and programs of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors and the employees, former employees and retirees of their subsidiaries, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit agreements, and plans, incentive plans, deferred compensation plans and life, accidental death, and dismemberment insurance plans.

25. "*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

26. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

27. "*Confirmation Hearing*" means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

28. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

29. "*Contract/Lease Schedule Date*" means the latest date by which the Debtors shall file their Assumed Executory Contract/Unexpired Lease List and the Rejected Executory Contract/Unexpired Lease List, which date shall be no fewer than ten (10) days prior to the Voting Deadline.

30. "*Creditors' Committee*" means the official committee of unsecured creditors of the Debtors appointed by the United States Trustee in the Chapter 11 Cases on April 12, 2011, pursuant to section 1102 of the Bankruptcy Code.

31. "*Cure Claim*" *means* a Claim based upon the Debtors' default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

32. "*DIP Agent*" means Cantor Fitzgerald Securities in its capacity as administrative agent and collateral agent under the DIP Facility.

33. "*DIP Facility*" means that certain $35,000,000 Credit and Guarantee Agreement, dated as of April 3, 2011, among Sbarro, Inc., as borrower, Sbarro Holdings, LLC and each direct and indirect, existing and future domestic subsidiary of Sbarro Holdings, LLC, as guarantors, the DIP Agent, and the DIP Lenders, as may be amended, modified, ratified, extended, renewed, restated or replaced.

34. "*DIP Facility Claim*" means any Claim held by the DIP Lenders arising under or related to the DIP Facility.

35. "*DIP Lenders*" means the DIP Agent and the banks, financial institutions and other lenders party to the DIP Facility from time to time.

36. "*Disclosure Statement*" means the disclosure statement for the Plan, including, without limitation, all exhibits and schedules thereto, as amended, supplemented or modified from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

37. "*Disputed Claim*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

38. "*Distribution Agent*" means the Debtors or any Entity or Entities chosen by the Debtors, which Entities may include the Notice and Claims Agent, to make or to facilitate distributions required by the Plan.

39. "*Distribution Record Date*" means the date for determining which Holders of Claims or Equity Interests are eligible to receive distributions under the plan, which date shall be five (5) days after the Confirmation Date or such other date as designated in an order of the Bankruptcy Court.

40. "*D&O Liability Insurance Policies*" means all insurance policies of any of the Debtors for directors', managers', and officers' liability.

41. "*Effective Date*" means the date selected by the Debtors that is a Business Day no later than 20 Business Days after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII.A have been (i) satisfied or (ii) waived pursuant to Article VIII.A.

42. "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

43. "*Equity Interest*" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any warrants, equity-based awards or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto that existed immediately before the Effective Date; provided that Equity Interest does not include any Intercompany Interest.

44. "*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

45. "*Exculpated Parties*" means, collectively: (a) the Reorganized Debtors; and (b) the Released Parties.

46.    "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

47.    "*Existing Letters of Credit*" means the letters of credit set forth in Exhibit 1.

48.    "*Exit Credit Documents*" means all loans and security documents relating to the Exit Financing, in each case as the same may be amended, restated, supplemented, or otherwise modified from time to time.

49.    "*Exit Financing*" means, collectively, a $110 million senior secured term loan facility (the Exit Term Loan Facility) and an $18.6 million senior secured multiple draw first-out new money credit facility (the New Money Exit Facility) pursuant to which the Reorganized Debtors will have approximately $[●] million in funded debt on the Effective Date.

50.    "*Exit Term Loan Facility*" means a $110 million senior secured term loan facility to be converted (a) first from the DIP Facility on a dollar for dollar basis based on outstanding loans under the DIP Facility on the Effective Date and (b) then from the Prepetition First Lien Facility.  The terms of the Exit Term Loan Facility shall be substantially consistent with those set forth on the term sheet attached hereto as Exhibit 2.  The Exit Term Loan Facility may be an amendment and restatement or a replacement of the Prepetition First Lien Credit Facility.

51.    "*Final DIP Order*" means that certain Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing and to Use Cash Collateral, (II) Granting Adequate Protection to Pre-Petition Lenders and (III) Granting Related Relief, entered by the Bankruptcy Court on May 4, 2011 [Docket No. 163], as may be amended from time to time in accordance with the terms thereof and the DIP Facility.

52.    "*Final Order*" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing has been resolved by the court in which such motion was filed; provided, however, that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

53.    "*First Lien Adequate Protection Claims*" means all adequate protection claims arising under applicable law or pursuant to  the Final DIP Order.

54.    "*General Administrative Claim*" means any Administrative Claim, including Cure Claims, other than a Professional Fee Claim.

55.    "*General Unsecured Claims*" means any unsecured claim (other than an Administrative Claim; a Priority Tax Claim; an Other Priority Claim; Unsecured Ongoing Operations Claims; or an Intercompany Claim) against one or more of the Debtors including, but not limited to (a) Claims arising from the rejection of Unexpired Leases and Executory Contracts to which a Debtor is a party, (b) Claims arising from any litigation or other court, administrative or regulatory proceeding, including, without limitation, damages or judgments entered against, or settlement amounts owing by a Debtor related thereto, and (c) Senior Notes Claims.

56.    "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

57.    "*Governmental Bar Date*" means 5:00 p.m. prevailing Eastern Time on October 3, 2011, or such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court.

58.    "*Holder*" means an Entity holding a Claim or Interest.

59.     "*Impaired*" means any Claim or Interest in an Impaired Class.

60.     "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

61.     "*Indemnified Parties*" means the Debtors' current directors, officers, managers, employees, attorneys, other professionals, and agents, and such current directors', officers', managers', and employees' respective Affiliates to the extent set forth herein, that were employed in such capacity on or after the Petition Date and that are entitled to be indemnified by the Debtors pursuant to, among other things, the Debtors' bylaws, certificates of incorporation (or other formation documents), board resolutions, employment contracts, or other agreements.

62.     "*Indemnification Obligation*" means a Debtor's obligation under an Executory Contract or otherwise to indemnify directors, officers, employees, or agents of such Debtor who served in such capacity at any time, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by such Debtor's respective certificates of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date.

63.     "*Initial Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than thirty (30) days after the Effective Date, when distributions under the Plan shall commence for each Class entitled to receive distributions.

64.     "*Intercompany Claims*" means, collectively, any Claim held by a Debtor against another Debtor or an Affiliate of a Debtor or any Claim held by an Affiliate of a Debtor against a Debtor.

65.     "*Intercompany Interest*" means an Equity Interest in a Debtor held by another Debtor.

66.     "*Interests*" means, collectively, Equity Interests and Intercompany Interests.

67.     "*Interim Compensation Order*" means that certain Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals, entered by the Bankruptcy Court on May 3, 2011 [Docket No. 147], as may be amended from time to time, including by an order entered by the Bankruptcy Court approving the retention of a specific Retained Professional.

68.      "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

69.     "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the Southern District of New York.

70.     "*Management Compensation Plan*" means that certain key employee cash incentive program agreed to among the Debtors and the Prepetition First Lien Steering Committee on August 9, 2011, substantially in the form set forth in the Plan Supplement.

71.     "*Management Equity Plan*" means the management incentive plan of the Reorganized Debtors, which management incentive plan will be established and implemented by the New Board as soon as reasonably practicable following the Effective Date and pursuant to which retentive and performance-based equity awards (in the form to be determined by the New Board) of no less than 1/2 of the Reserved Employee Equity shall be allocated to certain key employees of the Reorganized Debtors and members of the New Board, a portion of which may be reserved by the New Board for allocation to the Reorganized Debtors' chief executive officer if the selection process for such chief executive officer has not then been completed.[2]

72.     "*New Board*" means the initial board of directors of Reorganized Holdings.

---

[2]     The parameters of the Management Equity Plan and Reserved Employee Equity are the subject of ongoing discussions among the Debtors and the Prepetition First Lien Steering Committee and are subject to change.

73.     "*New Common Stock*" means the common equity in Reorganized Holdings to be authorized, issued, or reserved on the Effective Date pursuant to the Plan, which shall constitute all of the direct or indirect common equity of Reorganized Holdings.

74.     "*New Money Exit Facility*" means an $18.6 million senior secured multiple draw first-out new money term loan facility to be provided by certain of the Prepetition First Lien Lenders.  The terms of the New Money Exit Facility shall be substantially consistent with those set forth on the term sheet attached hereto as <u>Exhibit 3</u>.

75.     "*Notice and Claims Agent*" means Epiq Bankruptcy Solutions LLC, in its capacity as noticing, claims, and solicitation agent for the Debtors, pursuant to (a) that certain Order Authorizing and Approving the Employment of Epiq Bankruptcy Solutions, LLC as Notice and Claims Agent to the Debtors *Nunc Pro Tunc* to the Petition Date, entered by the Bankruptcy Court on April 5, 2011 [Docket No. 44] and (b) that certain Order Authorizing and Approving the Retention of Epiq Bankruptcy Solutions, LLC as Administrative Agent to the Debtors *Nunc Pro Tunc* to the Petition Date, entered by the Bankruptcy Court on May 3, 2011 [Docket No. 149], as may be amended from time to time.

76.     "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

77.     "*Other Secured Claim*" means any Secured Claim against the Debtors not specifically described herein; *provided*, <u>*however*</u>, that Other Secured Claims shall not include DIP Facility Claims, Prepetition First Lien Lender Claims, and Prepetition Second Lien Lender Claims.

78.     "*Periodic Distribution Date*" means the first Business Day that is as soon as reasonably practicable occurring approximately ninety (90) days after the immediate preceding Periodic Distribution Date.

79.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

80.     "*Petition Date*" means April 4, 2011.

81.     "*Plan*" means this joint plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including, without limitation, all exhibits and schedules hereto and thereto.

82.     "*Plan Equity Value*" means between [●] and [●].

83.     "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to be filed on the Plan Supplement Filing Date, as amended, modified or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules, comprising, without limitation, the following documents:  (a) the Exit Credit Documents; (b) the Assumed Executory Contract/Unexpired Lease List and the Rejected Executory Contract/Unexpired Lease List; (c) the Shareholders Agreement; (d) the Certificate of Incorporation; (e) the Bylaws; (f) to the extent known, the identity of the members of the New Board; and (g) the form of the Management Compensation Plan.

84.     "*Plan Supplement Filing Date*" means the date that is ten (10) days prior to the Voting Deadline.

85.     "*Prepetition First Lien Steering Committee*" means that certain steering committee of secured lenders holding Prepetition First Lien Lender Claims.

86.     "*Prepetition First Lien Agent*" means Cantor Fitzgerald Securities, in its capacity as successor administrative agent and collateral agent under the Prepetition First Lien Facility.

87.     "*Prepetition First Lien Credit Facility*" means the secured loan facility under that certain Amended and Restated Credit and Guarantee Agreement dated as of January 31, 2007, among Sbarro, Inc., certain of its subsidiaries, the Prepetition First Lien Agent and other lenders party thereto, as amended.

88.     "*Prepetition First Lien Lender Claims*" means all Claims arising under the Prepetition First Lien Loan Documents or applicable law, including all First Lien Adequate Protection Claims.

89.     "*Prepetition First Lien Lenders*" means those banks, financial institutions, and other lenders under the Prepetition First Lien Facility, from time to time, in their capacity as such.

90.     "*Prepetition First Lien Loan Documents*" means each of the documents, agreements, and instruments (including, without limitation, all collateral documents) executed and delivered from time to time in connection with the Prepetition First Lien Facility.

91.     "*Prepetition Second Lien Agent*" means Wilmington Trust FSB, in its capacity as successor administrative agent and collateral agent under the Prepetition Second Lien Credit Agreement.

92.     "*Prepetition Second Lien Credit Agreement*" means that certain Amended and Restated Credit and Guarantee Agreement dated as of March 26, 2009, among Sbarro, Inc., certain of its subsidiaries, the Prepetition Second Lien Agent, and other lenders party thereto, as amended.

93.     "*Prepetition Second Lien Lender Claims*" means all Claims arising out of the Prepetition Second Lien Loan Documents or applicable law.

94.     "*Prepetition Second Lien Lenders*" means those banks, financial institutions, and other lenders parties to the Prepetition Second Lien Credit Agreement, from time to time, in their capacity as such.

95.     "*Prepetition Second Lien Loan Documents*" means each of the documents, agreements, and instruments (including, without limitation, all collateral documents) executed and delivered from time to time in connection with the Prepetition Second Lien Credit Agreement.

96.     "*Priority Tax Claim*" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

97.     "*Professional Fee Claim*" means a Claim by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

98.     "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount funded and maintained by the Reorganized Debtors on and after the Effective Date solely for the purpose of paying all Allowed and unpaid fees and expenses of Retained Professionals in the Chapter 11 Cases.

99.     "*Professional Fee Reserve Amount*" means the aggregate Accrued Professional Compensation through the Effective Date as estimated by the Retained Professionals in accordance with Article II.A.2(d) hereof.

100.     "*Proof of Claim*" means a proof of Claim filed against any Debtor in the Chapter 11 Cases.

101.     "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion of a particular recovery that a Class is entitled to share with other Classes entitled to the same recovery under the Plan.

102.     "*Rejected Executory Contract/Unexpired Lease List*" means the list (as may be amended), as determined by the Debtors or the Reorganized Debtors and that shall be reasonably acceptable in form and substance to the Prepetition First Lien Steering Committee, of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto) that will be rejected by the Reorganized Debtors pursuant to the Plan.

103. "*Released Parties*" means, collectively (a) the Debtors and the Debtors' current and former officers and directors, (b) the Prepetition First Lien Agent and the Prepetition First Lien Lenders, (c) the DIP Agent and the DIP Lenders, (d) the Creditors' Committee and all current and former members thereof and (e) with respect to each of the Persons named in (a) – (d) above, such Entity's directors, officers, shareholders, partners, members, employees, agents, affiliates, parents, subsidiaries, predecessors, successors, heirs, executors and assignees, attorneys, financial advisors, investment bankers, accountants and other professionals or representatives when acting in any such capacities.

104. "*Releasing Parties*" means, collectively, (a) the Prepetition First Lien Agent and the members of the Prepetition First Lien Steering Committee, (b) the DIP Agent and the DIP Lenders, (c) the Creditors' Committee and the members thereof, and (d) each Holder of a Claim that affirmatively votes to accept the Plan, each solely in its capacity as such.

105. "*Reorganized Debtors*" means the Debtors, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

106. "*Reorganized Holdings*" means Sbarro Holdings, LLC, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

107. "*Reorganized Sbarro*" means Sbarro, Inc., as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

108. "*Representatives*" means, with regard to an Entity, current and former officers, directors, members (including *ex officio* members), managers, employees, partners, advisors, attorneys, professionals, accountants, investment bankers, investment advisors, actuaries, Affiliates, financial advisors, consultants, agents, and other representatives of each of the foregoing Entities (whether current or former, in each case in his, her or its capacity as such).

109. "*Reserved Employee Equity*" means 10% of the New Common Stock to be issued under the Plan (on a fully-diluted basis), which stock shall be (i) authorized and reserved on account of the Management Equity Plan and other future employee equity compensation or incentive programs as determined by the New Board provided that no option granted pursuant to any such programs shall have an exercise price below the fair market value of the New Common Stock at the time of the grant and (ii) subject to the applicable provisions of the Shareholders' Agreement.[3]

110. "*Retained Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

111. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial conformance with the official bankruptcy forms, as the same may have been amended, modified or supplemented from time to time.

112. "*Section 510(b) Claims*" means any Claim against a Debtor that is subordinated pursuant to section 510(b) of the Bankruptcy Code, which shall include any Claim arising from the rescission of a purchase or sale of any Equity Interest, any claim for damages arising from the purchase or sale of any Equity Interest, or any claim for reimbursement, contribution or indemnification for such Claim.

---

[3]     The parameters of the Management Equity Plan and Reserved Employee Equity are the subject of ongoing discussions among the Debtors and the Prepetition First Lien Steering Committee and are subject to change.

113.    "*Securities*" means any instruments that qualify under section 2(a)(1) of the Securities Act, including the New Common Stock.

114.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, or any similar federal, state, or local law.

115.    "*Senior Notes*" means the unsecured 10.375% senior notes due 2015 issued pursuant to the Senior Notes Indenture.

116.    "*Senior Notes Claims*" means all claims arising out of the Senior Notes Indenture.

117.    "*Senior Notes Indenture*" means that certain Indenture dated as of January 31, 2007, among Sbarro, Inc., as issuer, certain Affiliates of Sbarro, Inc., as guarantors, and the Senior Notes Indenture Trustee, as amended, supplemented or otherwise modified from time to time through the Petition Date.

118.    "*Senior Notes Indenture Trustee*" means The Bank of New York, or its successor.

119.    "*Servicer*" means an indenture trustee, agent, servicer, or other authorized representative of Holders of Claims or Interests recognized by the Debtors.

120.    "*Shareholders Agreement*" means the stockholders agreement with respect to the New Common Stock to be effective on the Effective Date, which shall be included in the Plan Supplement and which shall be in form and substance reasonably satisfactory to the Prepetition First Lien Steering Committee.

121.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

122.    "*Unimpaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

123.    "*United States Trustee*" means the United States Trustee for the Southern District of New York.

124.    "*Unsecured Ongoing Operations Claims*" means all general unsecured Claims directly related to and arising solely from the receipt of goods and services by the Debtors held by Persons with whom the Debtors are conducting, and will continue to conduct, business as of the Effective Date; provided, however, that Unsecured Ongoing Operations Claims shall not include Administrative Claims.

125.    "*Unsecured Ongoing Operations Claims Distribution*" means $250,000.

126.    "*Voting Deadline*" means [5:00 p.m., prevailing Eastern Time, on [_____], 2011].

127.    "*Voting Record Date*" means [_____], 2011.

## ARTICLE II.

## ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS, PRIORITY TAX CLAIMS, AND UNITED STATES TRUSTEE STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Facility Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

A.    *Administrative Claims*

1.    General Administrative Claims

Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, except to the extent that a Holder of an Allowed General Administrative Claim and the applicable Debtors agree to less favorable treatment

to such Holder, each Holder of an Allowed General Administrative Claim will be paid the full unpaid amount of such Allowed Administrative Claim in Cash:  (a) on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter; (b) if a General Administrative Claim is Allowed after the Effective Date, on the date such General Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due; (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as the case may be; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided that, Allowed General Administrative Claims that arise in the ordinary course of the Debtors' business shall be paid in full in Cash in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions; provided further that Allowed General Administrative Claims do not include Claims filed after the applicable deadline set forth in the Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court).

> 2.     Professional Claims

>> (a)     Final Fee Applications

All final requests for Professional Fee Claims shall be filed no later than 45 days after the Confirmation Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

>> (b)     Payment of Interim Amounts

Except as otherwise provided in the Plan, Retained Professionals shall be paid pursuant to the Interim Compensation Order.

>> (c)     Professional Fee Escrow Account

On the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Retained Professionals.  The Professional Fee Escrow Account shall be maintained in trust for the Retained Professionals, including with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order.  Such funds in the Professional Fee Escrow Account shall not constitute property of the Reorganized Debtors.  The remaining amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Reorganized Debtors from the Professional Fee Escrow Account, without interest or other earnings therefrom, when such Claims are Allowed by a Bankruptcy Court order.  When all Allowed Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be paid to the Reorganized Debtors.

>> (d)     Professional Fee Reserve Amount

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Retained Professionals shall estimate their Accrued Professional Compensation prior to and as of the Effective Date and shall deliver such estimate to the Debtors on or before the Effective Date.  If a Retained Professional does not provide such estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Retained Professional; provided that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Retained Professional.  The total amount so estimated as of the Effective Date shall comprise the Professional Fee Reserve Amount.

>> (e)     Post-Confirmation Date Fees and Expenses

 Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, each Reorganized Debtor shall pay in Cash the reasonable legal fees and expenses incurred by that Reorganized Debtor or the Creditors' Committee after the Confirmation Date in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court.  The Reorganized Debtors shall pay, within ten Business Days after submission of a detailed invoice to the Reorganized Debtors, such reasonable claims for

compensation or reimbursement of expenses incurred by the Retained Professionals of the Debtors and the Creditors' Committee. If the Reorganized Debtors or Creditors' Committee dispute the reasonableness of any such invoice, the Reorganized Debtors, Creditors' Committee or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein. Upon the Confirmation Date, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Reorganized Debtor may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, except to the limited extent set forth in Article XII.N of the Plan, the Debtors shall have no obligation to pay any compensation or expense reimbursement for the Creditors' Committee or its Retained Professionals after the Effective Date and nothing herein should be construed to suggest otherwise.

(f)      Substantial Contribution Compensation and Expenses

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must file an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules on or before the Administrative Claims Bar Date.

3.      Administrative Claims Bar Date

All requests for payment of an Administrative Claim (other than DIP Facility Claims or Prepetition First Lien Lender Claims) that accrued on or before the Effective Date that were not otherwise accrued in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtors no later than 45 days after the Effective Date. A notice setting forth the Administrative Claims Bar Date will be filed on the Bankruptcy Court's docket and posted on the Debtors' restructuring website. Further notice of the Administrative Claims Bar Date will be included in the notice of the Confirmation Date and be provided as may be directed by the Bankruptcy Court. No request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order.

The Reorganized Debtors, in their sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. The Debtors may also choose to object to any Administrative Claim no later than 75 days from the Administrative Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.

Unless the Debtors or the Reorganized Debtors (or other party with standing) object to a timely-filed and properly served Administrative Claim, such Administrative Claim will be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be allowed and, if so, in what amount.

**Any requests for payment of Administrative Claims that are not properly filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register maintained by the Notice and Claims Agent and shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors or any action by the Bankruptcy Court.**

B.      *DIP Facility Claims*

Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release and discharge of and in exchange for release of all DIP Facility Claims (other than Claims under the DIP Facility that expressly survive the termination thereof), on the Effective Date, the DIP Facility Claims shall (a) convert on a dollar for dollar basis into the Exit Term Loan Facility pursuant to the Exit Credit Documents or (b) receive such other treatment as agreed by the Debtors and the applicable DIP Lender.

C.      *Priority Tax Claims*

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim:  (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the applicable Debtor or Reorganized Debtor, as applicable, and such Holder; *provided, however,* that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtors, Cash in an aggregate amount of such Allowed Priority Claim payable in installment payments over a period not more than five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and such Holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

D.      *United States Trustee Statutory Fees*

The Debtors shall pay all United States Trustee quarterly fees under 28 U.S.C § 1930(a)(6), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' business, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims*

This Plan constitutes a separate chapter 11 plan of reorganization for each Debtor.  Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims against and Interests in a particular Debtor are placed in Classes for each of the Debtors.[4]  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, DIP Facility Claims, and Priority Tax Claims, as described in Article II.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including, without limitation, voting, Confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

### Summary of Classification and Treatment of Claims and Interests

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition First Lien Lender Claims | Impaired | Entitled to Vote |
| 4 | Prepetition Second Lien Lender Claims | Impaired | Deemed to Reject |
| 5 | Unsecured Ongoing Operations Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Deemed to Reject |
| 7 | Equity Interests in Sbarro Holdings, LLC | Impaired | Deemed to Reject |
| 8 | Intercompany Interests | Unimpaired | Deemed to Accept |

---

[4]     Distributions under the Plan are <u>not</u> on a Debtor by Debtor basis.

B.      *Treatment of Claims and Interests Against the Debtors*

1.      <u>*Class 1 — Other Priority Claims*</u>

(a)     *Classification*: Class 1 consists of all Other Priority Claims against the Debtors.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim against the Debtors agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Other Priority Claim against the Debtors, each Holder of such Allowed Other Priority Claim shall be paid in full in Cash on or as reasonably practicable after (i) the Effective Date, (ii) the date on which such Other Priority Claim against the Debtors becomes an Allowed Other Priority Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting*: Class 1 is Unimpaired and Holders of Class 1 Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.      <u>*Class 2 — Other Secured Claims*</u>

(a)     *Classification*: Class 2 consists of all Other Secured Claims against the Debtors.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Other Secured Claim, each Holder of an Allowed Other Secured Claim, at the sole discretion of the applicable Debtor, shall (i) be paid in full in Cash including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code, (ii) receive the collateral securing its Allowed Other Secured Claim, or (iii) receive such other treatment rendering such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of default.

(c)     *Voting*: Class 2 is Unimpaired and Holders of Class 2 Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.      <u>*Class 3 — Prepetition First Lien Lender Claims*</u>

(a)     *Classification*: Class 3 consists of Prepetition First Lien Lender Claims against the Debtors.

(b)     *Allowance*: On the Effective Date, Prepetition First Lien Lender Claims shall be deemed Allowed in the aggregate amount of [176,300,000].

(c)     *Treatment*: In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Prepetition First Lien Credit Agreement Claim, each Holder of an Allowed Prepetition First Lien Lender Claim shall receive its Pro Rata share of each of (i) the Exit Term Loan Facility and (ii) 100% of the New Common Stock issued and outstanding as of the Effective Date (subject to dilution on account of the Reserved Employee Equity and/or shares issued in connection with Management Equity Plan).

Existing Letters of Credit shall be replaced or cash collateralized with the proceeds of the New Money Exit Facility to the extent necessary.

(d)    *Voting*:  Class 3 is Impaired and Holders of Class 3 Prepetition First Lien Lender Claims are entitled to vote to accept or reject the Plan.

4.    *Class 4 — Prepetition Second Lien Lender Claims*

(a)    *Classification*:  Class 4 consists of all Prepetition Second Lien Lender Claims against the Debtors.

(b)    *Treatment*:  Holders of Prepetition Second Lien Lender Claims shall not receive any distribution on account of such Prepetition Second Lien Lender Claims.  On the Effective Date, all Prepetition Second Lien Lender Claims shall be discharged.

(c)    *Voting*:  Class 4 is Impaired and Holders of Class 4 Prepetition Second Lien Lender Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 4 Prepetition Second Lien Lender Claims are not entitled to vote to accept or reject the Plan.

5.    *Class 5 — Unsecured Ongoing Operations Claims*

(a)    *Classification*: Class 5 consists of all Unsecured Ongoing Operations Claims against the Debtors.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Unsecured Ongoing Operations Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of such Unsecured Ongoing Operations Claim, each Holder of an Allowed Unsecured Ongoing Operations Claim shall receive its Pro Rata share of the Unsecured Ongoing Operations Distribution.

(c)    *Voting*:  Class 5 is Impaired and Holders of Class 5 Unsecured Ongoing Operations Claims are entitled to vote to accept or reject the Plan.

6.    *Class 6 — General Unsecured Claims*

(a)    *Classification*: Class 6 consists of all General Unsecured Claims against the Debtors.

(b)    *Treatment*:  Holders of General Unsecured Claims shall not receive any distribution on account of such General Unsecured Claims.  On the Effective Date, all General Unsecured Claims shall be discharged.

(c)    *Voting*:  Class 6 is Impaired and Holders of Class 6 General Unsecured Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

7.    *Class 7 — Equity Interests in Sbarro Holdings, LLC*

(a)    *Classification*: Class 7 consists of all Equity Interests in Sbarro Holdings, LLC.

(b)    *Treatment*:  Holders of Equity Interests in Sbarro Holdings, LLC shall not receive any distribution on account of such Equity Interests in Sbarro Holdings, LLC.  On the Effective Date, all Sbarro Holdings, LLC Equity Interests shall be discharged, cancelled, released, and extinguished.

(c)    *Voting*:  Class 7 is Impaired and Holders of Class 7 Equity Interests in Sbarro Holdings, LLC are conclusively deemed to have rejected the Plan pursuant to 1126(g) of the Bankruptcy Code.  Therefore, Holders of Equity Interests in Sbarro Holdings, LLC are not entitled to vote to accept or reject the Plan.

8. _Class 8 — Intercompany Interests_

    (a)     _Classification_: Class 8 consists of all Intercompany Interests.

    (b)     _Treatment_: Holders of Intercompany Interests shall be reinstated and the legal, equitable and contractual rights to which holders of Intercompany Interests are entitled shall remain unaltered to the extent necessary to implement the Plan.

    (c)     _Voting_: Class 8 is Unimpaired and Holders of Class 8 Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

C.     _Intercompany Claims_

Notwithstanding anything herein to the contrary, on the Effective Date or as soon thereafter as is reasonably practicable, at the option of the Debtors or the Reorganized Debtors, all Intercompany Claims will be: (i) preserved and reinstated, in full or in part; (ii) cancelled and discharged, in full or in part, in which case such discharged and satisfied portion shall be eliminated and the Holders thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such portion under the Plan; (iii) eliminated or waived based on accounting entries in the Debtors' or the Reorganized Debtors' books and records and other corporate activities by the Debtors or the Reorganized Debtors; or (iv) contributed to the capital of the obligation entity.

D.     _Special Provision Governing Unimpaired Claims_

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claim, including, but not limited to, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

E.     _Acceptance or Rejection of the Plan_

1.     Presumed Acceptance of Plan

Holders of Claims in Classes 1, 2, and 8 are Unimpaired under the Plan and are, therefore, presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Classes are not entitled to vote on the Plan and the vote of such Holders of Claims and Interests shall not be solicited.

2.     Voting Classes

Each Holder of an Allowed Claim in Classes 3 and 5 shall be entitled to vote to accept or reject the Plan.

3.     Deemed Rejection of the Plan

Holders of Claims in Classes 4, 6, and 7 and Holders of Equity Interests in Class 8 are Impaired and shall receive no distributions under the Plan on account of their Claims or Equity Interests and are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Claims in Classes 4, 6, and 7 and Holders of Equity Interests in Class 8 are not entitled to vote on the Plan and the votes of such Holders shall not be solicited.

4.     Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class thereof, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

F.      *Nonconsensual Confirmation*

Except as otherwise specifically provided in the Plan, if an Impaired Class shall not accept the Plan by the requisite statutory majority provided in sections 1126(c) or (d) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both.

G.      *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal or equitable subordination rights relating thereto.

H.      *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlements of all Claims and Equity Interests and controversies resolved pursuant to the Plan. Distributions made to Holders of Allowed Claims in any Class are intended to be final.

B.      *Restructuring Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that the Reorganized Debtors determine are necessary or appropriate.

C.      *Corporate Existence*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant

to the Plan and require no further action or approval. On the Effective Date, Reorganized Holdings shall file a certificate of conversion to corporation and the Certificate of Incorporation with the office of the Secretary of State of Delaware and shall thereby be converted into a Delaware corporation, governed by the Certificate of Incorporation and Bylaws.

D.      *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.      *Indemnification Provisions in Organizational Documents*

As of the Effective Date, each Debtor's bylaws shall provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, directors, officers, employees, or agents who were employed as directors, officers, employees, or agents of such Debtor, on or after the Petition Date at least to the same extent as the bylaws of each of the respective Debtors on the Petition Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Reorganized Debtors shall amend and/or restate its certificate of incorporation or bylaws before or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations or such directors', officers', employees', or agents' rights. Notwithstanding anything contained in this Plan, the Reorganized Debtors may in their sole discretion (but have no obligation to) honor each Indemnification Obligation to a director, officer or employee that was no longer employed by the Debtors in such capacity on or after the Petition Date provided that, for each such director, officer or employee, the Debtors shall be permitted to honor Indemnification Obligations only to the extent of available coverage under the applicable D&O Liability Insurance Policy.

F.      *Cancellation of Agreements, Senior Notes and Equity Interests*

On the later of the Effective Date and the date on which distributions are made pursuant to the Plan, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors under the Prepetition First Lien Loan Documents, the Prepetition Second Lien Loan Documents, the Senior Notes Indenture, and any other certificate, equity security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors and their Affiliates, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their Affiliates pursuant, relating or pertaining to any agreements, indentures, certificates of designation, by-laws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; except that:

1.      the DIP Facility shall continue in effect solely for the purpose of: (a) allowing Holders of the DIP Facility Claims to receive the distributions provided for hereunder and (b) allowing the DIP Agent to receive distributions from the Debtors and to make further distributions to the Holders of the DIP Facility Claims on account of such Claims, as set forth in Article VI of the Plan; (c) preserving the DIP Agent's right to indemnification from the Debtors pursuant and subject to the terms of the DIP Facility in respect of any claim or cause of action asserted against the DIP Agent;

2. the Prepetition First Lien Loan Documents shall continue in effect solely for the purpose of: (a) allowing Holders of the Prepetition First Lien Lender Claims to receive the distributions provided for hereunder and (b) allowing the Prepetition First Lien Agent to receive distributions from the Debtors and to make further distributions to the Holders of the Prepetition First Lien Lender Claims on account of such Claims, as set forth in Article VI of the Plan; and (c) preserving the Prepetition First Lien Agent's right to indemnification from the Debtors pursuant and subject to the terms of the Prepetition First Lien Loan Documents in respect of any claim or cause of action asserted against the Prepetition First Lien Agent; and

3. the foregoing shall not effect the cancellation of shares issued pursuant to the Plan nor any other shares held by one Debtor in the capital of another Debtor; and provided, further, however, that at the election of the Prepetition First Lien Steering Committee, the Prepetition First Lien Credit Facility may remain in effect and be amended and restated consistent with the Exit Term Loan Facility.

G.   *Sources of Cash for Plan Distributions and Transfers of Funds Among Debtors*

All Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan will be funded with Cash on hand, including cash from operations and the proceeds of the New Money Exit Facility. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors. The Debtors and the Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

From and after the Effective Date, the Reorganized Debtors, subject to any applicable limitations set forth in any post-Effective Date financing, shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the boards of directors of the applicable Reorganized Debtors deem appropriate.

H.   *Exit Financing and Approval of Exit Credit Documents*

On the Effective Date, the Reorganized Debtors will have total funded debt of $[●] million, in the form of the Exit Term Loan Facility and amounts funded under the New Money Exit Facility. The Reorganized Debtors may use the Exit Financing for any purpose permitted by the governing documents, including the funding of obligations under the Plan, satisfaction of ongoing working capital needs, and to cash collateralize existing or replacement letters of credit.

Confirmation of the Plan shall be deemed approval of the Exit Financing (including the Exit Term Loan Facility and the New Money Exit Facility and all transactions contemplated thereby, such as any supplementation or additional syndication of the Exit Financing, and all actions to be taken, undertakings to be made and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities and expenses provided for therein) and authorization for the Reorganized Debtors to enter into and execute the Exit Credit Documents and such other documents as may be required or appropriate.

The Exit Credit Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Credit Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Credit Documents (1) shall be deemed to be approved, (2) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Credit Documents, (3) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Credit Documents, and (4) shall not be subject to avoidance, recharacterization, or

subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the persons and entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors or any administrative agent under the Exit Credit Documents that are necessary to cancel and/or extinguish such publicly-filed Liens and/or security interests, in each case all costs and expenses in connection therewith to be paid by the Debtors or the Reorganized Debtors.

Notwithstanding anything to the contrary in the Confirmation Order or the Plan, the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of the loan documentation executed in connection with the Exit Credit Documents or any rights or remedies related thereto.

I. *Reorganized Debtors' Equity Interests*

1. <u>New Common Stock</u>

On the Effective Date, the Reorganized Debtors shall issue or reserve for issuance all of the New Common Stock. The New Common Stock shall represent all of the Equity Interests in Reorganized Holdings as of the Effective Date and shall be issued to Holders of Prepetition First Lien Lender Claims, subject to dilution on account of Reserved Employee Equity and/or shares issued in connection with the Management Equity Plan. From and after the Effective Date, subject to the right of the stockholders to amend the certificate of incorporation of Reorganized Holdings, Reorganized Holdings shall have one class and one series of New Common Stock. The issuance of the New Common Stock by Reorganized Holdings, including options or other equity awards reserved as Reserved Employee Equity and/or issued in connection with the Management Equity Plan, is authorized without the need for further corporate action and all of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable. For purposes of distribution, the New Common Stock will be deemed to have the Plan Equity Value, regardless of the date of distribution. Distributions of New Common Stock to the Prepetition First Lien Lenders will only be made through broker accounts via electronic issuance of the Shares and Reorganized Holdings will not issue separate stock certificates.

2. <u>Shareholders Agreement</u>

On the Effective Date, Reorganized Holdings and the holders of the New Common Stock shall enter into the Shareholders Agreement in substantially the form included in the Plan Supplement. The Shareholders Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Common Stock shall be bound thereby, in each case without the need for execution by any party thereto other than Reorganized Holdings.

J. *Section 1145 Exemption*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any securities pursuant to the Plan and any and all settlement agreements incorporated herein shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act to the maximum extent permitted thereunder and any other applicable law requiring registration by virtue of section 1145 of the Bankruptcy Code, prior to the offering, issuance, distribution or sale of securities. In addition, except as otherwise provided in the Plan, to the maximum extent provided under section 1145 of the Bankruptcy Code, any and all New Common Stock contemplated by the Plan and any and all settlement agreements incorporated therein will be freely tradable by the recipients thereof, subject to: (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the

definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (2) the restrictions, if any, on the transferability of such Securities and instruments; and (3) applicable regulatory approval.

K.      *Organizational Documents*

Subject to Article IV.E of the Plan, the Reorganized Debtors shall enter into such agreements and amend their corporate governance documents to the extent necessary to implement the terms and conditions of the Plan. Without limiting the generality of the foregoing, as of the Effective Date, Reorganized Holdings shall be governed by the Certificate of Incorporation and the Bylaws. From and after the Effective Date, the organizational documents of each of the Reorganized Debtors will comply with section 1123(a)(6) of the Bankruptcy Code to the extent required by section 1123(a)(6) of the Bankruptcy Code.

L.      *Effectuating Documents; Further Transactions*

The Debtors or the Reorganized Debtors, as applicable, may take all actions to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant hereto. The secretary and any assistant secretary of each Debtor shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors, managers, partners, or members of the Debtors shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, directors, managers, partners, or members of the Debtors, or the need for any approvals, authorizations, actions, or consents.

M.      *Exemption from Certain Transfer Taxes and Recording Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

N.      *Directors and Officers of Reorganized Holdings and the Other Reorganized Debtors*

1.      <u>The New Board</u>

The New Board shall consist of five directors selected by the Prepetition First Lien Steering Committee in consultation with the Debtors and subject to background checks reasonably satisfactory to the Debtors. To the extent known, the identity of the members of the New Board will be disclosed in the Plan Supplement or prior to the Confirmation Hearing. The existing directors of each of the subsidiary Debtors shall remain in their current capacities as directors of the applicable Reorganized Debtor until replaced or removed in accordance with the organizational documents of the applicable Reorganized Debtors.

2.     Senior Management

Prior to the Confirmation Hearing, the Debtors will have engaged a search firm acceptable to the Prepetition First Lien Steering Committee to conduct a process for selection of the Reorganized Debtors' chief executive officer. The Debtors' interim chief executive officer as of the Petition Date shall be considered as a candidate without deference to his incumbency.

The existing officers of the Debtors as of the Petition Date (including the Debtors' interim chief executive officer unless and until a replacement chief executive officer is selected) shall remain in their current capacities as officers of the Reorganized Debtors, subject to the ordinary rights and powers of the board of directors to remove or replace them in accordance with the Debtors' organizational documents and any applicable employment agreements.

O.     *Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to the releases set forth in Article IX below, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them. The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date.

Subject to the releases set forth in Article IX below, the Reorganized Debtors reserve and shall retain the Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor, as the case may be. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.

## ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES; EMPLOYEE BENEFITS; AND INSURANCE POLICIES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each of the Debtors' Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court will be deemed assumed as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code *except* any Executory Contract or Unexpired Lease (a) identified on the Rejected Executory Contract/Unexpired Lease List (which shall be filed with the Bankruptcy Court on the Contract/Lease Schedule Date) as an Executory Contract or Unexpired Lease designated for rejection, or (b) which is the subject of a separate motion or notice to reject filed by the Debtors and pending as of the Confirmation Hearing.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of such Executory Contracts and Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, and not assigned to a third party on or prior to the Effective Date, shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. Notwithstanding anything to the contrary in the Plan, the Debtors or Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Executory Contracts and Unexpired Leases identified on the Assumed Executory Contract/Unexpired Lease List and the Rejected Executory Contract/Unexpired Lease List in their discretion prior to the Effective Date on no less than seven days' notice to the non-debtor Entity party thereto.

B.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. At least ten days prior to the Voting Deadline, to the extent not previously filed with the Bankruptcy Court and served on affected counterparties, the Debtors shall provide for notices of proposed assumption and proposed cure amounts to be sent to applicable contract and lease counterparties, together with procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a contract or lease counterparty to a proposed assumption or related cure amount must be filed, served, and actually received by the Debtors prior to the Confirmation Hearing (or such other date as may be provided in the applicable assumption notice). Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged without further notice to or action, order or approval of the Bankruptcy Court.

C.      *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection or repudiation of the Debtors' Executory Contracts pursuant to the Plan or otherwise must be filed with the Notice and Claims Agent within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Proofs of Claim arising from the rejection or repudiation of the Debtors' Executory Contracts that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Reorganized Debtor without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection or repudiation of the Executory Contract shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts shall be treated as General Unsecured Claims.

D.      *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

E.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

F.      *Assumption of Directors and Officers Insurance Policies*

The Debtors do not believe that the D&O Liability Insurance Policies issued to, or entered into by, the Debtors prior to the Petition Date constitute executory contracts. To the extent that such insurance policies or agreements are considered to be executory contracts, then, notwithstanding anything in the Plan to the contrary, the Reorganized Debtors shall be deemed to have assumed all of the Debtors' unexpired D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.

In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

G.      *Indemnification and Reimbursement Obligations*

On and from the Effective Date, and except as prohibited by applicable law or subject to the limitations set forth herein, the Reorganized Debtors shall assume all indemnification obligations currently in place, whether in the bylaws, certificates of incorporation (or other formation documents), board resolutions, employment contracts or other agreements for the directors, officers, managers, employees, attorneys, other professionals and agents

employed by the Debtors in such capacity on or after the Petition Date to the extent set forth herein. Without limiting the foregoing and except as prohibited by applicable law, the Debtors shall indemnify and hold harmless each of the Indemnified Parties for all costs, expenses, loss, damage or liability incurred by any such Indemnified Party arising from or related in any way to any and all Causes of Action whether known or unknown, whether for tort, contract, violations of federal or state securities laws or otherwise, including any claims or causes of action, whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, based in whole or in part upon any act or omission, transaction or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including those arising from or related in any way to: (1) any action or omission of any such Indemnified Party with respect to any indebtedness of or any Equity Interest in the Debtors (including any action or omission of any such Indemnified Party with respect to the acquisition, holding, voting or disposition of any such investment); (2) any action or omission of any such Indemnified Party in such Indemnified Party's capacity as an officer, director, member, employee, partner or agent of, or advisor to any Debtor; (3) any disclosure made or not made by any Indemnified Party to any current or former Holder of any such indebtedness of or any such Equity Interest in the Debtors; (4) any consideration paid to any such Indemnified Party by any of the Debtors in respect of any services provided by any such Indemnified Party to any Debtor; and (5) any action taken or not taken in connection with the Chapter 11 Cases or the Plan. In the event that any such Indemnified Party becomes involved in any action, proceeding or investigation brought by or against any Indemnified Party, as a result of matters to which the foregoing "Indemnification" may relate, the Reorganized Debtors shall promptly reimburse any such Indemnified Party for its reasonable and documented legal and other expenses (including advancing the costs of any investigation and preparation prior to final adjudication) incurred in connection therewith as such expenses are incurred and after a request for indemnification is made in writing, with reasonable documentation in support thereof. Notwithstanding anything contained in this Plan, the Reorganized Debtors may in their sole discretion (but have no obligation to) honor each Indemnification Obligation to a director, officer or employee that was no longer employed by the Debtors in such capacity on or after the Petition Date <u>provided that</u>, for each such director, officer or employee, the Debtors shall be permitted to honor Indemnification Obligations only to the extent of available coverage under the applicable D&O Liability Insurance Policy.

H.    *Employee Compensation and Benefits*

1.    <u>Compensation and Benefit Programs</u>

Subject to the provisions of the Plan, all Compensation and Benefits Programs shall be treated as Executory Contracts under the Plan and deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for:

(a)    all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Program that provide for rights to acquire Equity Interests in Sbarro, Inc.;

(b)    Compensation and Benefits Programs listed in the Plan Supplement as executory contracts to be rejected;

(c)    Compensation and Benefits Programs that have previously been rejected; and

(d)    Compensation and Benefits Programs that, as of the entry of the Confirmation Order, are the subject of pending rejection procedures or a motion to reject, or have been specifically waived by the beneficiaries of any employee benefit plan or contract.

Any assumption of Compensation and Benefits Programs pursuant to the terms herein shall not be deemed to trigger any applicable change of control, immediate vesting, termination, or similar provisions therein (unless a Compensation and Benefits Program counterparty timely objects to the assumption contemplated by the Plan in which case any such Compensation and Benefits Program shall be deemed rejected as of immediately prior to the Petition Date). No counterparty shall have rights under a Compensation and Benefits Program assumed pursuant to the Plan other than those applicable immediately prior to such assumption.

2.      Workers' Compensation Programs

As of the Effective Date, except as set forth in the Plan Supplement, the Debtors and the Reorganized Debtors shall continue to honor their obligations under:  (1) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (2) the Debtors' written contracts, agreements, agreements of indemnity, self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance.  All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; provided that nothing in the Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs, and plans; provided further that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state law.

3.      Management Compensation Plan

Subject only to the occurrence of the Effective Date, the Management Compensation Plan shall become effective without any further action by the Reorganized Debtors.

4.      Management Equity Plan

As soon as reasonably practicable after the Effective Date, the New Board will adopt and implement the Management Equity Plan, pursuant to which retentive and performance-based equity awards (in the form to be determined by the New Board) of no less than 1/2 of the Reserved Employee Equity shall be allocated to certain key employees of the Reorganized Debtors and members of the New Board, a portion of which may be reserved by the New Board for allocation to the Reorganized Debtors' chief executive officer if the selection process for such chief executive officer has not then been completed.[5]

**ARTICLE VI.**

**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      *Distribution on Account of Claims and Interests Allowed as of the Effective Date*

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Interests Allowed on or before the Effective Date shall be made on the Initial Distribution Date; provided, however, that (1) Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business or industry practice, and (2) in accordance with Article II.C herein, Allowed Priority Tax Claims, unless otherwise agreed, shall receive (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus, to the extent provided for by section 511 of the Bankruptcy Code, interest at the rate determined under applicable nonbankruptcy law; (b) such other treatment as may be agreed to by such Holder and the applicable Debtors or otherwise determined upon an order of the Bankruptcy Court; or (c) treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

B.      *Distributions on Account of Claims and Interests Allowed After the Effective Date*

1.      Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the

---

[5]      The parameters of the Management Equity Plan and Reserved Employee Equity are the subject of ongoing discussions among the Debtors and the Prepetition First Lien Steering Committee and are subject to change.

Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim or Interest; provided, however, that (a) Disputed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with Article IX.A of the Plan, on the Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim.

### 2. Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate reserves for potential payment of such Claims.

### C. *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise herein, on the Initial Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on or as soon as reasonably practicable after the date that such a Claim becomes an Allowed Claim), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class. Distributions on account of General Unsecured Claims that become Allowed Claims before the Effective Date shall be paid on the Effective Date, or as soon as practicable thereafter.

If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the applicable class treatment or in Article VII herein. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

### D. *Delivery of Distributions*

### 1. Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded security is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

### 2. Delivery of Distributions in General

Except as otherwise provided in the Plan, the Debtors or the Reorganized Debtors, as applicable shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Debtors or the Reorganized Debtors, as applicable; and *provided further,* that the address for each Holder of an Allowed Claim shall be the address set forth in any Proof of Claim filed by that Holder.

### 3. Delivery of Distributions to Prepetition First Lien Lender Claims

The Prepetition First Lien Agent shall be deemed to be the holder of all Prepetition First Lien Lender Claims, as applicable, for purposes of distributions to be made hereunder, and all distributions on account of such

Prepetition First Lien Lender Claims shall be made to or on behalf of the Prepetition First Lien Agent. The Prepetition First Lien Agent shall hold or direct such distributions for the benefit of the holders of Allowed Prepetition First Lien Lender Claims, as applicable. As soon as practicable following compliance with the requirements set forth in Article VII of the Plan, the Prepetition First Lien Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of such holders of Allowed Prepetition First Lien Lender Claims. Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Prepetition First Lien Agent shall not have any liability to any person with respect to distributions made or directed to be made by the Prepetition Agent.

4.     <u>Distributions by Distribution Agents (if any)</u>

The Debtors and the Reorganized Debtors, as applicable, shall have the authority, in their sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder. To the extent the Debtors and the Reorganized Debtors, as applicable, do determine to utilize a Distribution Agent to facilitate the distributions under the Plan to Holders of Allowed Claims, any such Distribution Agent would first be required to: (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required under the Plan; (c) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required under the Plan to be distributed by such Distribution Agent; and (d) post a bond, obtain or surety or provide some other form of security for the performance of its duties, the costs and expenses of procuring which shall be borne by the Debtors or the Reorganized Debtors, as applicable.

The Debtors or the Reorganized Debtors, as applicable, shall pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions, or consents. The Distribution Agents shall submit detailed invoices to the Debtors or the Reorganized Debtors, as applicable, for all fees and expenses for which the Distribution Agent seeks reimbursement and the Debtors or the Reorganized Debtors, as applicable, shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtors or the Reorganized Debtors, as applicable, deem to be unreasonable. In the event that the Debtors or the Reorganized Debtors, as applicable, object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtors or the Reorganized Debtors, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses. In the event that the Debtors or the Reorganized Debtors, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

5.     <u>Minimum Distributions</u>

Notwithstanding anything herein to the contrary, the Reorganized Debtors shall not be required to make distributions or payments of less than $10 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar or fractional share of New Common Stock under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar or share of New Common Stock (up or down), with half dollars and half shares of New Common Stock or less being rounded down.

No Distribution Agent shall have any obligation to make a distribution on account of an Allowed Claim if: (a) the aggregate amount of all distributions authorized to be made from on the Periodic Distribution Date in question is or has an economic value less than $25,000, unless such distribution is a final distribution; or (b) the amount to be distributed to the specific Holder of an Allowed Claim on such Periodic Distribution Date does not constitute a final distribution to such Holder and is or has an economic value less than $10, which shall be treated as an undeliverable distribution under Article VI.D.6 below.

6. Undeliverable Distributions

(a) Holding of Certain Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtors (or their Distribution Agent) as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtors (or their Distribution Agent) are notified in writing of such Holder's then current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors, subject to Article VI.D.6(b) hereof, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

(b) Failure to Claim Undeliverable Distributions

No later than 120 days after the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court a list of the Holders of undeliverable distributions. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtors for as long as the Chapter 11 Cases stay open. Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtors of such Holder's then current address in accordance herewith within 180 days of the Effective Date, shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property.

In such cases any Cash or New Common Stock held for distribution on account of Allowed Claims shall be redistributed to Holders of Allowed Claims in the applicable Class on the next Periodic Distribution Date free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

(c) Failure to Present Checks

Checks issued by the Reorganized Debtors (or their Distribution Agent) on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check. In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, the Reorganized Debtors shall file with the Bankruptcy Court a list of the Holders of any un-negotiated checks no later than 160 days after the issuance of such checks. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtors for as long as the Chapter 11 Cases stay open. Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.

Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 120 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property. In such cases, any Cash held for distribution on account of such Claims shall be redistributed to Holders of Allowed Claims in the applicable Class on the next Periodic Distribution Date, free of any Claims of such Holder with respect thereto, subject to the provisions in Article VI.D.5 hereof. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

E. *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding

distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

F.      *Setoffs*

The Debtors and the Reorganized Debtors may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any Claims, Equity Interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim. In the event that any such Claims, Equity Interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved Claims, Equity Interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claims, Equity Interests, rights and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically provided herein.

G.      *Surrender of Canceled Instruments or Securities*

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer). Such surrendered Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to Certificates evidencing Claims that are rendered Unimpaired under the Plan.

H.      *Claims Paid or Payable by Third Parties.*

        1.      <u>Claims Paid by Third Parties</u>

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

If the Debtors become aware of the payment by a third party, the Debtors or Reorganized Debtors, as applicable, will send a notice of wrongful payment to such party requesting return of any excess payments and advising the recipient of the provisions of the Plan requiring turnover of excess estate funds. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2. <u>Claims Payable by Insurance</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**

**PROCEDURES FOR RESOLVING DISPUTED,
CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS**

A. *Allowance of Claims and Interests*

After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Equity Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

B. *Prosecution of Objections to Claims*

Except as otherwise specifically provided in the Plan, the Debtors, prior to the Effective Date, and the Reorganized Debtors, after the Effective Date, shall have the sole authority: (1) to file, withdraw or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

C. *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtors or Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.    *Adjustment to Claims and Interests Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Disallowance of Claims or Interests*

Except for any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims and Interests may not receive any distributions on account of such Claims and Interests until such time as such Causes of Action against that Entity have been settled or an order of the Bankruptcy Court with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors.  All Claims filed on account of an Indemnification Obligation to a director, officer or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order or approval of the Bankruptcy Court.  All Claims filed on account of an employee benefit shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent the Reorganized Debtors elect to honor such employee benefit, without any further notice to or action, order or approval of the Bankruptcy Court.

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE BANKRUPTCY COURT OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER**.

F.    *Offer of Judgment*

The Reorganized Debtors are authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the Holder of a Claim or Interest must pay the costs incurred by the Reorganized Debtors after the making of such offer, the Reorganized Debtors are entitled to setoff such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

G.    *Amendments to Claims*

On or after the Effective Date, except as provided herein, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and, to the extent such prior authorization is not received, any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

## ARTICLE VIII.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.    *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.    The Bankruptcy Court shall have approved the Disclosure Statement, in a manner acceptable to the Debtors and the Prepetition First Lien Steering Committee, as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2. The Plan and all Plan Supplement documents, including any amendments, modifications, or supplements thereto, shall be in form and substance reasonably acceptable to the Debtors and the Prepetition First Lien Steering Committee.

3. The Confirmation Order shall have been entered and become a Final Order in form and in substance reasonably satisfactory to the Debtors and the Prepetition First Lien Steering Committee.

4. All documents and agreements necessary to implement the Plan, including, without limitation, the Exit Credit Documents shall have (a) been tendered for delivery and (b) been effected or executed. All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

5. The Management Compensation Plan shall be in form and in substance reasonably satisfactory to the Debtors and the Prepetition First Lien Steering Committee.

6. The Reorganized Debtors shall have a minimum of $10 million of unrestricted Cash after giving effect to cash distributions made pursuant to the Plan and funds received from the initial draw of the New Money Exit Facility.

7. All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

8. The Professional Fee Escrow Account shall have been established and funded.

B. *Waiver of Conditions*

The Debtors or the Reorganized Debtors, as applicable, with the consent of the Prepetition First Lien Steering Committee, may waive any of the conditions to the Effective Date set forth above at any time, without any notice to parties in interest and without any further notice to or action, order or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm the Plan. The failure of the Debtors or Reorganized Debtors, as applicable, or the Prepetition First Lien Steering Committee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

C. *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Debtors may determine, upon notice to the Bankruptcy Court, that the Plan is null and void in all respects, and nothing contained in the Plan, the Confirmation Order or the Disclosure Statement shall: (1) constitute a waiver or release of any Cause of Action or Claim; (2) constitute an admission, acknowledgment, offer or undertaking in any respect by any party, including the Debtors; or (3) otherwise prejudice in any manner the rights of any party, including the Debtors.

## ARTICLE IX.

## RELEASE, INJUNCTION, AND RELATED PROVISIONS

A. *Discharge of Claims and Termination of Interests*

Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors, the Reorganized Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all

debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

B.      ***Releases by the Debtors***

        **PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE SERVICE OF THE RELEASED PARTIES TO FACILITATE THE EXPEDITIOUS REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR EQUITY INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE DEBTORS' RESTRUCTURING, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE EXIT CREDIT DOCUMENTS OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR A CRIMINAL ACT TO THE EXTENT SUCH ACT OR OMISSION IS DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR A CRIMINAL ACT.**

        **THE FOREGOING RELEASE SHALL NOT APPLY TO ANY EXPRESS CONTRACTUAL OR FINANCIAL OBLIGATIONS OR ANY RIGHT OR OBLIGATIONS ARISING UNDER OR THAT IS PART OF THE PLAN OR ANY AGREEMENTS ENTERED INTO PURSUANT TO, IN CONNECTION WITH OR CONTEMPLATED BY THE PLAN.**

C.      ***Releases by Holders of Claims and Equity Interests***

        **AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EACH OF THE RELEASING PARTIES SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS AND THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, EQUITY INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF A DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW,**

EQUITY OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE CHAPTER 11 CASES, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, THE EXIT CREDIT DOCUMENTS OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR A CRIMINAL ACT TO THE EXTENT SUCH ACT OR OMISSION IS DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR A CRIMINAL ACT.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE DOES NOT RELEASE THE PERSONAL LIABILITY OF ANY OF THE AFOREMENTIONED RELEASED PARTIES IN THIS ARTICLE IX FOR ANY STATUTORY VIOLATION OF APPLICABLE TAX LAWS OR BAR ANY RIGHT OF ACTION ASSERTED BY A GOVERNMENTAL TAXING AUTHORITY AGAINST THE AFOREMENTIONED RELEASED PARTIES FOR ANY STATUTORY VIOLATION OF APPLICABLE TAX LAWS.

D.    *Exculpation*

UPON AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE DEBTORS AND THEIR DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, RESTRUCTURING CONSULTANTS AND OTHER PROFESSIONAL ADVISORS AND AGENTS WILL BE DEEMED TO HAVE SOLICITED ACCEPTANCES OF THIS PLAN IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE , INCLUDING SECTION 1125(E) OF THE BANKRUPTCY CODE.

EXCEPT WITH RESPECT TO ANY ACTS OR OMISSIONS EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS, THE EXCULPATED PARTIES SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING, OR EFFECTING THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS; <u>PROVIDED</u> THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; <u>PROVIDED FURTHER</u> THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING HIS, HER OR ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE PLAN OR ANY OTHER RELATED DOCUMENT, INSTRUMENT, OR AGREEMENT.

E.    *Injunction*

**THE SATISFACTION, RELEASE AND DISCHARGE PURSUANT TO THIS ARTICLE X OF THE PLAN SHALL ALSO ACT AS AN INJUNCTION AGAINST ANY PERSON BOUND BY SUCH PROVISION AGAINST COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, OR RECOVER ANY CLAIM OR CAUSE OF ACTION SATISFIED, RELEASED, OR DISCHARGED UNDER THE PLAN OR THE CONFIRMATION ORDER TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED BY THE BANKRUPTCY CODE, INCLUDING, WITHOUT LIMITATION, TO THE EXTENT PROVIDED FOR OR AUTHORIZED BY SECTIONS 524 AND 1141 THEREOF.**

F.    *Setoffs*

Except as otherwise provided herein, each Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder.

G.    *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns.

## ARTICLE X.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4. Ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5. Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. Adjudicate, decide or resolve any and all matters related to Causes of Action;

7. Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9. Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11. Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

12. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

14. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16. Enter an order or final decree concluding or closing the Chapter 11 Cases;

17. Adjudicate any and all disputes arising from or relating to distributions under the Plan;

18. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19. Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan (other than any dispute arising after the Effective Date under, or directly with respect to, the Exit Term Loan Facility, which such disputes shall be adjudicated in accordance with the terms of the Exit Term Loan Facility);

21. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22. Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

23. Enforce all orders previously entered by the Bankruptcy Court; and

24. Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XI.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

A. *Modification of Plan*

Subject to the limitations contained in the Plan: (1) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

B. *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C. *Revocation of Plan*

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.   The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

D.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

F.    *Service of Documents*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| Debtors | Counsel to the Debtors |
|---|---|
| Sbarro, Inc.<br>401 Broadhollow Road<br>Melville, New York 11747<br>Attn.:  Stuart Steinberg | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn.:  Edward O. Sassower and Nicole L. Greenblatt<br><br>and<br><br>Curtis, Mallet-Prevost, Colt & Mosle LLP<br>101 Park Avenue<br>New York, New York 10178<br>Attn:  Steven J. Reisman |
| **Counsel to the Agent for the First Lien Prepetition and DIP Lenders** | **Counsel to the Second Lien Prepetition Lenders** |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attn:  Timothy Graulich and Steven Krause | Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York<br>Attn.:  Susheel Kirpalani and Daniel Holzman |

| Counsel to the Creditors' Committee | Indenture Trustee for the Senior Notes |
|---|---|
| Otterbourg, Steindler, Houston & Rosen, P.C.<br>230 Park Avenue<br>New York, New York 10169<br>Attn.: Scott L. Hazan and David M. Posner | The Bank of New York<br>Attn.: Corporate Trust Division, Corporate Finance Unit<br>101 Barclay Street, SW<br>New York, NY 10286 |
| **Counsel to the Ad Hoc**<br>**Group of Certain Holders of the Senior Notes** | **United States Trustee** |
| Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, New York 10004-2498<br>Attn.: Andrew G. Dietderich | Office of the United States Trustee<br>for the Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn.: Elisabetta Gasparini and Paul K. Schwartzburg |

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

In accordance with Bankruptcy Rules 2002 and 3020(c), within ten (10) Business Days of the date of entry of the Confirmation Order, the Debtors shall serve the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; provided that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. To supplement the notice described in the preceding sentence, within twenty days of the date of the Confirmation Order the Debtors shall publish the Notice of Confirmation once in *The Wall Street Journal* (National Edition). Mailing and publication of the Notice of Confirmation in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

G.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.      *Entire Agreement*

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided that corporate governance matters relating to Debtors or Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

J.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date or the Solicitation Date, as applicable. After the exhibits and documents are filed, copies of such exhibits and documents shall have been available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' private website at http://dm.epiq11.com/sbarro or the Bankruptcy Court's website at www.nysb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      *Nonseverability of Plan Provisions upon Confirmation*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

L.      *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

M.      *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control

N.      *Dissolution of Creditors' Committee*

On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; provided that after the Effective Date and the conclusion of any appeals or other challenges or matters with respect to entry of the Confirmation Order, the Creditors' Committee's functions shall be restricted to, and the Creditors' Committee shall not be heard on any issue except, obtaining a Final Order of the Bankruptcy Court authorizing or approving Accrued Professional Compensation of its Retained Professionals, or the representation of the Creditors' Committee in connection with the review of and the right to be heard in connection with all Professional Fee Claims. Following the Confirmation Date, in accordance with the foregoing, the attorneys and financial advisors to the Creditors' Committee shall be entitled to assert any reasonable claims for compensation for services rendered or reimbursement for expenses incurred after the Confirmation Date in connection with services to the Creditors' Committee.

O.      *Section 1125(e) Good Faith Compliance*

The Debtors, Reorganized Debtors, the Prepetition First Lien Agent, the DIP Agent, the Creditors' Committee, and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

P.        *Further Assurances*

The Debtors, Reorganized Debtors, all Holders of Claims receiving distributions hereunder and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

Q.        *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

Respectfully submitted, as of the date first set forth above,

**SBARRO, INC. (on behalf of itself and all other Debtors)**

By: _/s/_ _____
Name: [_____]
Title: [_____]

**<u>EXHIBIT 1</u>**

Existing Letters of Credit

## EXHIBIT 1

Existing Letters of Credit

| Lender | Face Amount of Letters of Credit Outstanding | Beneficiary | Expiration Date |
|---|---|---|---|
| BANK OF AMERICA, N.A. | $665,054.30 | Sol Goldman Investments LLC 640 Fifth Avenue, Third Floor New York, NY 10019 | February 29, 2012 |
| BANK OF AMERICA, N.A. | $400,000.00 | Madison/Fifth Associates, LLC 277 Park Avenue, Suite 4700 New York, NY 10172 | December 31, 2011 |
| BANK OF AMERICA, N.A. | $45,833.33 | Marketplace Redwood Ltd Partnership One Wells Avenue Newton, MA 02459 | December 31, 2011 |
| BANK OF AMERICA, N.A. | $1,000,000.00 | 1604-1610 Broadway Owner, LLC c/o SL Green Management Corp. 420 Lexington New York, NY 10170 | December 31, 2011 |
| BANK OF AMERICA, N.A. | $45,833.33 | Marketplace Redwood Ltd Partnership One Wells Avenue Newton, MA 02459 | December 31, 2011 |
| BANK OF AMERICA, N.A. | $108,682.83 | Hauppauge, LLC c/o Lerner-Heidenberg Properties 234 Closter Dock Road Closter, NJ 07624 | December 31, 2011 |
| BANK OF AMERICA, N.A. | $35,040.30 | City of San Antonio Aviation Department 9800 Airport Boulevard San Antonio, TX 78216 | November 1, 2011 |
| BANK OF AMERICA, N.A. | $867,000.00 | Performance Food Group, Inc. 12500 West Creek Parkway Richmond, VA 23238 | November 8, 2011 |
| BANK OF AMERICA, N.A. | $90,667.44 | Deer Park, LLC c/o Lerner-Heidenberg Properties 234 Closter Dock Road Closter, NJ 07624 | November 30, 2011 |
| **TOTAL** | $3,258,111.53 | | |

## **EXHIBIT 2**

Exit Term Loan Facility Term Sheet

<u>**EXHIBIT 2**</u>

**Exit Term Loan Facility**<br>**Summary of Principal Terms and Conditions**[1]

| | |
|---|---|
| **Borrower** | Reorganized Sbarro, Inc. ("**Borrower**") |
| **Guarantors** | Reorganized Holdings and each of Borrower's direct and indirect domestic subsidiaries |
| **Conditions to Closing** | Usual and customary for facilities of this nature, and to include without limitation:<br>(i)  the satisfaction of the majority of the Exit Term Loan Lenders, in their sole discretion, with:<br>    a. the Plan,<br>    b. the terms, entry and effectiveness of a final, non-appealable confirmation order with respect to the Plan and<br>    c. the effectiveness of the Plan and the reorganization of the Company and its affiliated debtors pursuant to the terms of the Plan;<br>(ii)  cash at closing to be at least $10 million and<br>(iii) other conditions as deemed necessary by the Exit Term Loan Lenders. |
| **Facility Amount & Type** | A senior secured first lien term loan facility (the "**Exit Term Loan Facility**;" the loans thereunder, "**Exit Term Loans**;" the documentation with respect thereto, the "**Exit Term Loan Facility Documentation**;" and the lenders with respect thereto, the "**Exit Term Loan Lenders**") in an aggregate principal amount, to be determined in the Steering Committee's sole discretion, not to exceed $110 million |
| **Maturity** | Fifth anniversary of the effective date of the Plan |
| **Collateral** | A perfected first priority lien on all assets of the Borrower and the Guarantors, subject to customary exclusions |
| **Interest Rate** | LIBOR + 9.50% |
| **Additional Pricing Terms** | LIBOR Floor of 1.50%<br>During the continuation of an Event of Default, such rate shall be increased by 2% |
| **Upfront Fees** | 1% on the DIP Facility Claims converted into notes under the Exit Term Loan Facility; none on the converted Prepetition First Lien Lender Claims |
| **Scheduled Amortization** | None |
| **Call Protection** | Not callable in year 1. Callable at 103%, 102% and 101% in year 2, 3 and 4, respectively |

---

[1] Capitalized terms used but not defined herein have the meanings set forth in the Plan to which this Exhibit 2 is attached.

| | |
|---|---|
| **Mandatory Prepayments** | The Exit Term Loans shall be prepaid with:<br>(i)  75% of Excess Cash Flow (to be defined in the Exit Term Loan Facility Documentation),<br>(ii)  100% of the net cash proceeds of asset sales (including involuntary dispositions and subject to de minimis exclusions to be substantially the same as those set forth in the Prepetition First Lien Credit Facility),<br>(iii) 50% of the proceeds of equity issuances and<br>(iv) 100% of the proceeds of debt incurrences (other than debt permitted under the Exit Term Loan Facility Documentation) |
| **Representations and Warranties** | Usual and customary for facilities of this type |
| **Affirmative and Negative Covenants** | The Reorganized Debtors shall be permitted to incur priority debt in an amount not to exceed $26.5 million, inclusive of, and on the same terms as, the New Money Exit Facility<br><br>Other usual and customary for facilities of this type |
| **Financial Covenants** | 1. Maximum leverage ratio<br>2. Minimum interest coverage ratio<br>3. Maximum capital expenditures |
| **Events of Default** | Usual and customary for facilities of this type |
| **Financial and Other Reporting** | Usual and customary for facilities of this type |
| **Amendments and Voting** | Usual and customary for facilities of this type |
| **Expenses and Indemnification** | Usual and customary for facilities of this type |
| **Other Provisions** | The Exit Term Loan Facility Documentation will include customary provisions regarding increased costs, illegality, tax indemnities, waiver of trial by jury and other similar provisions |
| **Assignments and Participations** | Substantially the same as those set forth in the Prepetition First Lien Credit Facility |
| **Governing Law** | State of New York |
| **Exit Facility Agent** | Cantor Fitzgerald Securities |

## **EXHIBIT 3**

New Money Exit Facility Term Sheet

[TO COME]