**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SBARRO, INC., *et al.*,[1] | ) Case No. 11-11527 (SCC) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND
### ORDER CONFIRMING THE FIRST AMENDED JOINT CHAPTER 11
### PLAN OF REORGANIZATION OF SBARRO, INC. AND ITS DEBTOR AFFILIATES

Sbarro, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), having:[2]

a.   commenced these chapter 11 cases (collectively, the "***Chapter 11 Cases***") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***");

b.   continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.   filed, on August 10, 2011, the *Proposed Joint Chapter 11 Plan of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 417] and the *Disclosure Statement for the Proposed Joint Chapter 11 Plan of Sbarro, Inc. and Its Debtor Affiliates* [Docket

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sbarro, Inc. (1939); Sbarro Holdings, LLC (3819); Carmela's of Kirkman Operating, LLC (1182); Carmela's of Kirkman LLC (7703); Carmela's, LLC (8088); Corest Management, Inc. (9134); Demefac Leasing Corp. (2379); Larkfield Equipment Corp. (7947); Las Vegas Convention Center LLC (7645); Sbarro America Properties, Inc. (9540); Sbarro America, Inc. (9130); Sbarro Blue Bell Express LLC (1419); Sbarro Commack, Inc. (4007); Sbarro Express LLC (0253); Sbarro New Hyde Park, Inc. (6185); Sbarro of Las Vegas, Inc. (2853); Sbarro of Longwood, LLC (0328); Sbarro of Virginia, Inc. (2309); Sbarro Pennsylvania, Inc. (3530); Sbarro Properties, Inc. (9541); Sbarro Venture, Inc. (3182); Sbarro's of Texas, Inc. (5139); Umberto at the Source, LLC (8024); Umberto Deer Park, LLC (8728); Umberto Hauppauge, LLC (8245); Umberto Hicksville, LLC (0989); Umberto Huntington, LLC (8890); and Umberto White Plains, LLC (8159).  The Debtors' service address is: 401 Broadhollow Road, Melville, New York 11747.

[2]   Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to them in the Debtors' *First Amended Joint Chapter 11 Plan of Reorganization of Sbarro, Inc. and its Debtor Affiliates*, dated November 11, 2011 [Docket No. 705] (as the same may be subsequently modified, supplemented and amended, the "***Plan***").  The rules of interpretation set forth in Article I.A of the Plan shall apply to this order (the "***Confirmation Order***").

No. 418], which plan and related documents were subsequently amended as set forth herein;

d.      filed, on August 10, 2011, the *Debtors' Motion for Entry of an Order Approving the Debtors' Disclosure Statement and Granting Related Relief* [Docket No. 420] (the "**Solicitation Procedures Motion**");

e.      filed, on October 7, 2011, the *Proposed First Amended Joint Chapter 11 Plan of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 572] and the *Disclosure Statement for the Proposed First Amended Joint Chapter 11 Plan of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 574] which plan was subsequently amended as set forth herein;

f.      filed, on October 11, 2011, the *Proposed First Amended Joint Chapter 11 Plan of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 583] and the *Disclosure Statement for the Proposed First Amended Joint Chapter 11 Plan of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 584] (the "**Disclosure Statement**") which plan was subsequently amended as set forth herein;

g.      published, on October 13, 2011, notice of the Confirmation Hearing (the "**Confirmation Hearing Notice**") in the Wall Street Journal and USA Today to provide notice to creditors who are unknown or not reasonably ascertainable by the Debtors and creditors whose identities are known but whose addresses are unknown by the Debtors, as evidenced by the *Affidavit of Publication re USA Today*, filed October 17, 2011 [Docket No. 590] and the *Affidavit of Publication re The Wall Street Journal*, filed October 17, 2011 [Docket No. 591] (the "**Publication Affidavits**");

h.      distributed solicitation materials, on or before October 13, 2011, to Holders of Claims entitled to vote on the Plan, contract and lease counterparties and parties in interest, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the *Order Approving the Debtors' Disclosure Statement and Granting Related Relief*, entered on October 11, 2011 [Docket No. 582] (the "**Solicitation Procedures Order**"), which Solicitation Procedures Order also approved, among other things, solicitation procedures and related notices, forms, and ballots (collectively, the "**Solicitation Packages**") as evidenced by the *Affidavit of Solicitation Mailing*, filed October 18, 2011 [Docket No. 595] (the "**Solicitation Affidavit**");

i.      filed, on October 28, 2011, the *Notice of Filing of Amendments to the Proposed First Amended Joint Chapter 11 Plan of Reorganization of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 658];

j.      filed, on October 28, 2011, the *Plan Supplement for the Proposed First Amended Joint Chapter 11 Plan of Reorganization of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 659], which includes the following documents: (i) the form of Exit Credit Agreement; (ii) the form of Shareholders Agreement; (iii) the form of

2

Certificates of Incorporation; (iv) the form of Bylaws; (v) the List of Assumed Executory Contracts and Unexpired Leases; and (vi) the List of Rejected Executory Contracts and Unexpired Leases (together with any further supplements to the Plan (including the identity of the members of the New Board) filed prior to or disclosed at the Confirmation Hearing and all other agreements, documents and instruments at any time executed and/or delivered in connection with or related thereto, ancillary or otherwise, and all exhibits, attachments and schedules referred to therein, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time prior to and following the Effective Date, in accordance with each Reorganized Debtor's applicable constituent documents, collectively, the "*Plan Supplement*");[3]

k.    filed, on November 2, 2011, the *Notice of Filing of First Supplement to the Plan Supplement for the Proposed First Amended Joint Chapter 11 Plan of Reorganization of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 672], which includes the Management Compensation Plan;

l.    filed, on November 9, 2011 the *Declaration of Christina F. Pullo on Behalf of Epiq Bankruptcy Solutions, LLC Pursuant to Local Bankruptcy Rule 3018-1(A) Regarding Voting and Tabulation of Ballots Cast on the Proposed First Amended Joint Chapter 11 Plan of Reorganization of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 684] (the "*Voting Certification*"); and

m.    filed, on November 11, 2011, the *Notice of Filing of Further Amendments to the Proposed First Amended Joint Chapter 11 Plan of Reorganization of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 690];

n.    filed, on November 11, 2011, the *Notice of Filing of Second Supplement to the Plan Supplement for the Proposed First Amended Joint Chapter 11 Plan of Reorganization of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 691], which includes the Description of Transaction Steps;

o.    filed, on November 14, 2011, (i) the *Debtors' Memorandum of Law in Support of Confirmation of the Proposed First Amended Joint Chapter 11 Plan of Reorganization of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 694] (the "*Plan Confirmation Brief*"); (ii) the *Declaration of Nicholas McGrane in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Reorganization of Sbarro, Inc. and Its Debtor Affiliates* (the "*McGrane Declaration*"); (iii) the *Declaration of Neil A. Augustine in Support of Confirmation of the First Amended Joint Chapter 11 Plan of*

---

[3]    To the extent that forms of documents have been filed in connection with the Plan, the documents actually executed and delivered will be substantially in the form of such filed documents.

K&E 20486778

*Reorganization of Sbarro, Inc. and Its Debtor Affiliates* (the "**Augustine Declaration**"); and (iv) the *Declaration of Philip J. Gund in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Reorganization of Sbarro, Inc. and Its Debtor Affiliates* (the "**Gund Declaration**") (collectively, the "**Declarations in Support of Confirmation**"); and

p.    filed, on November 16, 2011, the *Notice of Filing Amended Second Supplement and Third Supplement to the Plan Supplement for the Proposed First Amended Joint Chapter 11 Plan of Reorganization of Sbarro, Inc. and Its Debtor Affiliates* [Docket No. 706], which includes the Members of the New Board and the Amended Description of Transaction Steps.

The United States Bankruptcy Court for the Southern District of New York

(the "**Bankruptcy Court**" or the "**Court**") having:

a.    entered the Solicitation Procedures Order on October 11, 2011 [Docket No. 582];

b.    set November 17, 2011 at 11:00 a.m. prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128 and 1129 of the Bankruptcy Code;

c.    reviewed the Plan, Disclosure Statement, the Plan Supplement, the Plan Confirmation Brief, the Declarations in Support of Confirmation, the Voting Certification and all other filed pleadings, exhibits, statements, affidavits, declarations and comments regarding Confirmation of the Plan, including all objections, statements and reservations of rights made with respect thereto;

d.    heard the statements, arguments and objections made by counsel in respect of Confirmation of the Plan;

e.    considered all oral representations, testimony, documents, filings and other evidence regarding Confirmation of the Plan;

f.    overruled any and all objections to the Plan and Confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

g.    taken judicial notice of the papers and pleadings filed in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the

Confirmation Hearing and the opportunity for any party in interest to object to Confirmation

have been adequate and appropriate as to all Entities affected or to be affected by the Plan and

the transactions contemplated thereby, and the legal and factual bases set forth in the documents

4

filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

**A.      Jurisdiction and Venue**

1.      Venue in the Bankruptcy Court was proper as of the Commencement Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11 Cases.    Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L).  The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.      Eligibility for Relief**

2.      The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code.

**C.      Commencement and Joint Administration of the Chapter 11 Cases**

3.      Beginning on the Commencement Date, each of the Debtors commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  By prior order of the Bankruptcy Court, these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 37].  The Debtors have operated their businesses and managed their properties as debtors in possession

5

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

**D.    Judicial Notice**

4.    Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference.

**E.    Claims Bar Date**

5.    On May 26, 2011, the Bankruptcy Court entered the Claims Bar Date Order, which, among other things, (a) set bar dates for filing Proofs of Claim, (b) approved procedures for filing Proofs of Claim and (c) approved notice of the Claims Bar Date. The Claims Bar Date Order established, as applicable, (a) 5:00 p.m. prevailing Eastern Time on July 8, 2011, (b) the Governmental Bar Date or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for filing such Claims as the deadline for filing Proofs of Claim.

**F.    Solicitation Procedures Order**

6.    On October 11, 2011, the Bankruptcy Court entered the Solicitation Procedures Order, which, among other things:  (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code; (b) fixed October 11, 2011 as the Voting Record Date; (c) fixed November 4, 2011 at 4:00 p.m. prevailing Pacific Time, as the Voting Deadline; (d) fixed November 10, 2011 at 4:00 p.m. prevailing Eastern Time, as the deadline to object to confirmation of the Plan; (e) fixed November 17, 2011 at 11:00 a.m. prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing; and (f) approved the Debtors' solicitation and voting procedures (the "*Solicitation and Voting Procedures*"), the Solicitation Packages and other materials relating to solicitation, including the Notices of Non-Voting Status sent to Holders of Claims and interests not entitled to vote on the Plan.

6

**G.**   **Transmittal and Mailing of Solicitation Materials; Notice**

7.     Due, adequate and sufficient notice of the Plan (including the Releases by the Debtors, releases by Holders of Claims, exculpation provisions and injunction provisions contained therein), the Disclosure Statement and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, has been given to known Holders of Claims and Interests in compliance with Bankruptcy Rules 2002(b), 3017(d), (e) and (f), as evidenced by the Solicitation Affidavit.  The Solicitation Packages and all other materials relating in any way to the solicitation process (including notice of the filing of the Plan Supplement) were transmitted and served in substantial compliance with the Solicitation Procedures Order and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***"), the Solicitation and Voting Procedures and all other applicable rules, laws and regulations.  Additionally, in accordance with the Solicitation Procedures Order, the Debtors published the Confirmation Hearing Notice in the publications listed in the Publication Affidavits.  Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

**H.**   **Adequacy of Solicitation**

8.     The Debtors, with the assistance of the Notice and Claims Agent, distributed applicable Solicitation Packages to all Holders of Claims and sufficient time was prescribed for such Holders of Claims entitled to vote to accept or reject the Plan in substantial compliance with the Solicitation Procedures Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation and Voting Procedures and all other applicable rules, laws and regulations.  Transmittal and service were adequate and sufficient, and no further notice is or shall be required.  In addition, Holders of Claims or Interests in Classes

7

that were not entitled to vote to accept or reject the Plan were provided with certain non-voting materials approved by the Bankruptcy Court in compliance with the Solicitation Procedures Order.    Pursuant to the Solicitation Procedures Order, the Debtors were excused from distributing Solicitation Packages or other notices to those entities at addresses from which Disclosure Statement Hearing notices were returned as "undeliverable," and failure to distribute Solicitation Packages to such entities does not constitute inadequate notice of the Confirmation Hearing, the Voting Deadline, or a violation of Bankruptcy Rule 3017(d).  All procedures used to distribute Solicitation Packages to Holders of Claims and Interests were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

## I.    <u>Voting Certification</u>

9.    On November 9, 2011, the Notice and Claims Agent filed the Voting Certification with the Court.   All procedures used to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

10.    As set forth in the Plan and Disclosure Statement, only Holders of Claims in Classes 3 and 5 (collectively, the "***Voting Classes***") are eligible to vote on the Plan.  In addition, Holders of Claims in Classes 1, 2 and 8 are Unimpaired (collectively, the "***Presumed Accepting Classes***") and presumed to have accepted the Plan, and, therefore, are not entitled to vote to accept or reject the Plan.  Holders of Claims or Interests in Classes 4, 6 and 7 (collectively, the "***Deemed Rejecting Classes***") are deemed to reject the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

8

11.     As evidenced by the Voting Certification, Classes 3 and 5 voted to accept the Plan.

12.     Based on the foregoing, and as evidenced by the Voting Certification, at least one Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**J.     Plan Supplement**

13.     On October 28, 2011, as supplemented on November 2, 2011, November 11, 2011 and otherwise prior to or on the record at the Confirmation Hearing, the Debtors filed the Plan Supplement with the Bankruptcy Court and served notice of such filings on the Entities to receive documents pursuant to Bankruptcy Rule 2002 and all Holders of Claims entitled to vote on the Plan.  The documents contained in the Plan Supplement are integral to, part of and incorporated by reference into the Plan.  The Plan Supplement complies with the terms of the Plan, and the filing and notice of such documents constitutes good and proper notice in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Solicitation Procedures Order, and no other or further notice is or shall be required.  The Debtors reserve their right to modify the Plan Supplement prior to the Effective Date to be consistent with and pursuant to the Plan.

**K.     Merger Transaction**

14.     Upon satisfaction of all conditions precedent to the Effective Date, the Merger Transaction shall be deemed to have occurred as, and in the order, described in the Plan Supplement.

**L.**    **Modifications to the Plan**

15.    The modifications to the Plan described in the Plan Confirmation Brief and reflected in the blacklined versions of the Plan [Docket Nos. 658, 690 and 705] constitute non-material or technical changes and do not materially adversely affect or change the treatment of any Claims or interests under the Plan (the "***Technical Modifications***").

16.    The filing and the description of the Technical Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof under the circumstances of these Chapter 11 Cases.  The Technical Modifications do not materially or adversely affect the treatment of any Claims against or Equity Interests in the Debtors under the Plan.  The Technical Modifications neither require additional disclosure under section 1125 of the Bankruptcy Code nor re-solicitation of vote on the Plan under section 1126 of the Bankruptcy Code and Bankruptcy Rules 3018 or 3019.

17.    In accordance with section 1127 of the bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims against the Debtors who voted to accept the Plan are hereby deemed to have accepted the Plan as amended consistent with the Technical Modifications.

18.    No Holder of a Claim against the Debtors who has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Technical Modifications.

19.    The Technical Modifications incorporated in the Plan comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**M.**    **Bankruptcy Rule 3016**

20.    The Plan is dated and identifies the Entities submitting and filing it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

N.      **Burden of Proof**

21.     The Debtors, as proponents of the Plan, have the burden of proving the elements

of section 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence,

which is the applicable evidentiary standard for Confirmation.   The Debtors have met their

burden of proving that the Plan complies with each element of sections 1129(a) and 1129(b) of

the Bankruptcy Code by a preponderance of the evidence.

O.      **Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

22.     The Plan complies with all applicable provisions of section 1129 of the

Bankruptcy Code as follows:

(a)     **Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

23.     The Plan complies with all applicable provisions of the Bankruptcy Code as

required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123.

(a)     **Sections 1122 and 1123(a)(1)—Proper Classification**

24.     The classification of Claims and Interests under the Plan is proper under the

Bankruptcy Code.   Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article

III of the Plan provides for the separate classification of Claims and Interests into eight Classes,

based on differences in the legal nature or priority of such Claims and Interests (other than

Administrative Expense Claims, DIP Facility Claims and Priority Tax Claims, which are

addressed in Article II of the Plan, and which are not required to be designated as separate

Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).   Valid business, factual and

legal reasons exist for the separate classification of the various Classes of Claims and Interests

created under the Plan, the classifications were not done for any improper purpose and the

11

creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.

25.     In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the requirements of sections 1122(a), 1122(b) and 1123(a)(1) of the Bankruptcy Code have been satisfied.

### (b)     Section 1123(a)(2)—Specification of Unimpaired Classes

26.     Article III of the Plan specifies that Claims in Classes 1 and 2 and Intercompany Interests in Class 8 are Unimpaired under the Plan.  Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

### (c)     Section 1123(a)(3)—Specification of Treatment of Impaired Classes

27.     Article III of the Plan specifies the treatment of each Impaired Class under the Plan, including Classes 3, 4, 5, 6 and 7.  Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

### (d)     Section 1123(a)(4)—No Discrimination

28.     Article III of the Plan provides the same treatment for each Claim or Interest within a particular class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### (e)     Section 1123(a)(5)—Adequate Means for Plan Implementation

29.     The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, including, without limitation:  (a) the restructuring of the Debtors' prepetition secured debt and other financial transactions under the Plan; (b) the continued corporate existence of the Debtors as

12

Reorganized Debtors as set forth in the Plan and the Plan Supplement; (c) the vesting of assets in the Reorganized Debtors; (d) the treatment of Intercompany Interests; (e) the entry into and consummation of the First-Out Exit Term Facilities and the Last-Out Exit Term Facility, and the use of the Reorganized Debtors' cash balances for distributions under the Plan; (f) the issuance and distribution of the New Common Stock issued under the Plan; (g) the appointment of the New Board; (h) the entry into and amendment of certain of the Debtors' organizational documents, including, without limitation, adoption and filing of the Certificates of Incorporation and the adoption of the Bylaws; (i) the purchase of all of the Debtors' assets by one or more Purchasers, as set forth in the Amended Description of Transaction Steps; (j) adoption and implementation of the Management Compensation Plan included in the Plan Supplement; and (k) the cancellation of obligations, including those under the Prepetition First Lien Loan Documents, the Prepetition Second Lien Loan Documents, the Senior Notes Indenture and Equity Interests in Sbarro Holdings, LLC.

### (f)        Section 1123(a)(6)—Voting Power of Equity Securities

30.        The Certificates of Incorporation contained in the Plan Supplement prohibit the issuance of non-voting securities.  The Plan, therefore, satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### (g)        Section 1123(a)(7)—Selection of Officers and Directors

31.        The identity of the initial New Board, to the extent known, has been disclosed prior to the Confirmation Hearing.  The New Board shall be selected in accordance with the selection process described in Section 2.01(a) of the Shareholders Agreement.  Each member of the New Board identified prior to the Effective Date, shall be selected in consultation with the Debtors and subject to background checks reasonably satisfactory to the Debtors.  As of the Effective Date, the initial boards of directors of New Sbarro Finance, New Sbarro HoldCo, New

13

Sbarro Corp., and New Sbarro LLC shall be selected by the Prepetition First Lien Steering Committee in consultation with the Debtors and subject to background checks reasonably satisfactory to the Debtors.  The existing officers of the Debtors shall remain in their current capacities as officers of the Reorganized Debtors on the Effective Date, subject to the ordinary rights and powers of the board of directors to remove or replace them in accordance with the Debtors' organizational documents and any applicable employment agreements.  The selection of the initial directors and officers of the Reorganized Debtors was, is and will be consistent with the interests of Holders of Claims and Interests and public policy.  Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

### (h)    Section 1123(b)—Discretionary Contents of the Plan

32.    The Plan contains various provisions that may be construed as discretionary and not required for Confirmation under the Bankruptcy Code.   As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, section 1123(b) of the Bankruptcy Code is satisfied.

### i.    Section 1123(b)(1)–(2)—Claims and Executory Contracts

33.    Article III of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims and Interests, and Article V of the Plan provides that all of the Debtors' Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date except any Executory Contract or Unexpired Lease (a) previously assumed or rejected by the Debtors during the Chapter 11 Cases, (b) identified on the Rejected Executory Contract/Unexpired Lease List as an Executory Contract or Unexpired Lease designated for rejection or (c) which is the subject of a separate motion or notice to reject filed by the Debtors and pending as of the Confirmation Hearing.

14

ii.    **Section 1123(b)(3)—Settlement, Releases, Exculpation, Injunction and Preservation of Claims and Causes of Action**

34.    **Compromise and Settlement**.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The compromise and settlement of such Claims and Interests embodied in the Plan is in the best interests of the Debtors, the Estates and all Holders of Claims and Interests, and is fair, equitable and reasonable.

35.    In reaching an ultimate decision on substantive fairness, the Court considered the following factors:  (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation and risk and difficulty of collecting on the judgment; (c) the proportion of creditors and parties in interest that support the settlement; (d) the competency of counsel reviewing the settlement; (e) the nature and breadth of releases to be obtained by officers and directors; and (f) the extent to which the settlement is the product of arm's length bargaining.

36.    **Releases by the Debtors**.  The releases and discharges of Claims and Causes of Action by the Debtors described in Article IX.B of the Plan (the "***Debtor Release***") pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtors' business judgment.  Pursuing any such claims against the Released Parties is not in the best interests of the Debtors' various constituencies as the costs involved likely would outweigh any potential benefits from pursuing such claims.  In addition, the Released Parties provided good and valuable consideration in exchange for the Debtor Release, including the service of the Released

15

Parties in facilitating the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan.

37.     The releases of the Released Parties by the Debtors and the Releasing Parties are critically important to the success of the Debtors' Plan, which embodies the settlement of certain claims with the Debtors' primary stakeholders and reflects and implements the concessions and compromises made by the parties to the restructuring transactions contemplated by the Plan.

38.     Each of the Released Parties afforded value to the Debtors and aided in the reorganization process.  The Released Parties played an integral role in the formulation of the Plan and have expended significant time and resources analyzing and negotiating the issues presented by the Debtors' prepetition capital structure.  The Plan reflects the settlement and resolution of several complex issues, and the releases are an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan.  Indeed, the release provisions in the Plan were a critical component of the Debtors' achieving support for the Plan from the Prepetition First Lien Steering Committee, the Prepetition Second Lien Agent and the Creditors' Committee, which affords the Reorganized Debtors the opportunity to restructure their business and emerge from chapter 11 as a financially and operationally strong and more competitive business.

39.     The Debtors, with the assistance of counsel, including conflicts counsel Curtis, Mallet-Prevost, Colt & Mosle LLP, spent considerable time investigating potential Avoidance Actions and other Causes of Action against the parties being released pursuant to the Plan and determined there is no evidence suggesting viable claims that would result in substantial recoveries (if any) to general unsecured creditors.

16

40.    The results of the release investigation were presented to a committee of independent directors of the Board of Directors of Sbarro, Inc., which determined, in an exercise of its business judgment, that the Debtors' release of third parties pursuant to the Plan is appropriate and reasonable under the circumstances because the relative strength of the claims being released is more than offset by the significant benefits the Debtors are receiving under the Plan.

41.    In approving the Debtor Release, the Bankruptcy Court determined that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, (b) a good faith settlement and compromise of the claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Equity Interests; (d) fair, equitable and reasonable; (e) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (f) a bar to any of the Debtors or the Reorganized Debtors asserting any claim released by the Debtor Release against any of the Released Parties.

42.    **Releases by Holders of Claims and Equity Interests**.  The circumstances of these Chapter 11 Cases render the releases of Claims and Causes of Action by Holders of Claims described in Article IX.C of the Plan (the "***Third Party Release***") important to the success of the Plan.

43.    The Third Party Release is fully consensual.  All Releasing Parties either voted to accept the Plan or voluntarily sought mutual releases as part of global Plan negotiations.  The Releasing Parties do not include Holders of Claims who voted to reject the Plan.

44.    In approving the Third Party Release, the Bankruptcy Court determined the Third Party Release is in:  (a) in exchange for the good and valuable consideration provided by the

17

Released Parties, (b) a good faith settlement and compromise of the claims released by the

Releasing Parties; (c) in the best interests of the Debtors and all Holders of Claims and Equity

Interests; (d) fair, equitable and reasonable; (e) given and made after notice and opportunity for

hearing; and (f) a bar to any of the Releasing Parties asserting any Claim released by the Third

Party Release against any of the Released Parties.

45.     **Exculpation**.  The exculpation provisions set forth in Article IX.D of the Plan are

essential to the Plan.  The record in the Chapter 11 Cases fully supports the exculpation and the

exculpation provisions set forth in Article IX.D of the Plan are appropriately tailored to protect

the Exculpated Parties from inappropriate litigation and are hereby approved; _provided_ _that_ the

exculpation provisions shall (a) have no effect on the liability of any entity that results from any

act or omission that is determined in a Final Order to have constituted gross negligence or willful

misconduct, provided that each Exculpated Party shall be entitled to rely upon the advice of

counsel concerning his her or its duties pursuant to, or in connection with, the Plan or any other

related document, instrument, or agreement, and (b) not limit the liability of the Debtors'

professionals or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the

Code of Professional Responsibility, N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule

1.8(h)(1) (2009).

46.     **Injunction**.  The injunction provisions set forth in Article IX.E of the Plan are

essential to the Plan and are necessary to preserve and enforce the Debtor Release, the Third

Party Release and the exculpation provisions in Article IX of the Plan, and are narrowly tailored

to achieve that purpose.

47.     Each of the Debtor Release, the Third Party Release, the exculpation provisions

and the injunction set forth in the Plan:  (a) is within the jurisdiction of the Bankruptcy Court

18

under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, the Estates and their creditors; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (f) is consistent with sections 105, 1123 and 1129 of the Bankruptcy Code, any other provisions of the Bankruptcy Code and other applicable law.  The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Debtor Release, the Third Party Release, the exculpation provisions and the injunction contained in Article IX of the Plan.

48.    **No Release of Any Claims Held by the United States**.  Nothing in this Order or the Plan shall in any way be construed to discharge, release, limit, or relieve the Debtors, the Reorganized Debtors, or any other party, in any capacity, from any liability or responsibility with respect to any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties or Exculpated Parties. The United States or any state or local authority shall not be enjoined or precluded from enforcing such liability or responsibility by any of the provisions of the Plan, Confirmation Order, Bankruptcy Code, or any other document filed in the Chapter 11 Cases.

49.    **Preservation of Claims and Causes of Action**.  Article IV.P of the Plan appropriately provides for the preservation by the Debtors of the Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  The provisions regarding the Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, the Estates and Holders of Claims and Interests.

19

(b)     **Section 1129(a)(2)—Compliance of the Debtors with the Applicable Provisions of the Bankruptcy Code**

50.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

51.     Votes to accept or reject the Plan were solicited by the Debtors and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates and agents after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code.

52.     The Debtors and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates and agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in a manner consistent with the applicable provisions of the Solicitation Procedures Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provision set forth in Article IX.D of the Plan.

53.     The Debtors and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance and distribution of recoveries under the Plan and, therefore, are not (and on account of such distributions, will not be) liable at any time

20

for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

**(c)** **Section 1129(a)(3)—Proposal of the Plan in Good Faith**

54.     The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself and the process leading its formulation.  The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon, the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

55.     The Plan is the product of extensive, good faith, arm's length negotiations between the Debtors and certain of their principal constituencies, including the Prepetition First Lien Lenders, the Prepetition First Lien Steering Committee, the DIP Lenders, and the Creditors' Committee.  The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest and assure fair treatment of Holders of Claims and Interests.  Consistent with the overriding purpose of chapter 11, the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with a capital structure that will allow them to satisfy their obligations with sufficient liquidity and capital resources.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**(d)** **Section 1129(a)(4)—Bankruptcy Court Approval of Certain Payments as Reasonable**

56.     Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and

K&E 20486778

incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the
Bankruptcy Court as reasonable. Accordingly, the requirements of section 1129(a)(4) of the
Bankruptcy Code are satisfied.

### (e) Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy

57. The Debtors have disclosed the identity of the individuals proposed to serve as the
New Board, to the extent known, and the identity and nature of any compensation for any insider
who will be employed or retained by the Reorganized Debtors. The appointment of the
remaining directors and officers, if any, and the compensation of all of the Reorganized Debtors'
directors will be consistent with each Reorganized Debtor's applicable constituent documents,
the amended forms of which were filed as part of the Plan Supplement. The proposed directors
and officers for the Reorganized Debtors Plan are qualified, and the appointments to, or
continuance in, such offices by the proposed directors and officers is consistent with the interests
of holders of Claims and Interests and with public policy. Accordingly, the Debtors have
satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

### (f) Section 1129(a)(6)—Approval of Rate Changes

58. The Plan does not contain any rate changes subject to the jurisdiction of any
governmental regulatory commission and will not require governmental regulatory approval.
Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

### (g) Section 1129(a)(7)—Best Interest of Creditors Test

59. Each Holder of an Impaired Claim or Interest either has accepted the Plan or will
receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of
the Effective Date, that is not less than the amount that such Holder would receive or retain if the
Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

60.    The liquidation analysis attached as <u>Exhibit D</u> to the Disclosure Statement (the "***Liquidation Analysis***") and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to, or in declarations in connection with, the Confirmation Hearing:  (a) are reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims in every Class will recover as much or more under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(7) of the Bankruptcy Code.

**(h)    Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class**

61.    Classes 1 and 2 are Unimpaired Classes of Claims and Class 8 is a Class of Unimpaired Intercompany Interests, each of which are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  As set forth in the Voting Certification, Classes 3 and 5 have voted to accept the Plan.  Classes 4, 6 and 7 are not receiving any distributions under the Plan and are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

62.    Because Classes 4, 6 and 7 are conclusively deemed to reject the Plan, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8) of the Bankruptcy Code.  Thus, although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes and, thus,

23

satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.

**(i)        Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

63.      The Treatment of Allowed Administrative Claims, Allowed DIP Facility Claims and Priority Tax Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(9) are satisfied.

**(j)        Section 1129(a)(10)—Acceptance by at Least One Impaired Class**

64.      As set forth in the Voting Certification, Classes 3 and 5 voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired under the Plan that has accepted the Plan without including any acceptance of the Plan by any insider.  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(10) of the Bankruptcy Code.

**(k)        Section 1129(a)(11)—Feasibility of the Plan**

65.      The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing:  (a) is reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan except as provided in the Plan; and (e) establishes that the Reorganized Debtors will have sufficient funds

24

available to meet their obligations under the Plan.  Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

**(l)      Section 1129(a)(12)—Payment of Bankruptcy Fees**

66.      Article II.D of the Plan provides that the Debtors shall pay all fees payable pursuant to 28 U.S.C. § 1930 until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.   Accordingly, the Debtors have satisfied the requirements of section 1129(a)(12) of the Bankruptcy Code.

**(m)      Section 1129(a)(13)—Retiree Benefits**

67.      Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to section 1114 of the Bankruptcy Code.   The Debtors do not have any retiree benefit programs. Accordingly, the Debtors submit that the Plan fully complies with and satisfies all of the requirements of section 1129(a)(13) of the Bankruptcy Code.

**(n)      Sections 1129(a)(14), (15) and (16)—Non-Applicability of Certain Sections**

68.      The Debtors do not owe any domestic support obligations, are not individuals and are not non-profit corporations.  Therefore, sections 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

**(o)      Section 1129(b)—Confirmation of the Plan Over Non-Acceptance of Impaired Classes**

69.      The Plan may be confirmed  pursuant to section 1129(b) of the Bankruptcy Code notwithstanding that the requirements of section 1129(a)(8) have not been met because the Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate

25

unfairly" and is "fair and equitable" with respect to the Deemed Rejecting Classes, Classes 4, 6 and 7.

70.     The discrimination in treatment among Class 5 and the other unsecured classes under the Plan with which Class 5 is *pari passu* in recovery, Classes 4 and 6, is not "unfair" because (a) there are reasonable, legitimate and equitable reasons for the enhanced recovery to Class 5 under the Plan, (b) the disparate treatment is necessary to achieve a successful reorganization and consummate the Plan, (c) the Debtors have acted in good faith in determining to provide additional recoveries to the Holders of Class 5 Claims compared to Class 4 and Class 6 recoveries and (d) the discrimination is reasonably proportional to the rationale therefor, including the net benefits to the Debtors, their estates and the reorganized enterprise post-emergence, as set forth on the record.

71.     The Plan is "fair and equitable" with respect to Classes 4, 6 and 7 because no junior Class of Claims or Interests will receive or retain any property under the Plan on account of such Claims or Interests.

72.     The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims:   (a) is reasonable, persuasive, credible and accurate; (b) utilizes reasonable and appropriate methodologies and assumptions; and (c) has not been controverted by other creditable evidence.

73.     The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

26

**(p)      Section 1129(c)—Only One Plan**

74.    Other than the Plan (including previous versions thereof), no other plan has been filed in these Chapter 11 Cases.  Accordingly, the Debtors have satisfied the requirements of section 1129(c) of the Bankruptcy Code.

**(q)      Section 1129(d)—Principal Purpose of the Plan Is Not the Avoidance of Taxes**

75.    No governmental unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the Debtors have satisfied the requirements of section 1129(d) of the Bankruptcy Code.

**(r)      Section 1129(e)—Small Business Case**

76.    None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**P.      Satisfaction of Confirmation Requirements**

77.    Based upon the foregoing, all other filed pleadings, documents exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**Q.      Implementation of Other Necessary Documents and Agreements**

78.    All documents and agreements necessary to implement the Plan are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such documents and agreements is in the best interests of the Debtors, the Estates and Holders of

Claims and interests. The Debtors have exercised reasonable business judgment in determining which agreements to enter and have provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's length, are fair and reasonable and are reaffirmed and approved.

**R.    Good Faith**

79.    Based on the record in the Chapter 11 Cases (a) the Debtors and their non-Debtor affiliates; (b) the Prepetition First Lien Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Steering Committee and the Prepetition L/C Issuer; (c) the DIP Agent and the DIP Lenders; (d) the Creditors' Committee, the Holders of Senior Notes Claims and the Senior Notes Indenture Trustee; (e) the Prepetition Second Lien Lenders and the Prepetition Second Lien Agent; and (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' current or former subsidiaries, affiliates, managed accounts or funds, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals, each in their respective capacities as such, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including, without limitation, any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article IX.D of the Plan.

K&E 20486778

**S.      Executory Contracts and Unexpired Leases**

80.      The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assignment and rejection of Executory Contracts and Unexpired Leases pursuant to the Plan.

**T.      Transfers by Debtors:  Vesting of Assets**

81.      Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, other than Causes of Action arising under section 547 of the Bankruptcy Code, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Any state or local business or operating license transferred, sold, vested, or otherwise conveyed from a Debtor to a Reorganized Debtor (including the New Sbarro Companies) shall be deemed valid and enforceable by the applicable Reorganized Debtor without need of any corporate, governmental authority or further court approval.

**U.      Disclosure:  Agreements and Other Documents**

82.      The Debtors have disclosed all material facts regarding:  (a) the adoption of the Certificates of Incorporation and the Bylaws; (b) the selection of the members of the New Board, the initial boards of directors of New Sbarro Finance, New Sbarro HoldCo, New Sbarro Corp. and New Sbarro LLC, and certain new officers for the applicable Reorganized Debtors; (c) the Reorganized Debtors' obligations under the Exit Credit Agreement; (d) the sources and

29

distribution of Cash under the Plan; (e) implementation of the Taxable Purchase; (f) the terms and issuance of the New Common Stock and the Reorganized Debtors' reliance on the exemption under section 1145(a) of the Bankruptcy Code; (g) the terms of the Shareholders Agreement; (h) the cancellation of obligations under the Prepetition First Lien Loan Documents, the Prepetition Second Lien Loan Documents, the Senior Notes Indenture, and the Equity Interests; (i) the adoption, execution and delivery of all contracts, leases, instruments, releases, indentures and other agreements related to any of the foregoing; and (j) the adoption, execution and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Reorganized Debtors.

## V.    **Approval of the Exit Credit Agreement**

83.    The Exit Credit Agreement is an essential element of the Plan, and entry into the Exit Credit Agreement is in the best interests of the Debtors, the Estates and all Holders of Claims.  The Debtors have exercised reasonable business judgment in determining to enter into the Exit Credit Agreement and have provided sufficient and adequate notice of material terms of the Exit Financing, as the form of the Exit Credit Agreement was filed as part of the Plan Supplement.  The terms and conditions of the Exit Credit Agreement are fair and reasonable, and the Exit Credit Agreement has been negotiated in good faith and at arm's length.  The Debtors are authorized, without further approval of the Court or any other party, to execute and deliver all agreements, documents, instruments and certificates relating thereto and perform their obligations thereunder.

## W.    **Issuance of New Common Stock**

84.    The issuance of New Common Stock is an essential element of the Plan, and is in the best interests of the Debtors, their Estates and all Holders of Claims.

K&E 20486778

**X.**    **Approval of the Management Incentive Programs**

85.    The Management Compensation Plan and the Management Equity Plan (collectively, the "***Management Incentive Programs***") are essential elements of the Plan, and the terms of the Management Incentive Programs and the payments contemplated therein are reasonable, comparable to market, and appropriate and calculated to incentivize performance by management.    Additionally, the Debtors have provided sufficient and adequate notice of the material terms of the Management Incentive Programs.    The terms and conditions of the Management Incentive Programs have been negotiated in good faith and at arm's length with the Prepetition First Lien Steering Committee.    The Debtors are authorized, without further approval of the Court or any other party, to execute and deliver all agreements, documents, instruments and certificates relating thereto and perform their obligations thereunder.

**Y.**    **Retention of Jurisdiction**

86.    The Bankruptcy Court properly may retain jurisdiction over the matters set forth in Article X and other applicable provisions of the Plan.

\*   \*   \*   \*   \*   \*   \*   \*

**ORDER**

Based on the foregoing, it is hereby ORDERED:

**A.**    **Order**

87.    All requirements for Confirmation of the Plan have been satisfied.    The Plan is confirmed in its entirety pursuant to section 1129 of the Bankruptcy Code.    A copy of the confirmed Plan is attached hereto as **Exhibit 1**.    The terms of the Plan and the Plan Supplement are incorporated by reference into, and are an integral part of, this Order.

31

## B.    Objections

88.    To the extent that any objections, reservations of rights, statements or joinders to Confirmation have not been resolved, withdrawn, waived or settled prior to entry of the Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on their merits.

## C.    Findings of Fact and Conclusions of Law

89.    The findings of fact and the conclusions of law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014.  To the extent any of the following constitute findings of fact or conclusions of law, they are adopted as such.  To the extent any of the prior findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

## D.    Solicitation and Notice

90.    Notice of the Confirmation Hearing complied with the terms of the Solicitation Procedures Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The solicitation of votes on the Plan and the Solicitation Packages complied with the Solicitation and Voting Procedures, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

## E.    References to Plan Provisions

91.    The failure specifically to include or to refer to any particular article, section or provision of the Plan, Plan Supplement or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety.

K&E 20486778

F.    **Plan Classification Controlling**

92.    The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtors and Reorganized Debtors except for voting purposes.

G.    **Immediate Binding Effect**

93.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors and any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan or herein, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

H.    **Cancellation of Agreements, Senior Notes and Equity Interests**

94.    On the later of the Effective Date and the date on which distributions are made pursuant to the Plan, except as otherwise specifically provided for in the Plan:   (1) the obligations of the Debtors under the Prepetition First Lien Loan Documents, the Prepetition Intercreditor Agreement, the Prepetition Second Lien Loan Documents, the Senior Notes

33

Indenture, and any other certificate, equity security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors and their Affiliates, and the Reorganized Debtors shall not have any continuing obligations thereunder; (2) all parties' obligations under the Prepetition Intercreditor Agreement; and (3) the obligations of the Debtors and their Affiliates pursuant, relating or pertaining to any agreements, indentures, certificates of designation, by-laws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; except that:

- the DIP Facility shall continue in effect solely for the purpose of: (a) allowing Holders of the DIP Facility Claims to receive the distributions provided for hereunder; (b) allowing the DIP Agent to receive distributions from the Debtors and to make further distributions to the Holders of the DIP Facility Claims on account of such Claims, as set forth in Article VI of the Plan; and (c) preserving the DIP Agent's right to indemnification from the Debtors pursuant and subject to the terms of the DIP Facility in respect of any claim or cause of action asserted against the DIP Agent;

- the Prepetition First Lien Loan Documents shall continue in effect solely for the purpose of: (a) allowing Holders of the Prepetition First Lien Lender Claims to receive the distributions provided for hereunder; (b) allowing the Prepetition First Lien Agent to receive distributions from the Debtors and to make further distributions to the Holders of the Prepetition First Lien Lender Claims on account of such Claims, as set forth in Article VI of the Plan; (c) preserving (i) any rights of the Prepetition First Lien Agent or the Prepetition L/C Issuer to indemnification or contribution from the Prepetition First Lien Lenders pursuant and subject to the terms of the Prepetition First Lien Loan Documents

34

and (ii) the rights and obligations of all parties under Section 2.05 (but, in the case of the Reorganized Debtors, only under Section 2.05(e)(ii) (such obligations of the Reorganized Debtors, the "L/C Reimbursement Obligations")) of the Prepetition First Lien Credit Agreement <u>provided</u>, <u>however</u>, that (x) the Reorganized Debtors shall cash collateralize, for the benefit of the Prepetition L/C Issuer, the obligations (if any) of each Participating Prepetition First Lien Lender to fund Unreimbursed Amounts (as defined in the Prepetition First Lien Credit Agreement) in respect of the Existing Letters of Credit pursuant to Section 2.05(e)(vi) of the Prepetition First Lien Credit Agreement and (y) upon such cash collateralization, the obligations of each Participating Prepetition First Lien Lender to fund such Unreimbursed Amounts shall be discharged; and (d) preserving any rights of the Prepetition First Lien Agent or the Prepetition L/C Issuer to indemnification, contribution or otherwise from the Debtors pursuant and subject to the terms of the Prepetition First Lien Loan Documents in respect of any claim or cause of action asserted against the Prepetition First Lien Agent; and

- the foregoing shall not effect the cancellation of shares issued pursuant to the Plan nor any other shares held by one Debtor in the capital of another Debtor; and <u>provided</u>, <u>further</u>, <u>however</u>, that at the election of the Prepetition First Lien Steering Committee, the Prepetition First Lien Credit Facility may remain in effect and be amended and restated consistent with the Last-Out Exit Term Facility.

## I.    <u>Approval of Exit Credit Agreement</u>

95.    The Reorganized Debtors are authorized to enter into the Exit Credit Agreement. The Exit Credit Agreement (and issuance of the Last-Out Exit Term Facility, the First-Out Rollover Term Facility, and the First-Out New Money Term Facility) are hereby approved.  The Debtors and the Reorganized Debtors, as the case may be, are hereby authorized to enter into and execute the Exit Credit Agreement, including any and all amendments and modifications thereto and any other agreements, instruments, certificates or documents related thereto, and are hereby authorized to enter into and to consummate any and all transactions contemplated thereby.

96.    The liens contemplated by and related to the Exit Credit Agreement are valid, binding and enforceable liens on the collateral, including, but not limited to, (a) all rights to receive monies, proceeds or other consideration payable to the lenders under the Exit Credit Agreement in connection with any sale, assignment, transfer or other disposition of any leasehold interest in real property and (b) all proceeds from any such sale, assignment, transfer or

35

other disposition; *provided*, *however*, that such collateral shall not include any leasehold interest in non-residential real property, specified in the relevant agreements executed by the Reorganized Debtors in connection with the Exit Credit Agreement.  The guarantees, mortgages, pledges, liens and other security interests granted pursuant to or in connection with the Exit Credit Agreement are granted in good faith as an inducement to the lenders to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of such liens and security interests shall be as set forth in the intercreditor agreement and other definitive documentation executed in connection with the Exit Credit Agreement.

97.    The Reorganized Debtors and the persons and entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Order (it being understood that perfection shall occur automatically by virtue of the entry of this Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.  To the extent that any Holder of a Claim secured by a Lien (regardless of whether such lien was properly perfected or whether there is any economic value to such Lien or whether such Claim is a Secured Claim) that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder

36

(or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors or any administrative agent under the Exit Credit Documents, and the Debtors, the Reorganized Debtors and any administrative agent under the Exit Credit Documents are authorized to file or record any necessary documents or take any other necessary steps, that are necessary to cancel and/or extinguish such publicly-filed Liens and/or security interests, in each case all costs and expenses in connection therewith to be paid by the Debtors or the Reorganized Debtors

98.     Notwithstanding anything to the contrary in this Order or the Plan, the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of the loan documentation executed in connection with the Exit Credit Agreement any rights or remedies related thereto.

**J.     Merger Transaction**

99.     The Debtors and the Reorganized Debtors are authorized to implement and consummate the restructuring transactions (including the Merger Transaction) pursuant to the Plan and Exhibit I of the Plan Supplement (as may be amended) and are authorized to execute and deliver all necessary documents or agreements required to perform their obligations thereunder (the "***Merger Documents***").  The Merger Documents shall constitute legal, valid, and binding obligations of the Debtors and Reorganized Debtors, as applicable, enforceable in accordance with their respective terms.

100.     The Merger Documents, any related agreement, and the transactions contemplated thereby are approved in their entirety.  Such transactions shall be treated as a taxable sale of the assets of the Debtors to the Reorganized Debtors for United States federal income tax purposes. The merger, conveyance, sale, or purchase of all assets of the Debtors pursuant to the Plan and

37

the Merger Documents are approved and authorized in all respects, shall not constitute a fraudulent conveyance or transfer under state or federal law, and shall be unavoidable for all purposes.

**K.    New Common Stock**

101.    In accordance with the terms of Article IV.J of the Plan, on the Effective Date, the Reorganized Debtors shall issue or reserve for issuance all of the New Common Stock. The New Common Stock shall represent all of the Equity Interests in New Sbarro Parent (a successor to the Debtors for purposes of the Bankruptcy Code) as of the Effective Date and shall be issued and transferred to Holders of Prepetition First Lien Lender Claims, as described in the Amended Description of Transaction Steps, subject to dilution on account of Reserved Employee Equity and/or shares issued in connection with the Management Equity Plan. From and after the Effective Date, subject to the right of the stockholders to amend the certificate of incorporation of New Sbarro Parent, New Sbarro Parent shall have one class and one series of New Common Stock. The issuance of the New Common Stock by New Sbarro Parent, including options or other equity awards reserved as Reserved Employee Equity and/or issued in connection with the Management Equity Plan, is authorized without the need for further corporate action and all of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable. For purposes of distribution, the New Common Stock will be deemed to have the Plan Equity Value, regardless of the date of distribution. Distributions of New Common Stock to the Prepetition First Lien Lenders will only be made through broker accounts via electronic issuance and transfer of the Shares and New Sbarro Parent will not issue separate stock certificates.

K&E 20486778

102.     On the Effective Date, New Sbarro Parent and the holders of the New Common Stock shall enter into the Shareholders Agreement in substantially the form included in the Plan Supplement.  The Shareholders Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Common Stock shall be bound thereby, in each case without the need for execution by any party thereto other than New Sbarro Parent.

**L.     Section 1145 Exemption**

103.     The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act and applicable state securities laws, and no other non bankruptcy law applies to the solicitation.

104.     Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any securities pursuant to the Plan and any and all settlement agreements incorporated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act to the maximum extent permitted thereunder and any other applicable law requiring registration, prior to the offering, issuance, distribution or sale of securities.   In addition, except as otherwise provided in the Plan, to the maximum extent provided under section 1145 of the Bankruptcy Code, any and all New Common Stock issued by New Sbarro Parent (as a successor to Sbarro Holdings, LLC for purposes of the Bankruptcy Code) as contemplated by the Plan and any and all settlement agreements incorporated therein will be freely tradable by the recipients thereof, subject to:   (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such

39

Securities or instruments; (2) the restrictions, if any, on the transferability of such Securities and instruments; and (3) applicable regulatory approval.

**M.    Treatment of Executory Contracts and Unexpired Leases**

105.    The Executory Contract and Unexpired Lease provisions of Article V of the Plan shall be, and hereby are, approved in their entirety.

**(a)    Assumption and Rejection of Executory Contracts and Unexpired Leases**

106.    Pursuant to Article V.A of the Plan, each of the Debtors' Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court will be deemed assumed as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code _except_ any Executory Contract or Unexpired Lease (a) identified on the Rejected Executory Contract/Unexpired Lease List as an Executory Contract or Unexpired Lease designated for rejection, or (b) which is the subject of a separate motion or notice to reject filed by the Debtors and pending as of the Confirmation Hearing.

**(b)    Cure of Defaults of Assumed Executory Contracts and Unexpired Leases**

107.    Pursuant to Article V.B of the Plan, any provisions or terms of the Debtors' Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, through the payment of the cure amounts set forth on the list of Executory Contracts and Unexpired Leases to be assumed, as may be revised or amended pursuant to the Plan [Docket No. 659], or by an agreed-upon waiver of cure, to be paid on or as soon as reasonably practicable after the Effective Date; _provided_, _however_, that notwithstanding the foregoing, the Debtors will continue to honor all postpetition and post-Effective Date obligations under any assumed Executory Contracts and Unexpired Leases in accordance with their terms, regardless of whether

40

such obligations are listed as a cure amount, and payment of cure shall not be deemed to release the Debtors from such obligations.

**(c)      Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**

108.     Entry of this Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, of the assumption, assignment or rejection, as the case may be, of the Executory Contracts and Unexpired Leases assumed, assigned or rejected pursuant to the Plan.    The effect of Confirmation, the results thereof and the transactions resulting therefrom or any other effect of these Chapter 11 Cases, including, specifically, the changes to the Debtors' board of directors or managers and Equity Interests, shall not be and are not a "change of control" and shall not trigger any such or similar provision of any of the Executory Contracts and Unexpired Leases assumed and assigned pursuant to the Plan.

**(d)      Claims Based on Rejection of Executory Contracts and Unexpired Leases**

109.     Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise must be filed by Holders of such Claims in accordance with the terms of the Plan and the Claims Bar Date Order within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including this Order) approving such rejection.

**(e)      Directors and Officers Insurance Policies and Agreements**

110.     To the extent the Debtors' D&O Liability Insurance Policies or agreements are deemed Executory Contracts, notwithstanding anything in the Plan to the contrary, the Reorganized Debtors shall be deemed to have assumed all of the Debtors' unexpired D&O

41

Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date.

111.    None of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on the Commencement Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

### (f)    Indemnification and Reimbursement Obligations

112.    On and from the Effective Date, and except as prohibited by applicable law or subject to the limitations set forth herein, the Reorganized Debtors shall assume all indemnification obligations currently in place, whether in the bylaws, certificates of incorporation (or other formation documents), board resolutions, employment contracts or other agreements for the directors, officers, managers, employees, attorneys, other professionals and agents employed by the Debtors in such capacity on or after the Petition Date to the extent set forth herein. Without limiting the foregoing and except as prohibited by applicable law, the Debtors shall indemnify and hold harmless each of the Indemnified Parties for all costs, expenses, loss, damage or liability incurred by any such Indemnified Party arising from or related in any way to any and all Causes of Action whether known or unknown, whether for tort, contract, violations of federal or state securities laws or otherwise, including any claims or causes of action, whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, based in whole or in part upon any act or omission, transaction or other

42

occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including those arising from or related in any way to: (1) any action or omission of any such Indemnified Party with respect to any indebtedness of or any Equity Interest in the Debtors (including any action or omission of any such Indemnified Party with respect to the acquisition, holding, voting or disposition of any such investment); (2) any action or omission of any such Indemnified Party in such Indemnified Party's capacity as an officer, director, member, employee, partner or agent of, or advisor to any Debtor; (3) any disclosure made or not made by any Indemnified Party to any current or former Holder of any such indebtedness of or any such Equity Interest in the Debtors; (4) any consideration paid to any such Indemnified Party by any of the Debtors in respect of any services provided by any such Indemnified Party to any Debtor; and (5) any action taken or not taken in connection with the Chapter 11 Cases or the Plan.  In the event that any such Indemnified Party becomes involved in any action, proceeding or investigation brought by or against any Indemnified Party, as a result of matters to which the foregoing "Indemnification" may relate, the Reorganized Debtors shall promptly reimburse any such Indemnified Party for its reasonable and documented legal and other expenses (including advancing the costs of any investigation and preparation prior to final adjudication) incurred in connection therewith as such expenses are incurred and after a request for indemnification is made in writing, with reasonable documentation in support thereof. Notwithstanding anything contained in this Plan, the Reorganized Debtors may in their sole discretion (but have no obligation to) honor each Indemnification Obligation to a director, officer or employee that was no longer employed by the Debtors in such capacity on or after the Petition Date provided that, for each such director, officer or employee, the Debtors shall be permitted to

43

honor Indemnification Obligations only to the extent of available coverage under the applicable D&O Liability Insurance Policy.

**N.      Provisions Governing Distributions**

113.    The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan, the Reorganized Debtors shall make all distributions required under the Plan.

**O.      Setoffs**

114.    The Debtors and the Reorganized Debtors may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any Claims, Equity Interests, rights and Causes of Action, other than Causes of Action arising under section 547 of the Bankruptcy Code, of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim.  In the event that any such Claims, Equity Interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved Claims, Equity Interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claims, Equity Interests, rights and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically

44

provided herein.  In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor or a Reorganized Debtor, as applicable, unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff in such Proof of Claim or any amendment thereto.  **To the extent that any Holder of Claims has not preserved such setoff in a timely Filed Proof of Claim, such Holder shall be entitled to amend any such Proof of Claim within sixty (60) days after the Effective Date to preserve such setoff.**

P.    **Procedures for Resolving Disputed, Contingent, and Unliquidated Claims or Equity Interests**

115.    The Claims and Equity Interests resolution procedures contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.

Q.    **Vesting of Assets in the Reorganized Debtors**

116.    Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Causes of Action, other than Causes of Action arising under section 547 of the Bankruptcy Code, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Any state or local business or operating license transferred, sold, vested, or otherwise conveyed from a Debtor to a Reorganized Debtor (including the New Sbarro Companies) shall be deemed valid and

K&E 20486778

enforceable by the applicable Reorganized Debtor without need of any corporate, governmental authority or further court approval.

## R.    Discharge of Debtors

117.    Except as otherwise provided in the Plan, this Order or such other order of the Bankruptcy Court that may be applicable, on the Effective Date all Claims and Equity Interests in the Debtors shall be discharged and released in full.  All Persons and Entities shall be precluded from asserting against the Debtors, their successors or assigns, including, without limitation, the Reorganized Debtors, their agents and employees, or their respective assets, properties or interests in property, any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts or legal bases therefor were known or existed prior to the Effective Date regardless of whether a proof of Claim or Equity Interest was filed.

## S.    Compromise and Settlement

118.    Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.

119.    In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities in accordance with Article VII of the Plan.

**T.**    **Settlement, Release, Injunction and Related Provisions**

120.    The following releases, injunction, exculpation and related provisions set forth in

Article IX of the Plan are hereby approved and authorized in their entirety:

(a)    **Releases by the Debtors**

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors, the Reorganized Debtors and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Debtors' restructuring, the purchase, sale or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement, the Exit Credit Documents or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, gross negligence, or a criminal act to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, or a criminal act.**

**The foregoing release shall not apply to any express contractual or financial obligations or any right or obligations arising under or that is part of the Plan or any agreements entered into pursuant to, in connection with or contemplated by the Plan.**

**Nothing in the foregoing release shall limit the liability of the Debtors' professionals or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility, N.Y. Comp. Codes R. & Regs. tit. 22 section 1120.8 Rule 1.8(h)(i) (2009), and any other statutes, rules or regulations dealing with professional conduct to which such professionals are subject.**

K&E 20486778

(b)      **Releases by Holders of Claims and Equity Interests**

**As of the Effective Date, to the fullest extent permitted by applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Debtors, the Reorganized Debtors and the Released Parties from any and all Claims, Equity Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Equity Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Exit Credit Documents or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, gross negligence, or a criminal act to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence,  or a criminal act.**

**Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Additionally, nothing in the Debtors' Chapter 11 Cases, the Confirmation Order, the Plan, the Bankruptcy Code (including section 1141 thereof) or any other document filed in the Chapter 11 Cases shall in any way be construed to discharge, release, limit, or relieve the Debtors, the Reorganized Debtors, or any other party, in any capacity, from any liability or responsibility with respect to any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released or Exculpated Parties.  The United States or any state or local authority shall not be enjoined or precluded from enforcing such liability or responsibility by any of the provisions of the Plan, Confirmation Order, Bankruptcy Code, or any other document filed in the Chapter 11 Cases.**

(c)      **Exculpation**

**Upon and effective as of the Effective Date, the Debtors and their directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring consultants and other professional advisors and agents will be deemed to have solicited acceptances of this**

48

Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code.

Except with respect to any acts or omissions expressly set forth in and preserved by the Plan, the Plan Supplement, or related documents, the Exculpated Parties shall neither have, nor incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken through and including the Effective Date in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; **provided** that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; **provided further** that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

Nothing in this article shall limit the liability of the Debtors' professionals or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility, N.Y. Comp. Codes R. & Regs. tit. 22 section 1120.8 Rule 1.8(h)(i) (2009), and any other statutes, rules or regulations dealing with professional conduct to which such professionals are subject.

(d)    **Injunction**

The satisfaction, release and discharge pursuant to Article X of the Plan shall also act as an injunction against any person bound by such provision against commencing or continuing any action, employment of process or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under the Plan or the Confirmation Order to the fullest extent authorized or  provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

U.    **Release of Liens**

121.    Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages,

49

deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns.

**V.**    **Maintenance of Causes of Action**

122.    The provisions of Article IV.P of the Plan are hereby approved in their entirety. Subject to the releases set forth in Article IX.B and Article IX.C of the Plan, and in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, other than Causes of Action arising under section 547 of the Bankruptcy Code, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.

123.    No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action, other than Causes of Action arising under section 547 of the Bankruptcy Code, against any Person, except as otherwise expressly provided in the Plan.

124.    Notwithstanding any other provision of the Plan or any order entered in these Chapter 11 Cases, the Debtors and Reorganized Debtors forever waive, relinquish, and release any and all Causes of Action the Debtors, Reorganized Debtors and their estates had, have or may have that arise under section 547 of the Bankruptcy Code.

K&E 20486778

W.      **Management Compensation Plan**

125.    Subject only to the occurrence of the Effective Date, the Management Compensation Plan shall become effective without any further action by the Reorganized Debtors.  Nothing in the Plan shall modify the KEIP as previously approved by the Bankruptcy Court.  The Management Compensation Plan shall replace the KEIP immediately after the Effective Date; provided that all payments made under the Management Compensation Plan shall be generally consistent with, and not duplicative of, payments made under the KEIP.  The Debtors have filed the terms of the Management Compensation Plan, reflecting differences from the KEIP, in the Plan Supplement.

X.      **Management Equity Plan**

126.    As soon as reasonably practicable following the Effective Date, the New Board will adopt and implement the Management Equity Plan, pursuant to which retentive and performance-based equity awards (in the form to be determined by the New Board) of no less than one half of the Reserved Employee Equity shall be allocated to certain key employees of the Reorganized Debtors and members of the New Board, a portion of which may be reserved by the New Board for allocation to the Reorganized Debtors' chief executive officer if the selection process for such chief executive officer has not then been completed.

Y.      **Compensation and Benefits Programs**

127.    In accordance with Article V.H of the Plan, all Compensation and Benefits Programs shall be treated as Executory Contracts under the Plan and deemed assumed on the Effective Date pursuant to the provisions of section 365 and 1123 of the Bankruptcy Code, except for (a) all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Program that provide for rights to acquire Equity Interests in Sbarro, Inc.; (b) Compensation and Benefits Programs listed in the Plan Supplement to be

51

rejected or terminated; (c) Compensation and Benefits Programs that have previously been rejected or terminated; and (d) Compensation and Benefits Programs that, as of the entry of the Confirmation Order, are the subject of pending rejection procedures or a motion to reject, or have been specifically waived by the beneficiaries of any employee benefit plan or contract.

128.    The assumption or continuation of Compensation and Benefits Programs as set forth herein shall not be deemed to trigger any applicable change of control, immediate vesting, termination, or similar provisions therein (unless a Compensation and Benefits Program counterparty timely objects to the assumption or continuation contemplated by this Section in which case any such Compensation and Benefits Program shall be deemed rejected or discontinued as of immediately prior to the Petition Date).  No counterparty shall have rights under a Compensation and Benefits Program assumed pursuant to the Plan other than those applicable immediately prior to such assumption.

## Z.    Workers' Compensation Programs

129.    As of the Effective Date, except as set forth in the Plan Supplement, the Debtors and the Reorganized Debtors shall continue to honor their obligations under:  (1) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (2) the Debtors' written contracts, agreements, agreements of indemnity, self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance.  All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; provided that nothing in the Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies,

K&E 20486778

programs, and plans; provided further that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state law.

**AA.    Allowance and Payment of Certain Administrative Expense Claims**

**(a)    Administrative Claims**

130.    All requests for payment of an Administrative Claim (other than DIP Facility Claims, Prepetition First Lien Lender Claims or Professional Fee Claims) that accrued on or before the Effective Date that were not otherwise accrued in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtors no later than 45 days after the Effective Date (the "***Administrative Claim Bar Date***").

131.    The Reorganized Debtors, in their sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval.  The Debtors may also choose to object to any Administrative Claim no later than 75 days from the Administrative Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.

132.    Unless the Debtors or the Reorganized Debtors (or other party with standing) object to a timely-filed and properly served Administrative Claim, such Administrative Claim will be deemed allowed in the amount requested.  In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be allowed and, if so, in what amount.

**(b)    Professional Claims**

133.    Final Fee Applications.  All final requests for Professional Fee Claims shall be filed no later than 45 days after the Confirmation Date.  After notice and a hearing in accordance

with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

134.    <u>Payment of Interim Amounts</u>.  Except as otherwise provided in the Plan, Retained Professionals shall be paid pursuant to the Interim Compensation Order.

135.    <u>Professional Fee Escrow Account</u>.  On the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Retained Professionals.  The Professional Fee Escrow Account shall be maintained in trust for the Retained Professionals, including with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order.  Such funds in the Professional Fee Escrow Account shall not constitute property of the Reorganized Debtors.  The remaining amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Reorganized Debtors from the Professional Fee Escrow Account, without interest or other earnings therefrom, when such Claims are Allowed by a Bankruptcy Court order.  When all Allowed Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be paid to the Reorganized Debtors.

136.    <u>Professional Fee Reserve Amount</u>.  To receive payment for unbilled fees and expenses incurred through the Confirmation Date, the Retained Professionals shall estimate their Accrued Professional Compensation prior to and as of the Confirmation Date and shall deliver such estimate to the Debtors on or before the Confirmation Date.  If a Retained Professional does not provide such estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Retained Professional; <u>provided</u> that either such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Retained Professional.  The

K&E 20486778

total amount so estimated as of the Confirmation Date shall comprise the Professional Fee Reserve Amount.

137.    <u>Post-Confirmation Date Fees and Expenses</u>.    Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, each Reorganized Debtor shall pay in Cash the reasonable legal fees and expenses incurred by that Reorganized Debtor or the Creditors' Committee after the Confirmation Date in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court.    The Reorganized Debtors shall pay, within ten Business Days after submission of a detailed invoice to the Reorganized Debtors, such reasonable claims for compensation or reimbursement of expenses incurred by the Retained Professionals of the Debtors and the Creditors' Committee.    If the Reorganized Debtors or Creditors' Committee dispute the reasonableness of any such invoice, the Reorganized Debtors, Creditors' Committee or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.    The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.    Upon the Confirmation Date, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Reorganized Debtor may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.    For the avoidance of doubt, except to the limited extent set forth in Article XII.Q of the Plan, the Debtors shall have no obligation to pay any compensation or expense reimbursement for the Creditors' Committee or its Retained

K&E 20486778

Professionals after the Effective Date and nothing herein should be construed to suggest otherwise.

138.   <u>Substantial Contribution Compensation and Expenses</u>.   Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must file an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, the United States Trustee, the Creditors' Committee (if on or before the Effective Date) and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules on or before the Administrative Claims Bar Date.

## BB.   **DIP Facility Claims**

139.   Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release and discharge of and in exchange for release of all DIP Facility Claims (other than Claims under the DIP Facility that expressly survive the termination thereof), on the Effective Date, the DIP Facility Claims shall be Allowed in the aggregate principal amount of $35 million and shall (a) convert on a dollar for dollar basis into term loans under the First-Out Rollover Term Facility pursuant to the Exit Credit Documents or (b) receive such other treatment as agreed by the Debtors and the applicable DIP Lender.

## CC.   **Priority Tax Claims**

140.   Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (b) Cash in an amount agreed to by the applicable Debtor or Reorganized Debtor, as applicable, and such Holder; *provided, however,* that such parties may further agree for the

K&E 20486778

payment of such Allowed Priority Tax Claim at a later date; or (c) at the option of the Debtors, Cash in an aggregate amount of such Allowed Priority Claim plus, to the extent provided for by section 511 of the Bankruptcy Code, interest at the rate determined under applicable non-bankruptcy law, payable in installment payments over a period not more than five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and such Holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

**DD.**    **United States Trustee Statutory Fees**

141.    The Debtors shall pay all United States Trustee quarterly fees under 28 U.S.C § 1930(a)(6), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' business, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

**EE.**    **Payment of Fees and Expenses of the Prepetition First Lien Steering Committee**

142.    On the Effective Date, the Reorganized Debtors shall pay in full in Cash all reasonable and documented fees and expenses of the members of the Prepetition First Lien Steering Committee and their counsel through the Effective Date; provided that prior to, and as a condition of, payment, notice of any such fees and expenses shall be served on the United States Trustee, the Debtors and the Committee on five (5) business days notice along with reasonably detailed fee invoices; provided, further, that in no event shall such fees and expenses exceed $300,000 in the aggregate.

57

**FF.    Payment of Fees and Expenses of the Prepetition Second Lien Agent**

143.    On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall pay in full in Cash all reasonable and documented fees and expenses of the Prepetition Second Lien Agent and its counsel through the Effective Date; provided that prior to, and as a condition of, payment, notice of any such fees and expenses shall be served on the United States Trustee, the Debtors and the Committee on five (5) business days notice along with reasonably detailed fee invoices, and provided further that in no event shall such fees and expenses exceed $70,000 in the aggregate.

**GG.    Payment of Fees and Expenses of Senior Notes Indenture Trustee**

144.    On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall pay in full in Cash all reasonable and documented fees and expenses of the Senior Notes Indenture Trustee and its counsel through the Effective Date and usual and customary fees of the Senior Notes Indenture Trustee for services rendered post-Effective Date to implement the Plan; provided that prior to, and as a condition of, payment, notice of any such fees and expenses shall be served on the United States Trustee, the Debtors and the Committee on five (5) business days notice along with reasonably detailed fee invoices, and provided further that in no event shall such fees and expenses exceed $250,000 in the aggregate.

**HH.    Exemption from Certain Transfer Taxes and Recording Fees**

145.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan, the Merger Transaction, or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by

58

such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## II.    <u>Retention of Jurisdiction</u>

146.    Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

- Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

- Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

- Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any

Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

- Ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

- Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

- Adjudicate, decide or resolve any and all matters related to Causes of Action;

- Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

- Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

- Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

- Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

- Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

- Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

- Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

- Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

- Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

60

- Enter an order or final decree concluding or closing the Chapter 11 Cases;

- Adjudicate any and all disputes arising from or relating to distributions under the Plan;

- Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

- Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

- Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan (other than any dispute arising after the Effective Date under, or directly with respect to, the Exit Credit Documents, which such disputes shall be adjudicated in accordance with the terms of the Exit Credit Documents);

- Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

- Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

- Enforce all orders previously entered by the Bankruptcy Court; and

- Hear any other matter not inconsistent with the Bankruptcy Code.

## JJ.    <u>Other Essential Documents and Agreements</u>

147.    The Merger Documents, Certificates of Incorporation, the Bylaws, the Shareholders Agreement, any other agreements, instruments, certificates or documents related thereto and the transactions contemplated by each of the foregoing are approved and, upon execution and delivery of the agreements and documents relating thereto by the applicable parties, the Merger Documents, Certificates of Incorporation, the Bylaws, the Shareholders Agreement and any other agreements, instruments, certificates or documents related thereto shall be in full force and effect and valid, binding and enforceable in accordance with their terms without the need for any further notice to or action, order or approval of this Court, or other act

or action under applicable law, regulation, order or rule.  The Debtors, and after the Effective Date, the Reorganized Debtors, are authorized, without further approval of this Court or any other party, to execute and deliver all agreements, documents, instruments, securities and certificates relating to such agreements and perform their obligations thereunder, including, without limitation, pay all fees due thereunder or in connection therewith.

148.    On or upon the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Reorganized Debtors, as applicable, and upon request all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest, shall, from time to time, prepare, execute and delivery any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## KK.    Return of Deposits

149.    All utilities, including any Person who received a deposit or other form of adequate assurance of performance pursuant to section 366 of the Bankruptcy Code during these Chapter 11 Cases (collectively, the "*Deposits*"), including, without limitation, gas, electric, telephone, trash and sewer services, shall return such Deposits to the Debtors and/or the Reorganized Debtors, as applicable, either by setoff against postpetition indebtedness or by cash refund, by no later than ten days following the Effective Date and as of the Effective Date, such utilities are not entitled to make requests for or receive Deposits.

## LL.    Governing Law

150.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the

K&E 20486778

rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided that corporate governance matters relating to Debtors or Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

**MM.**    **Effectiveness of All Actions**

151.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of this Court, or further action by the respective officers, directors, members or stockholders of the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, members, or stockholders.

**NN.**    **Approval of Consents and Authorization to Take Acts Necessary to Implement Plan**

152.    Pursuant to section 1142(b) of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provision of the business corporation laws of any other state, each of the Debtors and the Reorganized Debtors hereby is authorized and empowered to take such actions and to perform such acts as may be necessary, desirable or appropriate to comply with or implement the Plan, the Plan Supplement, the Exit Credit Agreement, the Shareholders Agreement, the Merger Transaction, and any other Plan documents, including the election or appointment, as the case may be, of directors and officers of the New Board as contemplated in the Plan, and all documents, instruments, securities and agreements related thereto and all annexes, exhibits and schedules appended thereto, and the

63

obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any stockholder or board of directors' approval.  Each of the Debtors and the Reorganized Debtors hereby is authorized and empowered to take such actions, to perform all acts, to make, execute, and deliver all instruments and documents, and to pay all fees and expenses as set forth in the documents relating to the Plan and including without limitation, the Plan Supplement, the Exit Credit Agreement, the Shareholders Agreement, the Merger Transaction, and any other Plan documents, including the election or appointment, as the case may be, of directors and officers of the New Board as contemplated in the Plan, and all documents, instruments, securities and agreements related thereto and all annexes, exhibits and schedules appended thereto and that may be required or necessary for its performance thereunder without the need for any stockholder or board of directors' approval.  On the Effective Date, the appropriate officers of the Reorganized Debtors and members of the New Board are authorized and empowered to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors.  Subject to the terms of this Confirmation Order, each of the Debtors, the Reorganized Debtors and the officers and directors thereof are authorized to take any such actions without further corporate action or action of the directors or stockholders of the Debtors or the Reorganized Debtors.  On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtors shall file their amended certificates of incorporation with the Secretary of State of the state in which each such entity is (or will be) organized, in accordance with the applicable general business law of each such jurisdiction.

153.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with

respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, agreements and any amendments or modifications thereto.

**OO.    Modifications or Amendments**

154.    Except as otherwise specifically provided in the Plan, and subject to conditions to the Effective Date, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw or to alter, amend or modify materially the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI.A of the Plan.  Entry of the Confirmation Order means that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127 of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**PP.    Effect of Conflict Between Plan and Confirmation Order**

155.    If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

**QQ.    Payment of Statutory Fees**

156.    All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by this Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

**RR.    Dissolution of Creditors' Committee**

157.    On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; provided that after the Effective Date and the conclusion of any appeals or other challenges or matters with respect to entry of the Confirmation Order, the Creditors' Committee's functions shall be restricted to, and the Creditors' Committee shall not be heard on any issue except, obtaining a Final Order of the Bankruptcy Court authorizing or approving Accrued Professional Compensation of its Retained Professionals, or the representation of the Creditors' Committee in connection with the review of and the right to be heard in connection with all Professional Fee Claims.  Following the Confirmation Date, in accordance with the foregoing, the attorneys and financial advisors to the Creditors' Committee shall be entitled to assert any reasonable claims for compensation for services rendered or reimbursement for expenses incurred after the Confirmation Date in connection with services to the Creditors' Committee.

**SS.    Reservation of Rights**

158.    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed

66

to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**TT.**     **Notice of Entry of the Confirmation Order**

159.     In accordance with Bankruptcy Rules 2002 and 3020(c), promptly after entry of the Confirmation Order, the Debtors shall serve a notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with notice of the Confirmation Hearing; *provided*, *however*, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors served the notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.

160.     To supplement the notice described in the preceding sentence, within twenty (20) days of the date of the Confirmation Order the Debtors shall publish notice of entry of the Confirmation Order on one occasion in the national editions of *The Wall Street Journal* and *USA Today*.  Mailing and publication of the notice of entry of the Confirmation Order in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

**UU.**     **Reports**

161.     The Debtors shall file, within 45 days after the date of this Order, a status report detailing the actions taken by the Debtors and the progress made toward the consummation of the Plan.  The Debtor shall file status reports with the Court every January 15, April 15, July 15, and October 15 until a final decree has been entered closing the Debtor's chapter 11 case.

**VV.     Injunctions and Automatic Stay**

162.     Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.   All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

163.     This Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Interests, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights or liabilities released pursuant to the Plan.

**WW.    Nonseverability of Plan Provisions Upon Confirmation**

164.     Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Administrative Agent; and (c) nonseverable and mutually dependent.

**XX.    Waiver or Estoppel**

165.     Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with this Court prior to the Confirmation Date.

K&E 20486778

**YY.**   **Authorization to Consummate**

166.   The Debtors are authorized to consummate the Plan on any business day selected by the Debtors after the entry of the Confirmation Order, subject to satisfaction or waiver (by the required parties) of the conditions to the Effective Date set forth in Article VIII of the Plan.

**ZZ.**   **Resolutions of Objections and Concerns of Non-Debtor Parties**

167.   <u>Amendments to Proofs of Claim Filed in Advance of Claims Bar Date</u>.  Except as provided herein, any Proof of Claim that amends a Proof of Claim filed before the Claims Bar Date shall not be deemed disallowed in full and expunged without any further action on the Effective Date, and the Debtors reserve all rights to object to such Proofs of Claim.

168.   <u>Treatment of Allowed Secured Claims of Taxing Authorities.</u>  To the extent that the Debtors or the Court determine any claim of a taxing authority is an Allowed Secured Claim, such Allowed Secured Claim shall be treated pursuant to section 1129(a)(9)(D) of the Bankruptcy Code and the Holder of such Allowed Secured Claim shall be entitled to retain its liens until such Claim has been satisfied.  To the extent that the Debtors opt to pay any Allowed Secured Claim of a taxing authority in installment payments pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, the Debtors shall pay such taxing authority Cash in an aggregate amount of such Allowed Secured Claim plus, to the extent provided for by section 511 of the Bankruptcy Code, interest at the rate determined under applicable non-bankruptcy law, payable in installment payments over a period not more than five years after the Petition Date.

169.   <u>Westchester Fire Insurance Company.</u>  Solely for purposes of confirmation of the Plan, those certain surety bonds (the "***Surety Bonds***") executed by Westchester First Insurance Company ("***Westchester Fire***") shall be deemed executory contracts to be assumed pursuant to the Plan, and Westchester Fire consents to the assumption of the Surety Bonds; <u>provided</u>, <u>however</u>, that assumption of the Surety Bonds is contingent upon the Reorganized Debtors (or

the assignee of the Surety Bonds) executing a new Agreement of Indemnity in favor of Westchester Fire, to be retroactively effective as of the Effective Date of the Plan, in substantially the same form as that certain Agreement of Indemnity dated February 13, 2009 and in form and substance acceptable to the Reorganized Debtors and Westchester Fire. Should the Reorganized Debtors and Westchester Fire fail to agree on the terms and conditions of the new Agreement of Indemnity, the Surety Bonds and that certain Agreement of Indemnity dated February 13, 2009 shall be deemed rejected and the Reorganized Debtors shall replace the Surety Bonds as of the Effective Date.

170.    <u>Claims under Lease Assumption Order.</u>  Notwithstanding Art. IX.C of the Plan, nothing in the Plan or this Confirmation Order shall be deemed to release any claim set forth in and preserved by the *Order Granting Debtors' Omnibus Motion Pursuant to Section 363(b) and 365(a) of the Bankruptcy Code Authorizing the Debtors to Assume Certain Unexpired Leases of Non-Residential Real Property* [Docket No. 662].

### AAA.  **Waiver of Bankruptcy Rule 3020(e)**

171.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, the 14-day stay provided under Bankruptcy Rule 3020(e) shall be waived and the Confirmation Order shall be effective and enforceable immediately upon entry.

### BBB.  **Final Order**

172.    This Confirmation Order is intended to be a Final Order and the period within which an appeal must be filed commences upon the entry hereof.

**IT IS SO ORDERED:**

Dated: November 17, 2011          */s/ Shelley C. Chapman*
New York, New York               Honorable Shelley C. Chapman
                                 United States Bankruptcy Judge

K&E 20486778

## **EXHIBIT 1**

**Plan**

James H.M. Sprayregen, P.C.
Edward O. Sassower
Nicole L. Greenblatt
Paul Wierbicki (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SBARRO, INC., *et al.*,[1] | ) | Case No. 11-11527 (SCC) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**PROPOSED FIRST AMENDED JOINT CHAPTER 11 PLAN**
**OF REORGANIZATION OF SBARRO, INC. AND ITS DEBTOR AFFILIATES**

Dated:  November 16, 2011

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sbarro, Inc. (1939); Sbarro Holdings, LLC (3819); Carmela's of Kirkman Operating, LLC (1182); Carmela's of Kirkman LLC (7703); Carmela's, LLC (8088); Corest Management, Inc. (9134); Demefac Leasing Corp. (2379); Larkfield Equipment Corp. (7947); Las Vegas Convention Center LLC (7645); Sbarro America Properties, Inc. (9540); Sbarro America, Inc. (9130); Sbarro Blue Bell Express LLC (1419); Sbarro Commack, Inc. (4007); Sbarro Express LLC (0253); Sbarro New Hyde Park, Inc. (6185); Sbarro of Las Vegas, Inc. (2853); Sbarro of Longwood, LLC (0328); Sbarro of Virginia, Inc. (2309); Sbarro Pennsylvania, Inc. (3530); Sbarro Properties, Inc. (9541); Sbarro Venture, Inc. (3182); Sbarro's of Texas, Inc. (5139); Umberto at the Source, LLC (8024); Umberto Deer Park, LLC (8728); Umberto Hauppauge, LLC (8245); Umberto Hicksville, LLC (0989); Umberto Huntington, LLC (8890); and Umberto White Plains, LLC (8159).  The Debtors' service address is:  401 Broadhollow Road, Melville, New York 11747.

**TABLE OF CONTENTS**

Page

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ...................................................................1
    A.      Rules of Interpretation .........................................................................................................................1
    B.      Defined Terms ......................................................................................................................................1

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS,  PRIORITY TAX CLAIMS,
    AND UNITED STATES TRUSTEE STATUTORY FEES.........................................................................12
    A.      Administrative Claims ........................................................................................................................12
    B.      DIP Facility Claims ............................................................................................................................14
    C.      Priority Tax Claims.............................................................................................................................14
    D.      United States Trustee Statutory Fees .................................................................................................15

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................................15
    A.      Classification of Claims .....................................................................................................................15
    B.      Treatment of Claims and Interests Against the Debtors.....................................................................15
    C.      Intercompany Claims ..........................................................................................................................18
    D.      Special Provision Governing Unimpaired Claims .............................................................................18
    E.      Acceptance or Rejection of the Plan ..................................................................................................18
    F.      Nonconsensual Confirmation..............................................................................................................19
    G.      Subordinated Claims ...........................................................................................................................19
    H.      Elimination of Vacant Classes ...........................................................................................................19

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ....................................................................19
    A.      General Settlement of Claims .............................................................................................................19
    B.      Restructuring Transactions .................................................................................................................19
    C.      Merger Transaction ............................................................................................................................19
    D.      Corporate Existence ...........................................................................................................................20
    E.      Vesting of Assets in the Reorganized Debtors...................................................................................20
    F.      Indemnification Provisions in Organizational Documents.................................................................20
    G.      Cancellation of Agreements, Senior Notes and Equity Interests........................................................20
    H.      Sources of Cash for Plan Distributions and Transfers of Funds Among Debtors .........................21
    I.      Exit Financing and Approval of Exit Credit Documents ...................................................................22
    J.      Reorganized Debtors' Equity Interests ..............................................................................................23
    K.      Section 1145 Exemption .....................................................................................................................23
    L.      Organizational Documents .................................................................................................................23
    M.      Effectuating Documents; Further Transactions..................................................................................24
    N.      Exemption from Certain Transfer Taxes and Recording Fees ...........................................................24
    O.      Directors and Officers of New Sbarro Parent and the Other Reorganized Debtors .......................24
    P.      Preservation of Rights of Action........................................................................................................25
    Q.      Dismissal of Adversary Proceeding ...................................................................................................25

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS  AND UNEXPIRED LEASES;
    EMPLOYEE BENEFITS; AND INSURANCE POLICIES ....................................................................26
    A.      Assumption and Rejection of Executory Contracts and Unexpired Leases ...................................26
    B.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases......................................26
    C.      Claims Based on Rejection of Executory Contracts and Unexpired Leases ...................................27
    D.      Contracts and Leases Entered Into After the Petition Date ...............................................................27
    E.      Reservation of Rights .........................................................................................................................27
    F.      Assumption of Directors and Officers Insurance Policies .................................................................27
    G.      Indemnification and Reimbursement Obligations..............................................................................27
    H.      Employee Compensation and Benefits ..............................................................................................28

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ..........................................................................29

A.    Distribution on Account of Claims and Interests Allowed as of the Effective Date ......................29
B.    Distributions on Account of Claims and Interests Allowed After the Effective Date....................30
C.    Timing and Calculation of Amounts to Be Distributed ....................................................30
D.    Delivery of Distributions ..........................................................................................31
E.    Compliance with Tax Requirements/Allocations............................................................33
F.    Setoffs ......................................................................................................................33
G.    Surrender of Canceled Instruments or Securities ...........................................................34
H.    Claims Paid or Payable by Third Parties.......................................................................34

ARTICLE VII. PROCEDURES FOR RESOLVING DISPUTED,  CONTINGENT, AND
         UNLIQUIDATED CLAIMS OR EQUITY INTERESTS ....................................................35
A.    Allowance of Claims and Interests..............................................................................35
B.    Prosecution of Objections to Claims............................................................................35
C.    Estimation of Claims and Interests..............................................................................35
D.    Adjustment to Claims and Interests Without Objection ..................................................35
E.    Disallowance of Claims or Interests ............................................................................35
F.    Offer of Judgment ....................................................................................................36
G.    Amendments to Claims .............................................................................................36

ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE....................................36
A.    Conditions Precedent to the Effective Date ..................................................................36
B.    Waiver of Conditions ...............................................................................................37
C.    Effect of Non-Occurrence of Conditions to the Effective Date ........................................37

ARTICLE IX. RELEASE, INJUNCTION, AND RELATED PROVISIONS ....................................37
A.    Discharge of Claims and Termination of Interests..........................................................37
B.    Releases by the Debtors ............................................................................................38
C.    Releases by Holders of Claims and Equity Interests.......................................................38
D.    Exculpation .............................................................................................................39
E.    Injunction ...............................................................................................................40
F.    Release of Liens ......................................................................................................40

ARTICLE X. RETENTION OF JURISDICTION .................................................................40

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN............................42
A.    Modification of Plan .................................................................................................42
B.    Effect of Confirmation on Modifications......................................................................42
C.    Revocation of Plan ...................................................................................................42

ARTICLE XII. MISCELLANEOUS PROVISIONS ...............................................................42
A.    Immediate Binding Effect..........................................................................................42
B.    Additional Documents...............................................................................................43
C.    Payment of Fees and Expenses of the Prepetition First Lien Steering Committee ...............43
D.    Payment of Fees and Expenses of Prepetition Second Lien Agent ....................................43
E.    Payment of Fees and Expenses of the Senior Notes Indenture Trustee ..............................43
F.    Payment of Statutory Fees .........................................................................................43
G.    Reservation of Rights................................................................................................43
H.    Successors and Assigns..............................................................................................44
I.    Service of Documents ...............................................................................................44
J.    Term of Injunctions or Stays......................................................................................45
K.    Entire Agreement .....................................................................................................45
L.    Governing Law ........................................................................................................45
M.    Exhibits ..................................................................................................................45
N.    Nonseverability of Plan Provisions upon Confirmation...................................................45
O.    Closing of Chapter 11 Cases ......................................................................................46
P.    Conflicts..................................................................................................................46

ii

Q.    Dissolution of Creditors' Committee ...................................................................................46
R.    Section 1125(e) Good Faith Compliance ............................................................................46
S.    Further Assurances..............................................................................................................46
T.    No Stay of Confirmation Order...........................................................................................46

**PROPOSED FIRST AMENDED JOINT CHAPTER 11 PLAN
OF REORGANIZATION OF SBARRO, INC. AND ITS DEBTOR AFFILIATES**

Sbarro, Inc. and 27 of its debtor affiliates, as debtors and debtors in possession (collectively, the "*Debtors*"), propose the following joint plan of reorganization for the resolution of the outstanding claims against, and equity interests in, the Debtors. These Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.B of the Plan.

Reference is made to the Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, results of operations, historical financial information, projections and future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan. Each of the Debtors is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I.

## DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Rules of Interpretation*

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" or "Sections" are references to Articles or Sections hereof or hereto; (e) the words ''herein,'' "hereof'' and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

B.    *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Accrued Professional Compensation*" means, at any date, all accrued fees and reimbursable expenses (including success fees) for services rendered by all Retained Professionals in the Chapter 11 Cases through and including such date, to the extent that such fees and expenses have not been previously paid and regardless of whether a fee application has been filed for such fees and expenses. To the extent that there is a Final Order denying some or all of a Retained Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

2.    "*Administrative Claim*" means a Claim (other than First Lien Adequate Protection Claims and DIP Facility Claims) for costs and expenses of administration under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and

1

through the Effective Date of preserving the Estates and operating the businesses of the Debtors and (b) Accrued Professional Compensation (to the extent Allowed by the Bankruptcy Court).

3.      "*Administrative Claims Bar Date*" means the date that is the 45th day after the Effective Date.

4.      "*Adversary Proceeding*" means that certain adversary proceeding commenced by the Prepetition Second Lien Lenders on July 22, 2011 under the caption *Column Investments S.à.r.l. v. Sbarro, Inc., et al.*, Adv. Proc. No. 11 02421 (Bankr. S.D.N.Y. July 22, 2011) (SCC).

5.      "*Affiliate*" has the meaning set forth at section 101(2) of the Bankruptcy Code.

6.      "*Allowed*" means with respect to Claims:  (a) any Claim, proof of which is timely filed by the applicable Claims Bar Date (or that by the Bankruptcy Code or Final Order is not or shall not be required to be filed); (b) any Claim that is listed in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, and for which no Proof of Claim has been timely filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court (including pursuant to any stipulation approved by the Bankruptcy Court); provided that with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to any such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or such an objection is so interposed and the Claim shall have been Allowed by a Final Order; provided further that the Claims described in clauses (a), (b), and (c) above shall not include any Claim on account of a right, option, warrant, right to convert, or other right to purchase an Equity Interest.  Except as otherwise specified in the Plan or an order of the Bankruptcy Court or with respect to Priority Tax Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  Any Claim that has been listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged without further action and without any further notice to or action, order, or approval of the Bankruptcy Court.

7.      "*Assumed Executory Contract/Unexpired Lease List*" means the list (as may be amended), as determined by the Debtors or the Reorganized Debtors and that shall be in form and substance reasonably acceptable to the Prepetition First Lien Steering Committee, of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Reorganized Debtors pursuant to the Plan.

8.      "*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

9.      "*Ballot*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received by the Debtors' Notice and Claims Agent on or before the Voting Deadline.

10.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

11.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases.

12.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

13.     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

14.     "*Bylaws*" means the (a) New Sbarro Parent Bylaws, and (b) New Sbarro HoldCo Bylaws.

15.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

2

16.     "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, in each case held by the Debtors, whether disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

17.     "*Certificate*" means any instrument evidencing a Claim or an Interest.

18.     "*Certificates of Incorporation*" means the (a) New Sbarro Parent Certificate of Incorporation, and (b) New Sbarro HoldCo Certificate of Incorporation.

19.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the chapter 11 case filed for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases for all of the Debtors.

20.     "*Claim*" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

21.     "*Claims Bar Date*" means, as applicable, (a) July 8, 2011 at 5:00 p.m. prevailing Eastern Time (b) the Governmental Bar Date, or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for filing such Claims, pursuant to the Claims Bar Date Order.

22.     "*Claims Bar Date Order*" means that certain Order (I) Setting Bar Dates for Filing Proofs of Claim, (II) Approving Procedures for Filing Proofs of Claim and (III) Approving Notice Thereof, entered by the Bankruptcy Court on May 26, 2011 [Docket No. 232], as may be amended from time to time.

23.     "*Claims Register*" means the official register of Claims and Interests maintained by the Notice and Claims Agent.

24.     "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

25.     "*Class 3 Distribution*" shall have the meaning set forth in Article III.B.3 hereof.

26.     "*Class 3 Final Distribution Date*" means a day (a) selected by the Reorganized Debtors that is after the Initial Distribution Date and is 20 calendar days after the date on which all L/C Claims have become either Allowed Claims or Disallowed Claims or (b) otherwise established by the Bankruptcy Court.

27.     "*Compensation and Benefits Programs*" means all employment and severance agreements and policies, and all compensation and benefit plans, policies, and programs of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors and the employees, former employees and retirees of their subsidiaries, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit agreements, and plans, incentive plans, deferred compensation plans and life, accidental death, and dismemberment insurance plans.

28.     "*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

29.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

30.     "*Confirmation Hearing*" means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

31.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

32.     "*Contract/Lease Schedule Date*" means the latest date by which the Debtors shall file and serve their Assumed Executory Contract/Unexpired Lease List and the Rejected Executory Contract/Unexpired Lease List so as to be received no fewer than five (5) days prior to the Voting Deadline.

33.     "*Creditors' Committee*" means the official committee of unsecured creditors of the Debtors appointed by the United States Trustee in the Chapter 11 Cases on April 12, 2011, pursuant to section 1102 of the Bankruptcy Code.

34.     "*Cure Claim*" *means* a Claim based upon the Debtors' default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

35.     "*Description of Transaction Steps*" means the description of the steps of the Merger Transaction, as set forth in the Plan Supplement.

36.     "*DIP Agent*" means Cantor Fitzgerald Securities in its capacity as administrative agent and collateral agent under the DIP Facility.

37.     "*DIP Facility*" means that certain $35 million Credit and Guarantee Agreement, dated as of April 3, 2011, among Sbarro, Inc., as borrower, Sbarro Holdings, LLC and each direct and indirect, existing and future domestic subsidiary of Sbarro Holdings, LLC, as guarantors, the DIP Agent, and the DIP Lenders, as may be amended, modified, ratified, extended, renewed, restated or replaced.

38.     "*DIP Facility Claim*" means any Claim held by the DIP Lenders arising under or related to the DIP Facility.

39.     "*DIP Lenders*" means the DIP Agent and the banks, financial institutions and other lenders party to the DIP Facility from time to time.

40.     "*Disclosure Statement*" means the disclosure statement for the Plan, including, without limitation, all exhibits and schedules thereto, as amended, supplemented or modified from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

41.     "*Disputed Claim*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

42.     "*Distribution Agent*" means the Debtors or any Entity or Entities chosen by the Debtors, which Entities may include the Notice and Claims Agent, to make or to facilitate distributions required by the Plan.

43.     "*Distribution Record Date*" means the date for determining which Holders of Claims or Equity Interests are eligible to receive distributions under the plan, which date shall be the Voting Deadline or such other date as designated in an order of the Bankruptcy Court.

44.     "*D&O Liability Insurance Policies*" means all insurance policies of any of the Debtors for directors', managers', and officers' liability.

45.     "*Effective Date*" means the date selected by the Debtors that is a Business Day no later than 20 Business Days after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII.A have been (i) satisfied or (ii) waived pursuant to Article VIII.A.

46.     "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

47.     "*Equity Interest*" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any warrants, equity-based awards or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto that existed immediately before the Effective Date; provided that Equity Interest does not include any Intercompany Interest.

48.    "*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

49.    "*Exculpated Parties*" means, collectively: (a)  the Reorganized Debtors; and (b) the Released Parties.

50.    "*Executory Contract*" means a contract or lease, as may have been amended, restated or otherwise modified and including any codicils, amendments, exhibits or annexes thereto, if any, to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

51.    "*Existing Letters of Credit*" means the letters of credit set forth in Exhibit 1.

52.    "*Exit Credit Agreement*" means the credit agreement effectuating the Exit Financing.

53.    "*Exit Credit Documents*" means all loan and security documents, including the Exit Credit Agreement, relating to the Exit Financing, in each case as the same may be amended, restated, supplemented, or otherwise modified from time to time.

54.    "*Exit Financing*" means, collectively, a $75 million senior secured term loan facility (the Last-Out Exit Term Facility) and approximately $62.3 million[2] in senior secured credit facilities (the First-Out Exit Term Facilities).

55.    "*Final DIP Order*" means that certain Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing and to Use Cash Collateral, (II) Granting Adequate Protection to Pre-Petition Lenders and (III) Granting Related Relief, entered by the Bankruptcy Court on May 4, 2011 [Docket No. 163], as may be amended from time to time in accordance with the terms thereof and the DIP Facility.

56.    "*Final Order*" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing has been resolved by the court in which such motion was filed; provided, however, that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

57.    "*First Lien Adequate Protection Claims*" means all adequate protection claims arising under applicable law or pursuant to  the Final DIP Order.

58.    "*First-Out Exit Term Facilities*" means, collectively: (a) a term loan facility converted on a dollar-for-dollar basis from the DIP Facility held by lenders who elect such conversion (the "***First-Out Rollover Term Facility***") and (b) a multiple draw new money term loan facility (the "***First-Out New Money Term Facility***"), in an aggregate initial principal amount of $35 million, to be provided by certain of the Prepetition First Lien Lenders.  The terms of the First-Out Exit Term Facilities shall be substantially consistent with those set forth in the Form of Exit Credit Agreement annexed as Exhibit A to the Plan Supplement filed on October 28, 2011 [Docket No. 659].

---

[2]    This amount reflects that approximately $27.3 million of term loans under the DIP Facility will be converted on a dollar-for-dollar basis into the First-Out Rollover Term Facility.

59.      "*General Administrative Claim*" means any Administrative Claim, including Cure Claims, other than a Professional Fee Claim.

60.      "*General Unsecured Claims*" means any unsecured claim (other than an Administrative Claim; a Priority Tax Claim; an Other Priority Claim; Unsecured Ongoing Operations Claims; or an Intercompany Claim) against one or more of the Debtors including, but not limited to (a) Claims arising from the rejection of Unexpired Leases and Executory Contracts to which a Debtor is a party, (b) Claims arising from any litigation or other court, administrative or regulatory proceeding, including, without limitation, damages or judgments entered against, or settlement amounts owing by a Debtor related thereto, and (c) Senior Notes Claims.

61.      "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

62.      "*Governmental Bar Date*" means 5:00 p.m. prevailing Eastern Time on October 3, 2011, or such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court.

63.      "*Holder*" means an Entity holding a Claim or Interest.

64.      "*Impaired*" means any Claim or Interest in an Impaired Class.

65.      "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

66.      "*Indemnified Parties*" means the Debtors' current directors, officers, managers, employees, attorneys, other professionals, and agents, and such current directors', officers', managers', and employees' respective Affiliates to the extent set forth herein, that were employed in such capacity on or after the Petition Date and that are entitled to be indemnified by the Debtors pursuant to, among other things, the Debtors' bylaws, certificates of incorporation (or other formation documents), board resolutions, employment contracts, or other agreements.

67.      "*Indemnification Obligation*" means a Debtor's obligation under an Executory Contract or otherwise to indemnify directors, officers, employees, or agents of such Debtor who served in such capacity at any time, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by such Debtor's respective certificates of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date.

68.      "*Initial Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than thirty (30) days after the Effective Date, when distributions under the Plan shall commence for each Class entitled to receive distributions.

69.      "*Intercompany Claims*" means, collectively, any Claim held by a Debtor against another Debtor or an Affiliate of a Debtor or any Claim held by an Affiliate of a Debtor against a Debtor.

70.      "*Intercompany Interest*" means an Equity Interest in a Debtor held by another Debtor.

71.      "*Interests*" means, collectively, Equity Interests and Intercompany Interests.

72.      "*Interim Compensation Order*" means that certain Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals, entered by the Bankruptcy Court on May 3, 2011 [Docket No. 147], as may be amended from time to time, including by an order entered by the Bankruptcy Court approving the retention of a specific Retained Professional.

73.      "*Last-Out Exit Term Facility*" means a $75 million senior secured term loan facility to be converted from the Prepetition First Lien Credit Facility.  The terms of the Last-Out Exit Term Facility shall be substantially consistent with those set forth in the Form of Exit Credit Agreement annexed as <u>Exhibit A</u> to the Plan Supplement filed on October 28, 2011 [Docket No. 659].

74.    "*L/C Claims*" means the Prepetition First Lien Lender Claims on account of the Existing Letters of Credit that are undrawn as of the Effective Date.  The L/C Claims are contingent and undisputed.

75.    "*L/C Claims Reserve*" has the meaning set forth in Article VI.A.1 hereof.

76.    "*L/C Reimbursement Obligations*" has the meaning set forth in Article IV.G hereof.

77.    "*KEIP*" means the key employee incentive program authorized by the Bankruptcy Court by order dated September 8, 2011 [Docket No. 512].

78.    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

79.    "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the Southern District of New York.

80.    "*Management Compensation Plan*" means that certain key employee cash incentive program agreed to among the Debtors and the Prepetition First Lien Steering Committee on August 9, 2011 as modified to take into account any payments made under the KEIP, substantially in the form to be included in the Plan Supplement.

81.    "*Management Equity Plan*" means the management incentive plan of the Reorganized Debtors, which management incentive plan will be established and implemented by the New Board as soon as reasonably practicable following the Effective Date and pursuant to which retentive and performance-based equity awards (in the form to be determined by the New Board) of no less than 1/2 of the Reserved Employee Equity shall be allocated to certain key employees of the Reorganized Debtors and members of the New Board, a portion of which may be reserved by the New Board for allocation to the Reorganized Debtors' chief executive officer if the selection process for such chief executive officer has not then been completed.[3]

82.    "*Merger Transaction*" means that certain restructuring transaction consummated under the Plan pursuant to which the Purchaser shall acquire all of the Debtors' assets by way of merger in a taxable transaction for United States Federal income tax purposes and which shall be deemed consummated on the Effective Date, as described in the Description of Transaction Steps included in the Plan Supplement.

83.    "*New Board*" means the initial board of directors of New Sbarro Parent.

84.    "*New Common Stock*" means the common equity in New Sbarro Parent to be authorized, issued, or reserved on or prior to the Effective Date and transferred pursuant to the Plan, which shall constitute all of the direct or indirect common equity of New Sbarro Parent.

85.    "*New Sbarro Companies*" means, collectively, New Sbarro Parent, New Sbarro Finance, New Sbarro HoldCo., New Sbarro Corp., and New Sbarro LLC.

86.    "*New Sbarro Corp.*" means a Delaware corporation to be formed on or before the Effective Date by Sbarro, Inc. to implement the Merger Transaction.

87.    "*New Sbarro Finance*" means a Delaware corporation to be formed on or before the Effective Date by New Sbarro Parent to implement the Merger Transaction.

88.    "*New Sbarro HoldCo*" means a Delaware corporation to be formed on or before the Effective Date by New Sbarro Finance to implement the Merger Transaction.

89.    "*New Sbarro HoldCo Bylaws*" means the bylaws of New Sbarro HoldCo, substantially in the form included in the Plan Supplement.

---

[3]    The parameters of the Management Equity Plan and Reserved Employee Equity are the subject of ongoing discussions among the Debtors and the Prepetition First Lien Steering Committee and are subject to change.

90.    "*New Sbarro HoldCo Certificate of Incorporation*" means the certificate of incorporation of New Sbarro HoldCo, substantially in the form included in the Plan Supplement.

91.    "*New Sbarro LLC*" means a New York limited liability company to be formed on or before the Effective Date by New Sbarro Corp. to implement the Merger Transaction.

92.    "*New Sbarro Parent*" means a Delaware corporation to be formed on or before the Effective Date by a nominee of the Prepetition First Lien Lenders to implement the Merger Transaction. For purposes of the Bankruptcy Code, including section 1145 of the Bankruptcy Code, New Sbarro Parent shall be deemed a successor to Sbarro Holdings, LLC.

93.    "*New Sbarro Parent Bylaws*" means the bylaws of New Sbarro Parent, substantially in the form included in the Plan Supplement.

94.    "*New Sbarro Parent Certification of Incorporation*" means the certificate of formation of New Sbarro Parent, substantially in the form included in the Plan Supplement.

95.    "*Notice and Claims Agent*" means Epiq Bankruptcy Solutions LLC, in its capacity as noticing, claims, and solicitation agent for the Debtors, pursuant to (a) that certain Order Authorizing and Approving the Employment of Epiq Bankruptcy Solutions, LLC as Notice and Claims Agent to the Debtors *Nunc Pro Tunc* to the Petition Date, entered by the Bankruptcy Court on April 5, 2011 [Docket No. 44] and (b) that certain Order Authorizing and Approving the Retention of Epiq Bankruptcy Solutions, LLC as Administrative Agent to the Debtors *Nunc Pro Tunc* to the Petition Date, entered by the Bankruptcy Court on May 3, 2011 [Docket No. 149], as may be amended from time to time.

96.    "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

97.    "*Other Secured Claim*" means any Secured Claim against the Debtors not specifically described herein; <u>provided</u>, <u>however</u>, that Other Secured Claims shall not include DIP Facility Claims, Prepetition First Lien Lender Claims, and Prepetition Second Lien Lender Claims.

98.    "*Participating Prepetition First Lien Lender*" means a Prepetition First Lien Lender that provides a commitment for the First-Out New Money Term Facility that represents, as a percentage of the total commitments thereunder, a percentage that is at least equal to the percentage of total loans and commitments under the Prepetition First Lien Credit Facility held by such Prepetition First Lien Lender.

99.    "*Periodic Distribution Date*" means the first Business Day that is as soon as reasonably practicable occurring approximately ninety (90) days after the immediate preceding Periodic Distribution Date.

100.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

101.    "*Petition Date*" means April 4, 2011.

102.    "*Plan*" means this joint plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including, without limitation, all exhibits and schedules hereto and thereto.

103.    "*Plan Equity Value*" means between $46.7 million and $91.7 million.

104.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to be filed on the Plan Supplement Filing Date, as amended, modified or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules, comprising, without limitation, the following documents: (a) the Exit Credit Agreement; (b) the Shareholders Agreement; (c) the Certificates of Incorporation; (d) the Bylaws; (e) to the extent known, the identity of the

members of the New Board; (f) the form of the Management Compensation Plan, to the extent different from the terms of the KEIP; and (g) the Description of Transaction Steps.

105.    "*Plan Supplement Filing Date*" means the date that is five (5) business days prior to the Voting Deadline.

106.    "*Prepetition First Lien Agent*" means Cantor Fitzgerald Securities, in its capacity as successor administrative agent and collateral agent under the Prepetition First Lien Facility.

107.    "*Prepetition First Lien Credit Agreement*" means that certain Amended and Restated Credit and Guarantee Agreement dated as of January 31, 2007, among Sbarro, Inc., certain of its subsidiaries, the Prepetition First Lien Agent and other lenders party thereto, as amended.

108.    "*Prepetition First Lien Credit Facility*" means the secured loan facility under the Prepetition First Lien Credit Agreement.

109.    "*Prepetition First Lien Lender Claims*" means all Claims arising under the Prepetition First Lien Loan Documents or applicable law, including all First Lien Adequate Protection Claims and L/C Claims.

110.    "*Prepetition First Lien Lenders*" means those banks, financial institutions, and other lenders under the Prepetition First Lien Facility, from time to time, in their capacity as such.

111.    "*Prepetition First Lien Loan Documents*" means each of the documents, agreements, and instruments (including, without limitation, all collateral documents) executed and delivered from time to time in connection with the Prepetition First Lien Facility.

112.    "*Prepetition First Lien Steering Committee*" means that certain steering committee of secured lenders holding Prepetition First Lien Lender Claims.

113.    "*Prepetition Intercreditor Agreement*" means that certain Intercreditor Agreement dated as of March 26, 2009 by and between the Prepetition First Lien Agent and the Prepetition Second Lien Agent.

114.    "*Prepetition L/C Issuer*" means Bank of America, N.A. in its capacity as issuer of the Existing Letters of Credit.

115.    "*Prepetition Second Lien Agent*" means Wilmington Trust FSB, in its capacity as successor administrative agent and collateral agent under the Prepetition Second Lien Credit Agreement.

116.    "*Prepetition Second Lien Credit Agreement*" means that certain Amended and Restated Credit and Guarantee Agreement dated as of March 26, 2009, among Sbarro, Inc., certain of its subsidiaries, the Prepetition Second Lien Agent, and other lenders party thereto, as amended.

117.    "*Prepetition Second Lien Lender Claims*" means all Claims arising out of the Prepetition Second Lien Loan Documents or applicable law.

118.    "*Prepetition Second Lien Lenders*" means those banks, financial institutions, and other lenders parties to the Prepetition Second Lien Credit Agreement, from time to time, in their capacity as such.

119.    "*Prepetition Second Lien Loan Documents*" means each of the documents, agreements, and instruments (including, without limitation, all collateral documents) executed and delivered from time to time in connection with the Prepetition Second Lien Credit Agreement.

120.    "*Priority Tax Claim*" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

121.    "*Professional Fee Claim*" means a Claim by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and

including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

122.    "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount funded and maintained by the Reorganized Debtors on and after the Effective Date solely for the purpose of paying all Allowed and unpaid fees and expenses of Retained Professionals in the Chapter 11 Cases.

123.    "*Professional Fee Reserve Amount*" means the aggregate Accrued Professional Compensation through the Effective Date as estimated by the Retained Professionals in accordance with Article II.A.2(d) hereof.

124.    "*Proof of Claim*" means a proof of Claim filed against any Debtor in the Chapter 11 Cases.

125.    "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion of a particular recovery that a Class is entitled to share with other Classes entitled to the same recovery under the Plan.

126.    "*Purchaser*" means each corporation or limited liability company to be formed or caused to be formed by the Debtors and/or the Prepetition First Lien Lenders that purchases and is vested with all of the assets of any of the Debtors pursuant to this Plan.

127.    "*Rejected Executory Contract/Unexpired Lease List*" means the list (as may be amended), as determined by the Debtors or the Reorganized Debtors and that shall be reasonably acceptable in form and substance to the Prepetition First Lien Steering Committee, of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto) that will be rejected by the Reorganized Debtors pursuant to the Plan.

128.    "*Released Parties*" means, collectively (a) the Debtors and the Debtors' current and former officers and directors, (b) the New Sbarro Companies, (c) the Prepetition First Lien Agent, the Prepetition L/C Issuer, and the Prepetition First Lien Lenders, (d) the DIP Agent and the DIP Lenders, (e) the Prepetition Second Lien Agent and the Prepetition Second Lien Lenders in their capacities as such, (f) the Creditors' Committee and all current and former members thereof and (g) with respect to each of the Persons named in (a) – (f) above, such Entity's directors, officers, shareholders, partners, members, employees, agents, affiliates, parents, subsidiaries, predecessors, successors, heirs, executors and assignees, attorneys, financial advisors, investment bankers, accountants and other professionals or representatives when acting in any such capacities.

129.    "*Releasing Parties*" means, collectively, (a) the Prepetition First Lien Agent and the members of the Prepetition First Lien Steering Committee, (b) the DIP Agent and the DIP Lenders, (c) the Prepetition Second Lien Agent and the Prepetition Second Lien Lenders in their capacities as such, (d) the Creditors' Committee and the members thereof, and (e) each Holder of a Claim that affirmatively votes to accept the Plan, each solely in its capacity as such.

130.    "*Reorganized Debtors*" means, collectively, (i) each of the Debtors, and any successor thereto (including the New Sbarro Companies), whether by merger, consolidation, or otherwise on and after the Effective Date and (ii) each of the New Sbarro Companies prior to the Effective Date.

131.    "*Representatives*" means, with regard to an Entity, current and former officers, directors, members (including *ex officio* members), managers, employees, partners, advisors, attorneys, professionals, accountants, investment bankers, investment advisors, actuaries, Affiliates, financial advisors, consultants, agents, and other representatives of each of the foregoing Entities (whether current or former, in each case in his, her or its capacity as such).

132.    "*Reserved Employee Equity*" means 10% of the New Common Stock to be issued under the Plan (on a fully-diluted basis), which stock shall be (i) authorized and reserved on account of the Management Equity Plan and other future employee equity compensation or incentive programs as determined by the New Board, provided that no option granted pursuant to any such programs shall have an exercise price below the fair market

10

value of the New Common Stock at the time of the grant and (ii) subject to the applicable provisions of the Shareholders' Agreement.[4]

133.    "*Retained Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

134.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial conformance with the official bankruptcy forms, as the same may have been amended, modified or supplemented from time to time.

135.    "*Section 510(b) Claims*" means any Claim against a Debtor that is subordinated pursuant to section 510(b) of the Bankruptcy Code, which shall include any Claim arising from the rescission of a purchase or sale of any Equity Interest, any claim for damages arising from the purchase or sale of any Equity Interest, or any claim for reimbursement, contribution or indemnification for such Claim.

136.    "*Secured Claim*" means a Claim that is secured by a security interest in or Lien against property in which the estates in the Chapter 11 Cases have an interest, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the estates' (in the Chapter 11 Cases) interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

137.    "*Securities*" means any instruments that qualify under section 2(a)(1) of the Securities Act, including the New Common Stock.

138.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, or any similar federal, state, or local law.

139.    "*Senior Notes*" means the unsecured 10.375% senior notes due 2015 issued pursuant to the Senior Notes Indenture.

140.    "*Senior Notes Claims*" means all claims arising out of the Senior Notes Indenture.

141.    "*Senior Notes Indenture*" means that certain Indenture dated as of January 31, 2007, among Sbarro, Inc., as issuer, certain Affiliates of Sbarro, Inc., as guarantors, and the Senior Notes Indenture Trustee, as amended, supplemented or otherwise modified from time to time through the Petition Date.

142.    "*Senior Notes Indenture Trustee*" means The Bank of New York, or its successor.

143.    "*Servicer*" means an indenture trustee, agent, servicer, or other authorized representative of Holders of Claims or Interests recognized by the Debtors.

144.    "*Shareholders Agreement*" means the stockholders agreement with respect to the New Common Stock to be effective on the Effective Date, which shall be included in the Plan Supplement and which shall be in form and substance reasonably satisfactory to the Prepetition First Lien Steering Committee.

145.    "*Unexpired Lease*" means a lease, as may have been amended, restated or otherwise modified and including any codicils, amendments, exhibits or annexes thereto, if any, to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

---

[4]    The parameters of the Management Equity Plan and Reserved Employee Equity are the subject of ongoing discussions among the Debtors and the Prepetition First Lien Steering Committee and are subject to change.

146.    "*Unimpaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

147.    "*United States Trustee*" means the United States Trustee for the Southern District of New York.

148.    "*Unsecured Ongoing Operations Claims*" means all general unsecured Claims directly related to and arising solely from the receipt of goods and services by the Debtors held by Persons with whom the Debtors are conducting, and will continue to conduct, business as of the Effective Date; provided, however, that Unsecured Ongoing Operations Claims shall not include Administrative Claims.

149.    "*Unsecured Ongoing Operations Claims Distribution*" means $500,000.

150.    "*Voting Deadline*" means 4:00 p.m., prevailing Eastern Time, on November 4, 2011.

151.    "*Voting Record Date*" means October 11, 2011.

## ARTICLE II.

### ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS, PRIORITY TAX CLAIMS, AND UNITED STATES TRUSTEE STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Facility Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

A.    *Administrative Claims*

1.    General Administrative Claims

Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, except to the extent that a Holder of an Allowed General Administrative Claim and the applicable Debtors agree to less favorable treatment to such Holder, each Holder of an Allowed General Administrative Claim will be paid the full unpaid amount of such Allowed Administrative Claim in Cash:  (a) on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter; (b) if a General Administrative Claim is Allowed after the Effective Date, on the date such General Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due; (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as the case may be; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided that Allowed General Administrative Claims that arise in the ordinary course of the Debtors' business shall be paid in full in Cash in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions; provided further that Allowed General Administrative Claims do not include Claims filed after the applicable deadline set forth in the Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court).

2.    Professional Claims

(a)    Final Fee Applications

All final requests for Professional Fee Claims shall be filed no later than 45 days after the Confirmation Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

   (b)  Payment of Interim Amounts

  Except as otherwise provided in the Plan, Retained Professionals shall be paid pursuant to the Interim Compensation Order.

   (c)  Professional Fee Escrow Account

  On the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Retained Professionals.  The Professional Fee Escrow Account shall be maintained in trust for the Retained Professionals, including with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order.  Such funds in the Professional Fee Escrow Account shall not constitute property of the Reorganized Debtors.  The remaining amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Reorganized Debtors from the Professional Fee Escrow Account, without interest or other earnings therefrom, when such Claims are Allowed by a Bankruptcy Court order.  When all Allowed Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be paid to the Reorganized Debtors.

   (d)  Professional Fee Reserve Amount

  To receive payment for unbilled fees and expenses incurred through the Confirmation Date, the Retained Professionals shall estimate their Accrued Professional Compensation prior to and as of the Confirmation Date and shall deliver such estimate to the Debtors on or before the Confirmation Date.  If a Retained Professional does not provide such estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Retained Professional; provided that either such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Retained Professional.  The total amount so estimated as of the Confirmation Date shall comprise the Professional Fee Reserve Amount.

   (e)  Post-Confirmation Date Fees and Expenses

  Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, each Reorganized Debtor shall pay in Cash the reasonable legal fees and expenses incurred by that Reorganized Debtor or the Creditors' Committee after the Confirmation Date in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court.  The Reorganized Debtors shall pay, within ten Business Days after submission of a detailed invoice to the Reorganized Debtors, such reasonable claims for compensation or reimbursement of expenses incurred by the Retained Professionals of the Debtors and the Creditors' Committee.  If the Reorganized Debtors or Creditors' Committee dispute the reasonableness of any such invoice, the Reorganized Debtors, Creditors' Committee or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.  The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.  Upon the Confirmation Date, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Reorganized Debtor may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, except to the limited extent set forth in Article XII.Q below, the Debtors shall have no obligation to pay any compensation or expense reimbursement for the Creditors' Committee or its Retained Professionals after the Effective Date and nothing herein should be construed to suggest otherwise.

   (f)  Substantial Contribution Compensation and Expenses

  Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must file an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, the United States Trustee, the Creditors' Committee (if on or before the Effective Date) and as otherwise  required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules on or before the Administrative Claims Bar Date.

3.    Administrative Claims Bar Date

All requests for payment of an Administrative Claim (other than DIP Facility Claims, Prepetition First Lien Lender Claims or Professional Fee Claims) that accrued on or before the Effective Date that were not otherwise accrued in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtors no later than 45 days after the Effective Date.  A notice setting forth the Administrative Claims Bar Date will be filed on the Bankruptcy Court's docket and posted on the Debtors' restructuring website.  Further notice of the Administrative Claims Bar Date will be included in the notice of the Confirmation Date and be provided as may be directed by the Bankruptcy Court.  No request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order.

The Reorganized Debtors, in their sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval.  The Debtors may also choose to object to any Administrative Claim no later than 75 days from the Administrative Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.

Unless the Debtors or the Reorganized Debtors (or other party with standing) object to a timely-filed and properly served Administrative Claim, such Administrative Claim will be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be allowed and, if so, in what amount.

**Any requests for payment of Administrative Claims that are not properly filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register maintained by the Notice and Claims Agent and shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors or any action by the Bankruptcy Court.**

B.    *DIP Facility Claims*

Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release and discharge of and in exchange for release of all DIP Facility Claims (other than Claims under the DIP Facility that expressly survive the termination thereof), on the Effective Date, the DIP Facility Claims shall be Allowed in the aggregate principal amount of $35 million and shall (a) convert on a dollar for dollar basis into term loans under the First-Out Rollover Term Facility pursuant to the Exit Credit Documents or (b) receive such other treatment as agreed by the Debtors and the applicable DIP Lender.[5]

C.    *Priority Tax Claims*

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim:  (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the applicable Debtor or Reorganized Debtor, as applicable, and such Holder; *provided, however,* that such parties may further agree to the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtors, Cash in an aggregate amount of such Allowed Priority Claim plus, to the extent provided for by section 511 of the Bankruptcy Code, interest at the rate determined under applicable non-bankruptcy law, payable in installment payments over a period not more than five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and such Holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

---

[5]    Approximately $27.3 million in DIP Facility Claims will convert on a dollar-for-dollar basis into the First-Out Rollover Term Loan Facility.

D.      *United States Trustee Statutory Fees*

The Debtors shall pay all United States Trustee quarterly fees under 28 U.S.C § 1930(a)(6), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' business, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims*

This Plan constitutes a separate chapter 11 plan of reorganization for each Debtor.  Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims against and Interests in a particular Debtor are placed in Classes for each of the Debtors.[6]  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, DIP Facility Claims, and Priority Tax Claims, as described in Article II.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including, without limitation, voting, Confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

### Summary of Classification and Treatment of Claims and Interests

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition First Lien Lender Claims | Impaired | Entitled to Vote |
| 4 | Prepetition Second Lien Lender Claims | Impaired | Deemed to Reject |
| 5 | Unsecured Ongoing Operations Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Deemed to Reject |
| 7 | Equity Interests in Sbarro Holdings, LLC | Impaired | Deemed to Reject |
| 8 | Intercompany Interests | Unimpaired | Deemed to Accept |

B.      *Treatment of Claims and Interests Against the Debtors*

1.      <u>*Class 1 — Other Priority Claims*</u>

(a)     *Classification*: Class 1 consists of all Other Priority Claims against the Debtors.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim against the  Debtors agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Other Priority Claim against the Debtors, each Holder of such Allowed Other Priority Claim shall be paid in full in Cash on or as reasonably practicable after (i) the Effective Date, (ii) the date on which such Other Priority Claim against the Debtors becomes an Allowed Other Priority Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

---

[6]     Distributions under the Plan are <u>not</u> on a Debtor by Debtor basis.

(c)      *Voting*:  Class 1 is Unimpaired and Holders of Class 1 Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.      <u>*Class 2 — Other Secured Claims*</u>

(a)      *Classification*: Class 2 consists of all Other Secured Claims against the Debtors.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Other Secured Claim, each Holder of an Allowed Other Secured Claim, at the sole discretion of the applicable Debtor, shall (i) be paid in full in Cash including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code, (ii) receive the collateral securing its Allowed Other Secured Claim, or (iii) receive such other treatment rendering such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of default.

(c)      *Voting*:  Class 2 is Unimpaired and Holders of Class 2 Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.      <u>*Class 3 — Prepetition First Lien Lender Claims*</u>

(a)      *Classification*:  Class 3 consists of Prepetition First Lien Lender Claims against the Debtors.

(b)      *Allowance*:  On the Effective Date, Prepetition First Lien Lender Claims shall be deemed Allowed in the aggregate principal amount of $173,100,000.[7]

(c)      *Treatment*:  In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Prepetition First Lien Credit Agreement Claim, each Holder of an Allowed Prepetition First Lien Lender Claim shall receive its Pro Rata share of each of (i) the Last-Out Exit Term Facility and (ii) 100% of the New Common Stock issued and outstanding as of the Effective Date, subject to dilution on account of Reserved Employee Equity and/or shares issued in connection with the Management Equity Plan (together, the  "***Class 3 Distribution***").

The obligations (if any) of each Participating Prepetition First Lien Lender to fund Existing Letters of Credit shall be cash collateralized with proceeds of the First-Out New Money Term Facility.

(d)      *Voting*:  Class 3 is Impaired and Holders of Class 3 Prepetition First Lien Lender Claims are entitled to vote to accept or reject the Plan.

---

[7]   This amount excludes approximately $2.0 million in contingent claims on account of undrawn Existing Letters of Credit, <u>provided</u>, <u>however</u>, that, upon the Effective Date, the L/C Claims shall be deemed undisputed.  Thereafter such L/C Claims shall be Allowed, without any further action, to the extent that Existing Letters of Credit are subsequently drawn, and such Allowed L/C Claims, if any, shall be satisfied from the L/C Claims Reserve.

4.      _Class 4 — Prepetition Second Lien Lender Claims_

(a)     _Classification_:  Class 4 consists of all Prepetition Second Lien Lender Claims against the Debtors.

(b)     _Treatment_:  Holders of Prepetition Second Lien Lender Claims shall not receive any distribution on account of such Prepetition Second Lien Lender Claims.  On the Effective Date, all Prepetition Second Lien Lender Claims shall be discharged.

(c)     _Voting_:  Class 4 is Impaired and Holders of Class 4 Prepetition Second Lien Lender Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 4 Prepetition Second Lien Lender Claims are not entitled to vote to accept or reject the Plan.

5.      _Class 5 — Unsecured Ongoing Operations Claims_

(a)     _Classification_: Class 5 consists of all Unsecured Ongoing Operations Claims against the Debtors.

(b)     _Treatment_:  Except to the extent that a Holder of an Allowed Unsecured Ongoing Operations Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of such Unsecured Ongoing Operations Claim, each Holder of an Allowed Unsecured Ongoing Operations Claim shall receive its Pro Rata share of the Unsecured Ongoing Operations Distribution.

(c)     _Voting_: Class 5 is Impaired and Holders of Class 5 Unsecured Ongoing Operations Claims are entitled to vote to accept or reject the Plan.

6.      _Class 6 — General Unsecured Claims_

(a)     _Classification_: Class 6 consists of all General Unsecured Claims against the Debtors.

(b)     _Treatment_:  Holders of General Unsecured Claims shall not receive any distribution on account of such General Unsecured Claims.   On the Effective Date, all General Unsecured Claims shall be discharged.

(c)     _Voting_: Class 6 is Impaired and Holders of Class 6 General Unsecured Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

7.      _Class 7 — Equity Interests in Sbarro Holdings, LLC_

(a)     _Classification_: Class 7 consists of all Equity Interests in Sbarro Holdings, LLC.

(b)     _Treatment_:  Holders of Equity Interests in Sbarro Holdings, LLC shall not receive any distribution on account of such Equity Interests in Sbarro Holdings, LLC.  On the Effective Date, all Sbarro Holdings, LLC Equity Interests shall be discharged, cancelled, released, and extinguished.

(c)     _Voting_: Class 7 is Impaired and Holders of Class 7 Equity Interests in Sbarro Holdings, LLC are conclusively deemed to have rejected the Plan pursuant to 1126(g) of the Bankruptcy Code.  Therefore, Holders of Equity Interests in Sbarro Holdings, LLC are not entitled to vote to accept or reject the Plan.

8.      _Class 8 — Intercompany Interests_

(a)     _Classification_: Class 8 consists of all Intercompany Interests.

(b)  *Treatment*:  Holders of Intercompany Interests shall be reinstated and the legal, equitable and contractual rights to which holders of Intercompany Interests are entitled shall remain unaltered to the extent necessary to implement the Plan.

(c)  *Voting*:  Class 8 is Unimpaired and Holders of Class 8 Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

C.  *Intercompany Claims*

On or prior to the Effective Date, consistent with the Description of the Transaction Steps and to effectuate the Merger Transaction and notwithstanding anything herein to the contrary, at the option of the Debtors in consultation with the Prepetition First Lien Steering Committee:  (a) Intercompany Claims between Debtors will be: (i) cancelled and discharged, in full and the Holders thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such claims under the Plan; (ii) eliminated or waived based on accounting entries in the Debtors' or the Reorganized Debtors' books and records and other corporate activities by the Debtors or the Reorganized Debtors; or (iii) contributed to the capital of the obligation entity; and (b) all other Intercompany Claims will be:  (i) preserved and reinstated, in full or in part; (ii) cancelled and discharged, in full or in part, in which case such discharged and satisfied portion shall be eliminated and the Holders thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such portion under the Plan; (iii) eliminated or waived based on accounting entries in the Debtors' or the Reorganized Debtors' books and records and other corporate activities by the Debtors or the Reorganized Debtors; or (iv) contributed to the capital of the obligation entity.

D.  *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claim, including, but not limited to, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

E.  *Acceptance or Rejection of the Plan*

1.  Presumed Acceptance of Plan

Holders of Claims in Classes 1, 2, and 8 are Unimpaired under the Plan and are, therefore, presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Classes are not entitled to vote on the Plan and the vote of such Holders of Claims and Interests shall not be solicited.

2.  Voting Classes

Each Holder of an Allowed Claim in Classes 3 and 5 shall be entitled to vote to accept or reject the Plan.

3.  Deemed Rejection of the Plan

Holders of Claims in Classes 4, 6, and 7 and Holders of Equity Interests in Class 8 are Impaired and shall receive no distributions under the Plan on account of their Claims or Equity Interests and are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Claims in Classes 4, 6, and 7 and Holders of Equity Interests in Class 8 are not entitled to vote on the Plan and the votes of such Holders shall not be solicited.

4.        Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class thereof, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

F.        *Nonconsensual Confirmation*

Except as otherwise specifically provided in the Plan, if an Impaired Class shall not accept the Plan by the requisite statutory majority provided in sections 1126(c) or (d) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both.

G.        *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal or equitable subordination rights relating thereto.

H.        *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**ARTICLE IV.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.        *General Settlement of Claims*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlements of all Claims and Equity Interests and controversies resolved pursuant to the Plan.  Distributions made to Holders of Allowed Claims in any Class are intended to be final.

B.        *Restructuring Transactions*

On or prior to the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction (including the Merger Transaction, described in Article IV.C below) described in, approved by, contemplated by or necessary to effectuate the Plan, including:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that the Reorganized Debtors determine are necessary or appropriate.

C.        *Merger Transaction*

The restructuring shall be structured as an acquisition of all of the Debtors' assets by one or more Purchasers by way of merger as set forth in the Description of Transaction Steps included in the Plan Supplement,

19

which shall be a taxable transaction for United States federal income tax purposes and shall be deemed consummated on the Effective Date.

D.    *Corporate Existence*

Except as otherwise provided in the Plan or the Description of Transaction Steps, each Debtor (and each of the New Sbarro Companies) shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which such entity is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval.

E.    *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Causes of Action, other than Causes of Action arising under section 547 of the Bankruptcy Code, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

F.    *Indemnification Provisions in Organizational Documents*

As of the Effective Date, each Reorganized Debtor's certificate of incorporation and/or bylaws (or other formation documents) shall provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, directors, officers, employees, or agents who were employed as directors, officers, employees, or agents of such Debtor, on or after the Petition Date at least to the same extent as the bylaws (or other formation documents) of each of the respective Debtors on the Petition Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Reorganized Debtors shall amend and/or restate its certificate of incorporation or bylaws (or other formation documents) before or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations or such directors', officers', employees', or agents' rights. Notwithstanding anything contained in this Plan, the Reorganized Debtors may in their sole discretion (but have no obligation to) honor each Indemnification Obligation to a director, officer or employee that was no longer employed by the Debtors in such capacity on or after the Petition Date, provided that, for each such director, officer or employee, the Debtors shall be permitted to honor Indemnification Obligations only to the extent of available coverage under the applicable D&O Liability Insurance Policy.

G.    *Cancellation of Agreements, Senior Notes and Equity Interests*

On the later of the Effective Date and the date on which distributions are made pursuant to the Plan, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors under the Prepetition First Lien Loan Documents, the Prepetition Second Lien Loan Documents, the Prepetition Intercreditor Agreement, the Senior Notes Indenture, and any other certificate, equity security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors and their Affiliates, and the Reorganized Debtors shall not have any continuing obligations thereunder; (2) all parties' obligations under the Prepetition Intercreditor Agreement; and (3) the obligations of the Debtors and their Affiliates pursuant, relating or pertaining to any agreements, indentures, certificates of designation, by-laws or certificate or articles of

incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; except that:

1. the DIP Facility shall continue in effect solely for the purpose of: (a) allowing Holders of the DIP Facility Claims to receive the distributions provided for hereunder; (b) allowing the DIP Agent to receive distributions from the Debtors and to make further distributions to the Holders of the DIP Facility Claims on account of such Claims, as set forth in Article VI of the Plan; and (c) preserving the DIP Agent's right to indemnification from the Debtors pursuant and subject to the terms of the DIP Facility in respect of any claim or cause of action asserted against the DIP Agent;

2. the Prepetition First Lien Loan Documents shall continue in effect solely for the purpose of: (a) allowing Holders of the Prepetition First Lien Lender Claims to receive the distributions provided for hereunder; (b) allowing the Prepetition First Lien Agent to receive distributions from the Debtors and to make further distributions to the Holders of the Prepetition First Lien Lender Claims on account of such Claims, as set forth in Article VI of the Plan; (c) preserving (i) any rights of the Prepetition First Lien Agent or the Prepetition First Lien L/C Issuer to indemnification or contribution from the Prepetition First Lien Lenders pursuant and subject to the terms of the Prepetition First Lien Loan Documents and (ii) the rights and obligations of all parties under Section 2.05 (but, in the case of the Reorganized Debtors, only under Section 2.05(e)(ii) (such obligations of the Reorganized Debtors, the "*L/C Reimbursement Obligations*")) of the Prepetition First Lien Credit Agreement provided, however, that (x) the Reorganized Debtors shall cash collateralize, for the benefit of the Prepetition L/C Issuer, the obligations (if any) of each Participating Prepetition First Lien Lender to fund Unreimbursed Amounts (as defined in the Prepetition First Lien Credit Agreement) in respect of the Existing Letters of Credit pursuant to Section 2.05(e)(vi) of the Prepetition First Lien Credit Agreement and (y) upon such cash collateralization, the obligations of each Participating Prepetition First Lien Lender to fund such Unreimbursed Amounts shall be discharged; and (d) preserving any rights of the Prepetition First Lien Agent or the Prepetition L/C Issuer to indemnification, contribution or otherwise from the Debtors pursuant and subject to the terms of the Prepetition First Lien Loan Documents in respect of any claim or cause of action asserted against the Prepetition First Lien Agent; and

3. the foregoing shall not effect the cancellation of shares issued pursuant to the Plan nor any other shares held by one Debtor in the capital of another Debtor; and provided, further, however, that at the election of the Prepetition First Lien Steering Committee, the Prepetition First Lien Credit Facility may remain in effect and be amended and restated consistent with the Last-Out Exit Term Facility.

Notwithstanding the foregoing, no recovery shall be had on or after the Effective Date against the Reorganized Debtors in respect of the L/C Reimbursement Obligations, it being understood that the L/C Reimbursement Obligations constitute L/C Claims and shall be provided for as set forth in Article VI.A.2 below.

H.      *Sources of Cash for Plan Distributions and Transfers of Funds Among Debtors*

All Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan will be funded with Cash on hand, including cash from operations and the proceeds of the First-Out Exit Term Facilities. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors. The Debtors and the Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

From and after the Effective Date, the Reorganized Debtors, subject to any applicable limitations set forth in any post-Effective Date financing, shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the boards of directors (or equivalent body) of the applicable Reorganized Debtors deem appropriate.

I.    *Exit Financing and Approval of Exit Credit Documents*

On the Effective Date, the Reorganized Debtors will have total funded debt of no more than $130 million comprised of the Last-Out Exit Term Facility, the First-Out Rollover Term Facility, and amounts funded under the First-Out New Money Term Facility.  The First-Out New Money Term Facility will provide the Reorganized Debtors with sufficient committed liquidity to ensure that, immediately after consummation of the Plan, the amount of unused commitments under the First-Out New Money Term Facility shall not be less than $15 million.[8]  The Reorganized Debtors may use the Exit Financing for any purpose permitted by the governing documents, including the funding of obligations under the Plan, satisfaction of ongoing working capital needs, and to cash collateralize existing or replacement letters of credit.

Confirmation of the Plan shall be deemed approval of the Exit Financing (including the Last-Out Exit Term Facility and the First-Out Exit Term Facilities and all transactions contemplated thereby, such as any supplementation or additional syndication of the Exit Financing, and all actions to be taken, undertakings to be made and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities and expenses provided for therein) and authorization for the Reorganized Debtors to enter into and execute the Exit Credit Documents and such other documents as may be required or appropriate.

The Exit Credit Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the Exit Credit Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Credit Documents (1) shall be deemed to be approved, (2) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Credit Documents, (3) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Credit Documents, and (4) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the persons and entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.  To the extent that any Holder of a Claim secured by a Lien (regardless of whether such Lien was properly perfected or whether there is any economic value to such Lien or whether such Claim is a Secured Claim) that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors or any administrative agent under the Exit Credit Documents, and the Debtors, the Reorganized Debtors and any administrative agent under the Exit Credit Documents are authorized to file or record any necessary documents or take any other necessary steps, that

---

[8]    Such minimum amount shall be decreased to the extent of the amount of cash collateral posted in respect of the Existing Letters of Credit in excess of $1.3 million.

are necessary to cancel and/or extinguish such publicly-filed Liens and/or security interests, in each case all costs and expenses in connection therewith to be paid by the Debtors or the Reorganized Debtors.

Notwithstanding anything to the contrary in the Confirmation Order or the Plan, the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of the loan documentation executed in connection with the Exit Credit Documents or any rights or remedies related thereto.

J.    *Reorganized Debtors' Equity Interests*

1.    <u>New Common Stock</u>

On or prior to the Effective Date, the Reorganized Debtors shall issue or reserve for issuance all of the New Common Stock.  The New Common Stock shall represent all of the Equity Interests in New Sbarro Parent (a successor to the Debtors for purposes of the Bankruptcy Code) as of the Effective Date and shall be issued and transferred to Holders of Prepetition First Lien Lender Claims, as described in the Description of Transaction Steps, subject to dilution on account of Reserved Employee Equity and/or shares issued in connection with the Management Equity Plan.  From and after the Effective Date, subject to the right of the stockholders to amend the certificate of incorporation of New Sbarro Parent, New Sbarro Parent shall have one class and one series of New Common Stock.  The issuance of the New Common Stock by New Sbarro Parent, including options or other equity awards reserved as Reserved Employee Equity and/or issued in connection with the Management Equity Plan, is authorized without the need for further corporate action and all of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable.  For purposes of distribution, the New Common Stock will be deemed to have the Plan Equity Value, regardless of the date of distribution.  Distributions of New Common Stock to the Prepetition First Lien Lenders will only be made through broker accounts via electronic issuance and transfer of the Shares and New Sbarro Parent will not issue separate stock certificates.

2.    <u>Shareholders Agreement</u>

On the Effective Date, New Sbarro Parent and the holders of the New Common Stock shall enter into the Shareholders Agreement in substantially the form included in the Plan Supplement.  The Shareholders Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Common Stock shall be bound thereby, in each case without the need for execution by any party thereto other than New Sbarro Parent.

K.    *Section 1145 Exemption*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any securities pursuant to the Plan and any and all settlement agreements incorporated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act to the maximum extent permitted thereunder and any other applicable law requiring registration by virtue of section 1145 of the Bankruptcy Code, prior to the offering, issuance, distribution or sale of securities.  In addition, except as otherwise provided in the Plan, to the maximum extent provided under section 1145 of the Bankruptcy Code, any and all New Common Stock issued by New Sbarro Parent (as a successor to Sbarro Holdings, LLC for purposes of the Bankruptcy Code) as contemplated by the Plan and any and all settlement agreements incorporated therein will be freely tradable by the recipients thereof, subject to: (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (2) the restrictions, if any, on the transferability of such Securities and instruments; and (3) applicable regulatory approval.

L.    *Organizational Documents*

Subject to Article IV.D of the Plan, the Reorganized Debtors shall enter into such agreements and amend their corporate governance documents to the extent necessary to implement the terms and conditions of the Plan. Without limiting the generality of the foregoing, as of the Effective Date, each of the New Sbarro Companies shall be governed by its certificate of incorporation and bylaws (or other formation documents).  From and after the

Effective Date, the organizational documents of each of the Reorganized Debtors will comply with section 1123(a)(6) of the Bankruptcy Code to the extent required by section 1123(a)(6) of the Bankruptcy Code.

M.      *Effectuating Documents; Further Transactions*

The Debtors or the Reorganized Debtors, as applicable, may take all actions to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan and the Merger Transaction, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant hereto.  The secretary and any assistant secretary of each Debtor shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan and the Merger Transaction that would otherwise require approval of the shareholders, directors, managers, partners, or members of the Debtors and/or the New Sbarro Companies shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, directors, managers, partners, or members of the Debtors, or the need for any approvals, authorizations, actions, or consents.

N.      *Exemption from Certain Transfer Taxes and Recording Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

O.      *Directors and Officers of New Sbarro Parent and the Other Reorganized Debtors*

1.      <u>The New Board</u>

The New Board shall be selected in accordance with the selection process described in Section 2.01(a) of the Shareholders Agreement.  Each member of the New Board identified prior to the Effective Date, shall be selected in consultation with the Debtors and subject to background checks reasonably satisfactory to the Debtors.  As of the Effective Date, the initial boards of directors of New Sbarro Finance, New Sbarro HoldCo, New Sbarro Corp., and New Sbarro LLC shall be selected by the Prepetition First Lien Steering Committee in consultation with the Debtors and subject to background checks reasonably satisfactory to the Debtors.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the identities of the members of the New Board and the initial boards of directors of New Sbarro Finance, New Sbarro HoldCo, New Sbarro Corp., and New Sbarro LLC, to the extent known prior to the Confirmation Hearing, will be disclosed as soon as practicable.  The existing directors of each of the subsidiary Debtors shall remain in their current capacities as directors of the applicable Reorganized Debtor until replaced or removed in accordance with the organizational documents of the applicable Reorganized Debtors.

2.      <u>Senior Management</u>

Prior to the Confirmation Hearing, the Debtors will have engaged a search firm acceptable to the Prepetition First Lien Steering Committee to conduct a process for selection of the Reorganized Debtors' chief

executive officer.  The Debtors' interim chief executive officer as of the Petition Date shall be considered as a candidate without deference to his incumbency.

The existing officers of the Debtors as of the Petition Date (including the Debtors' interim chief executive officer unless and until a replacement chief executive officer is selected) shall remain in their current capacities as officers of the Reorganized Debtors, subject to the ordinary rights and powers of the board of directors to remove or replace them in accordance with the Debtors' organizational documents and any applicable employment agreements.

P.      *Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to the releases set forth in Article IX below, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, other than Causes of Action arising under section 547 of the Bankruptcy Code, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  **No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action, other than Causes of Action arising under section 547 of the Bankruptcy Code, against any Person, except as otherwise expressly provided in the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, other than Causes of Action arising under section 547 of the Bankruptcy Code, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date.

Subject to the releases set forth in Article IX below, the Reorganized Debtors reserve and shall retain the Causes of Action, other than Causes of Action arising under section 547 of the Bankruptcy Code, notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action, other than Causes of Action arising under section 547 of the Bankruptcy Code, that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor, as the case may be.  The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.

Notwithstanding any other provision of this Plan or any order entered in these Chapter 11 Cases, the Debtors and Reorganized Debtors forever waive, relinquish, and release any and all Causes of Action the Debtors, Reorganized Debtors and their estates had, have or may have that arise under section 547 of the Bankruptcy Code.

Q.      *Dismissal of Adversary Proceeding*

Effective as of the Effective Date, the Adversary Proceeding will be deemed dismissed with prejudice without further action by any party.  In addition, (a) the Prepetition Second Lien Lenders shall take all steps necessary to effectuate the dismissal of the Adversary Proceeding with prejudice and (b) the Creditors' Committee shall take all steps necessary to effectuate the withdrawal of its counterclaims in the Adversary Proceeding with prejudice.

# ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES; EMPLOYEE BENEFITS; AND INSURANCE POLICIES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each of the Debtors' Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court will be deemed assumed as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code *except* any Executory Contract or Unexpired Lease (a) identified on the Rejected Executory Contract/Unexpired Lease List (which shall be filed with the Bankruptcy Court on the Contract/Lease Schedule Date) as an Executory Contract or Unexpired Lease designated for rejection, or (b) which is the subject of a separate motion or notice to reject filed by the Debtors and pending as of the Confirmation Hearing.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of such Executory Contracts and Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, and not assigned to a third party on or prior to the Effective Date, shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. Notwithstanding anything to the contrary in the Plan, the Debtors or Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Executory Contracts and Unexpired Leases identified on the Assumed Executory Contract/Unexpired Lease List and the Rejected Executory Contract/Unexpired Lease List in their discretion prior to the Effective Date on no less than seven days' notice to the non-debtor Entity party thereto.

B.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. To the extent not previously filed with the Bankruptcy Court and served on affected counterparties, the Debtors shall provide for notices of proposed assumption and proposed cure amounts to be sent to applicable contract and lease counterparties, together with procedures for objecting thereto and resolution of disputes by the Bankruptcy Court, so as to be received no later than five business days before the Voting Deadline. Any objection by a contract or lease counterparty to a proposed assumption or related cure amount must be filed, served, and actually received by the Debtors prior to the Plan Objection Deadline (or such other date as may be provided in the applicable assumption notice). Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged without further notice to or action, order or approval of the Bankruptcy Court.

C.      *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection or repudiation of the Debtors' Executory Contracts pursuant to the Plan or otherwise must be filed with the Notice and Claims Agent within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  Any Proofs of Claim arising from the rejection or repudiation of the Debtors' Executory Contracts that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Reorganized Debtor without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection or repudiation of the Executory Contract shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts shall be treated as General Unsecured Claims.

D.      *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

E.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

F.      *Assumption of Directors and Officers Insurance Policies*

The Debtors do not believe that the D&O Liability Insurance Policies issued to, or entered into by, the Debtors prior to the Petition Date constitute executory contracts.  To the extent that such insurance policies or agreements are considered to be executory contracts, then, notwithstanding anything in the Plan to the contrary, the Reorganized Debtors shall be deemed to have assumed all of the Debtors' unexpired D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.

In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

G.      *Indemnification and Reimbursement Obligations*

On and from the Effective Date, and except as prohibited by applicable law or subject to the limitations set forth herein, the Reorganized Debtors shall assume all indemnification obligations currently in place, whether in the bylaws, certificates of incorporation (or other formation documents), board resolutions, employment contracts or other agreements for the directors, officers, managers, employees, attorneys, other professionals and agents

employed by the Debtors in such capacity on or after the Petition Date to the extent set forth herein. Without limiting the foregoing and except as prohibited by applicable law, the Debtors shall indemnify and hold harmless each of the Indemnified Parties for all costs, expenses, loss, damage or liability incurred by any such Indemnified Party arising from or related in any way to any and all Causes of Action whether known or unknown, whether for tort, contract, violations of federal or state securities laws or otherwise, including any claims or causes of action, whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, based in whole or in part upon any act or omission, transaction or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including those arising from or related in any way to: (1) any action or omission of any such Indemnified Party with respect to any indebtedness of or any Equity Interest in the Debtors (including any action or omission of any such Indemnified Party with respect to the acquisition, holding, voting or disposition of any such investment); (2) any action or omission of any such Indemnified Party in such Indemnified Party's capacity as an officer, director, member, employee, partner or agent of, or advisor to any Debtor; (3) any disclosure made or not made by any Indemnified Party to any current or former Holder of any such indebtedness of or any such Equity Interest in the Debtors; (4) any consideration paid to any such Indemnified Party by any of the Debtors in respect of any services provided by any such Indemnified Party to any Debtor; and (5) any action taken or not taken in connection with the Chapter 11 Cases or the Plan. In the event that any such Indemnified Party becomes involved in any action, proceeding or investigation brought by or against any Indemnified Party, as a result of matters to which the foregoing "Indemnification" may relate, the Reorganized Debtors shall promptly reimburse any such Indemnified Party for its reasonable and documented legal and other expenses (including advancing the costs of any investigation and preparation prior to final adjudication) incurred in connection therewith as such expenses are incurred and after a request for indemnification is made in writing, with reasonable documentation in support thereof. Notwithstanding anything contained in this Plan, the Reorganized Debtors may in their sole discretion (but have no obligation to) honor each Indemnification Obligation to a director, officer or employee that was no longer employed by the Debtors in such capacity on or after the Petition Date, provided that, for each such director, officer or employee, the Debtors shall be permitted to honor Indemnification Obligations only to the extent of available coverage under the applicable D&O Liability Insurance Policy.

H.     *Employee Compensation and Benefits*

    1.     <u>Compensation and Benefit Programs</u>

    Subject to the provisions of the Plan, all Compensation and Benefits Programs shall be treated as Executory Contracts under the Plan and deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for:

    (a)     all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Program that provide for rights to acquire Equity Interests in Sbarro, Inc.;

    (b)     Compensation and Benefits Programs listed in the Plan Supplement as executory contracts to be rejected;

    (c)     Compensation and Benefits Programs that have previously been rejected; and

    (d)     Compensation and Benefits Programs that, as of the entry of the Confirmation Order, are the subject of pending rejection procedures or a motion to reject, or have been specifically waived by the beneficiaries of any employee benefit plan or contract.

    Any assumption of Compensation and Benefits Programs pursuant to the terms herein shall not be deemed to trigger any applicable change of control, immediate vesting, termination, or similar provisions therein (unless a Compensation and Benefits Program counterparty timely objects to the assumption contemplated by the Plan in which case any such Compensation and Benefits Program shall be deemed rejected as of immediately prior to the Petition Date). No counterparty shall have rights under a Compensation and Benefits Program assumed pursuant to the Plan other than those applicable immediately prior to such assumption.

2.      Workers' Compensation Programs

As of the Effective Date, except as set forth in the Plan Supplement, the Debtors and the Reorganized Debtors shall continue to honor their obligations under: (1) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (2) the Debtors' written contracts, agreements, agreements of indemnity, self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance. All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; provided that nothing in the Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs, and plans; provided further that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state law.

3.      Management Compensation Plan

Subject only to the occurrence of the Effective Date, the Management Compensation Plan shall become effective without any further action by the Reorganized Debtors. The terms of the Management Compensation Plan are substantially similar to those contained in the KEIP approved by the Bankruptcy Court [Docket No. 512] but incorporate certain provisions and participants that were modified in the KEIP as a result of negotiations with the Creditors' Committee. For the avoidance of doubt, the Management Compensation Plan is an entirely post-Effective Date plan and nothing in the Plan is intended to modify the KEIP as approved by the Bankruptcy Court. In the event the Plan is confirmed, the Management Compensation Plan will replace the KEIP immediately post-Effective Date; provided that all payments made under the Management Compensation Plan shall be generally consistent with, and not duplicative of, payments made under the KEIP. The Debtors will file the terms of the Management Compensation Plan, reflecting differences from the KEIP, in the Plan Supplement.

4.      Management Equity Plan

As soon as reasonably practicable following the Effective Date, the New Board will adopt and implement the Management Equity Plan, pursuant to which retentive and performance-based equity awards (in the form to be determined by the New Board) of no less than 1/2 of the Reserved Employee Equity shall be allocated to certain key employees of the Reorganized Debtors and members of the New Board, a portion of which may be reserved by the New Board for allocation to the Reorganized Debtors' chief executive officer if the selection process for such chief executive officer has not then been completed.[9]

**ARTICLE VI.**

**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      *Distribution on Account of Claims and Interests Allowed as of the Effective Date*

1.      Payments on the Initial Distribution Date

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Interests Allowed on or before the Effective Date shall be made on the Initial Distribution Date; provided, however, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business or industry practice, (2) in accordance with Article II.C herein, Allowed Priority Tax Claims, unless otherwise agreed, shall receive (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus, to the extent provided for by section 511 of the Bankruptcy Code, interest at the rate determined under applicable nonbankruptcy law; (b) such other

---

[9]     The parameters of the Management Equity Plan and Reserved Employee Equity are the subject of ongoing discussions among the Debtors and the Prepetition First Lien Steering Committee and are subject to change.

treatment as may be agreed to by such Holder and the applicable Debtors or otherwise determined upon an order of the Bankruptcy Court; or (c) treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code, and (3) amounts to be paid on the Initial Distribution Date with respect to, or on account of, the Prepetition First Lien Lender Claims shall be subject to the L/C Claims Reserve as set forth below.

2.    L/C Claims Reserve

That portion of the Class 3 Distribution that is not distributed in connection with the Initial Distribution Date pursuant to Article III of this Plan shall be held in reserve (the "**L/C Claims Reserve**") together with all earnings thereon, if any (net of any expenses relating thereto, such expenses including any taxes imposed thereon or otherwise payable by the reserve), to be distributed on the Class 3 Final Distribution Date, as required by this Plan. The Distribution Agent shall hold in the L/C Claims Reserve all dividends, payments and other distributions made on account of, as well as any obligations arising from, the property held in the L/C Reserve, to the extent that such property continues to be so held at the time such distributions are made or such obligations arise. After all L/C Claims have become either Allowed Claims or Disallowed Claims, the Distribution Agent shall effect a final distribution to all holders of Allowed Prepetition First Lien Lender Claims (including without limitation Allowed L/C Claims).

B.    *Distributions on Account of Claims and Interests Allowed After the Effective Date*

1.    Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim or Interest; provided, however, that (a) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with Article II.C of this Plan, on the Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim.

2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate reserves for potential payment of such Claims.

C.    *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise herein, on the Initial Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on or as soon as reasonably practicable after the date that such a Claim becomes an Allowed Claim), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  Distributions on account of Unsecured Ongoing Operations Claims that become Allowed Claims before the Effective Date shall be paid on the Effective Date, or as soon as practicable thereafter.

If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the applicable class treatment or in Article VII herein.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

D.    *Delivery of Distributions*

    1.    <u>Record Date for Distributions</u>

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded security is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

    2.    <u>Delivery of Distributions in General</u>

Except as otherwise provided in the Plan, the Debtors or the Reorganized Debtors, as applicable shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtors or the Reorganized Debtors, as applicable; and *provided further,* that the address for each Holder of an Allowed Claim shall be the address set forth in any Proof of Claim filed by that Holder.

    3.    <u>Delivery of Distributions on Prepetition First Lien Lender Claims</u>

The Prepetition First Lien Agent shall be deemed to be the holder of all Prepetition First Lien Lender Claims for purposes of distributions to be made hereunder, and all distributions on account of such Prepetition First Lien Lender Claims shall be made to or on behalf of the Prepetition First Lien Agent. The Prepetition First Lien Agent shall hold or direct such distributions for the benefit of the holders of Allowed Prepetition First Lien Lender Claims, as applicable. As soon as practicable following compliance with the requirements set forth in this Article VI, the Prepetition First Lien Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of such holders of Allowed Prepetition First Lien Lender Claims. Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Prepetition First Lien Agent shall not have any liability to any person with respect to distributions made or directed to be made by the Prepetition First Lien Agent.

    4.    <u>Delivery of Distributions on DIP Facility Claims</u>

The DIP Agent shall be deemed to be the holder of all DIP Facility Claims for purposes of distributions to be made hereunder, and all distributions on account of such DIP Facility Claims shall be made to or on behalf of the DIP Agent. The DIP Agent shall hold or direct such distributions for the benefit of the holders of Allowed DIP Facility Claims, as applicable. As soon as practicable following compliance with the requirements set forth in this Article VI, the DIP Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of such holders of Allowed DIP Facility Claims. Notwithstanding anything in the Plan to the contrary and without limiting the exculpation and release provisions of the Plan, the DIP Agent shall not have any liability to any person with respect to distributions made or directed to be made by the DIP Agent.

    5.    <u>Distributions by Distribution Agents (if any)</u>

The Debtors and the Reorganized Debtors, as applicable, shall have the authority, in their sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder. To the extent the Debtors and the Reorganized Debtors, as applicable, do determine to utilize a Distribution Agent to facilitate the distributions under the Plan to Holders of Allowed Claims, any such Distribution Agent would first be required to: (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required under the Plan; (c) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required under the Plan to be distributed by such Distribution Agent; and (d) post a bond, obtain or surety or provide some other form of security for the performance of its duties, the costs and expenses of procuring which shall be borne by the Debtors or the Reorganized Debtors, as applicable.

The Debtors or the Reorganized Debtors, as applicable, shall pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions, or consents. The Distribution Agents shall submit detailed invoices to the Debtors or the Reorganized Debtors, as applicable, for all fees and expenses for which the Distribution Agent seeks reimbursement and the Debtors or the Reorganized Debtors, as applicable, shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtors or the Reorganized Debtors, as applicable, deem to be unreasonable. In the event that the Debtors or the Reorganized Debtors, as applicable, object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtors or the Reorganized Debtors, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses. In the event that the Debtors or the Reorganized Debtors, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

6.    Minimum Distributions

Notwithstanding anything herein to the contrary, the Reorganized Debtors shall not be required to make distributions or payments of less than $10 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar or fractional share of New Common Stock under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar or share of New Common Stock (up or down), with half dollars and half shares of New Common Stock or less being rounded down.

No Distribution Agent shall have any obligation to make a distribution on account of an Allowed Claim if: (a) the aggregate amount of all distributions authorized to be made from on the Periodic Distribution Date in question is or has an economic value less than $25,000, unless such distribution is a final distribution; or (b) the amount to be distributed to the specific Holder of an Allowed Claim on such Periodic Distribution Date does not constitute a final distribution to such Holder and is or has an economic value less than $10, which shall be treated as an undeliverable distribution under Article VI.D.7 below.

7.    Undeliverable Distributions

(a)    Holding of Certain Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtors (or their Distribution Agent) as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtors (or their Distribution Agent) are notified in writing of such Holder's then current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors, subject to Article VI.D.7(b) hereof, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

(b)    Failure to Claim Undeliverable Distributions

No later than 120 days after the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court a list of the Holders of undeliverable distributions. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtors for as long as the Chapter 11 Cases stay open. Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtors of such Holder's then current address in accordance herewith within 180 days of the Effective Date, shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property.

On the later of one year after the Effective Date or 180 days after the mailing or other delivery of such distribution checks, all such distributions shall revert to the Reorganized Debtors. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

(c)    Failure to Present Checks

Checks issued by the Reorganized Debtors (or their Distribution Agent) on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check.  In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, the Reorganized Debtors shall file with the Bankruptcy Court a list of the Holders of any un-negotiated checks no later than 160 days after the issuance of such checks.  This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtors for as long as the Chapter 11 Cases stay open.  Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.

Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 180 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property.  On the later of one year after the Effective Date or 180 days after the mailing or other delivery of such distribution checks, all such distributions shall revert to the Reorganized Debtors.  Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

E.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.  For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

F.    *Setoffs*

The Debtors and the Reorganized Debtors may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any Claims, Equity Interests, rights and Causes of Action, other than Causes of Action arising under section 547 of the Bankruptcy Code, of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim.  In the event that any such Claims, Equity Interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved Claims, Equity Interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claims, Equity Interests, rights and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically provided herein.  In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor or a Reorganized Debtor, as applicable, unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff in such Proof of Claim or amendment thereto.  **To the extent that any Holder of Claims has not preserved such setoff in a timely Filed Proof of Claim, such Holder shall be entitled to amend any such Proof of Claim within sixty (60) days after the Effective Date to preserve such setoff.**

G.    *Surrender of Canceled Instruments or Securities*

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer).  Such surrendered Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights.  Notwithstanding anything to the contrary herein, this paragraph shall not apply to Certificates evidencing Claims that are rendered Unimpaired under the Plan.

H.    *Claims Paid or Payable by Third Parties.*

1.    Claims Paid by Third Parties

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

If the Debtors become aware of the payment by a third party, the Debtors or Reorganized Debtors, as applicable, will send a notice of wrongful payment to such party requesting return of any excess payments and advising the recipient of the provisions of the Plan requiring turnover of excess estate funds.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.    Claims Payable by Insurance

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.

## PROCEDURES FOR RESOLVING DISPUTED,
## CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS

A.    *Allowance of Claims and Interests*

After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Equity Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim.  All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

B.    *Prosecution of Objections to Claims*

Except as otherwise specifically provided in the Plan, the Debtors, prior to the Effective Date, and the Reorganized Debtors, after the Effective Date, shall have the sole authority:  (1) to file, withdraw or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

C.    *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtors or Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.    *Adjustment to Claims and Interests Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Disallowance of Claims or Interests*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims and Interests may not receive any distributions on account of such Claims and Interests until such time as such Causes of Action against that Entity have been settled or an order of the Bankruptcy Court with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors.  All Claims filed on account of an Indemnification Obligation to a director, officer or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the

extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order or approval of the Bankruptcy Court.  All Claims filed on account of an employee benefit shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent the Reorganized Debtors elect to honor such employee benefit, without any further notice to or action, order or approval of the Bankruptcy Court.

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE BANKRUPTCY COURT OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER**.

F.      *Offer of Judgment*

The Reorganized Debtors are authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the Holder of a Claim or Interest must pay the costs incurred by the Reorganized Debtors after the making of such offer, the Reorganized Debtors are entitled to setoff such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

G.      *Amendments to Claims*

On or after the Effective Date, except as provided herein, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and, to the extent such prior authorization is not received, any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

## ARTICLE VIII.

### CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.      *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.      The Bankruptcy Court shall have approved the Disclosure Statement, in a manner acceptable to the Debtors and the Prepetition First Lien Steering Committee, as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.      The Plan and all Plan Supplement documents, including any amendments, modifications, or supplements thereto, shall be in form and substance reasonably acceptable to the Debtors and the Prepetition First Lien Steering Committee.

3.      The Confirmation Order shall have been entered and become a Final Order in form and in substance reasonably satisfactory to the Debtors and the Prepetition First Lien Steering Committee.

4.      All documents and agreements necessary to implement the Plan, including, without limitation, the Exit Credit Documents shall have (a) been tendered for delivery and (b) been effected or executed.  All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

5.      The Management Compensation Plan shall be in form and in substance reasonably satisfactory to the Debtors and the Prepetition First Lien Steering Committee.

6.      Immediately after giving effect to borrowings under the First-Out New Money Term Facility, (i) the amount of unused commitments under the First-Out New Money Term Facility shall not be less than $15 million[10] and (ii) the Reorganized Debtors shall have not less than $10 million of unrestricted cash and cash equivalents.

7.      All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

8.      The Professional Fee Escrow Account shall have been established and funded.

B.      *Waiver of Conditions*

The Debtors or the Reorganized Debtors, as applicable, with the consent of the Prepetition First Lien Steering Committee, may waive any of the conditions to the Effective Date set forth above at any time, without any notice to parties in interest and without any further notice to or action, order or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm the Plan.  The failure of the Debtors or Reorganized Debtors, as applicable, or the Prepetition First Lien Steering Committee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

C.      *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Debtors may determine, upon notice to the Bankruptcy Court, that the Plan is null and void in all respects, and nothing contained in the Plan, the Confirmation Order or the Disclosure Statement shall:  (1) constitute a waiver or release of any Cause of Action or Claim; (2) constitute an admission, acknowledgment, offer or undertaking in any respect by any party, including the Debtors; or (3) otherwise prejudice in any manner the rights of any party, including the Debtors.

## ARTICLE IX.

## RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests*

Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors, the Reorganized Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

---

[10]   Such minimum amount shall be decreased to the extent of the amount of cash collateral posted in respect of the Existing Letters of Credit in excess of $1.3 million.

B.      *Releases by the Debtors*

PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE SERVICE OF THE RELEASED PARTIES TO FACILITATE THE EXPEDITIOUS REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR EQUITY INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE DEBTORS' RESTRUCTURING, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE EXIT CREDIT DOCUMENTS OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR A CRIMINAL ACT TO THE EXTENT SUCH ACT OR OMISSION IS DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR A CRIMINAL ACT.

THE FOREGOING RELEASE SHALL NOT APPLY TO ANY EXPRESS CONTRACTUAL OR FINANCIAL OBLIGATIONS OR ANY RIGHT OR OBLIGATIONS ARISING UNDER OR THAT IS PART OF THE PLAN OR ANY AGREEMENTS ENTERED INTO PURSUANT TO, IN CONNECTION WITH OR CONTEMPLATED BY THE PLAN.

NOTHING IN THIS ARTICLE SHALL LIMIT THE LIABILITY OF THE DEBTORS' PROFESSIONALS OR THE CREDITORS' COMMITTEE TO THEIR RESPECTIVE CLIENTS PURSUANT TO DR 6-102 OF THE CODE OF PROFESSIONAL RESPONSIBILITY, N.Y. COMP. CODES R. & REGS. TIT. 22 SECTION 1120.8 RULE 1.8(H)(I) (2009), AND ANY OTHER STATUTES, RULES OR REGULATIONS DEALING WITH PROFESSIONAL CONDUCT TO WHICH SUCH PROFESSIONALS ARE SUBJECT.

C.      *Releases by Holders of Claims and Equity Interests*

AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EACH OF THE RELEASING PARTIES SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS AND THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, EQUITY INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF A DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN

ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE CHAPTER 11 CASES, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, THE EXIT CREDIT DOCUMENTS OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR A CRIMINAL ACT TO THE EXTENT SUCH ACT OR OMISSION IS DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR A CRIMINAL ACT.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

ADDITIONALLY, NOTHING IN THE DEBTORS' CHAPTER 11 CASES, THE CONFIRMATION ORDER, THE PLAN, THE BANKRUPTCY CODE (INCLUDING SECTION 1141 THEREOF) OR ANY OTHER DOCUMENT FILED IN THE CHAPTER 11 CASES SHALL IN ANY WAY BE CONSTRUED TO DISCHARGE, RELEASE, LIMIT, OR RELIEVE THE DEBTORS, THE REORGANIZED DEBTORS, OR ANY OTHER PARTY, IN ANY CAPACITY, FROM ANY LIABILITY OR RESPONSIBILITY WITH RESPECT TO ANY CLAIM ARISING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST THE RELEASED OR EXCULPATED PARTIES.  THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY SHALL NOT BE ENJOINED OR PRECLUDED FROM ENFORCING SUCH LIABILITY OR RESPONSIBILITY BY ANY OF THE PROVISIONS OF THE PLAN, CONFIRMATION ORDER, BANKRUPTCY CODE, OR ANY OTHER DOCUMENT FILED IN THE CHAPTER 11 CASES.

D.    *Exculpation*

UPON AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE DEBTORS AND THEIR DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, RESTRUCTURING CONSULTANTS AND OTHER PROFESSIONAL ADVISORS AND AGENTS WILL BE DEEMED TO HAVE SOLICITED ACCEPTANCES OF THIS PLAN IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE , INCLUDING SECTION 1125(E) OF THE BANKRUPTCY CODE.

EXCEPT WITH RESPECT TO ANY ACTS OR OMISSIONS EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS, THE EXCULPATED PARTIES SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING, OR EFFECTING THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS; <u>PROVIDED</u> THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL

ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; <u>PROVIDED FURTHER</u> THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING HIS, HER OR ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE PLAN OR ANY OTHER RELATED DOCUMENT, INSTRUMENT, OR AGREEMENT.

NOTHING IN THIS ARTICLE SHALL LIMIT THE LIABILITY OF THE DEBTORS' PROFESSIONALS OR THE CREDITORS' COMMITTEE TO THEIR RESPECTIVE CLIENTS PURSUANT TO DR 6-102 OF THE CODE OF PROFESSIONAL RESPONSIBILITY, N.Y. COMP. CODES R. & REGS. TIT. 22 SECTION 1120.8 RULE 1.8(H)(I) (2009), AND ANY OTHER STATUTES, RULES OR REGULATIONS DEALING WITH PROFESSIONAL CONDUCT TO WHICH SUCH PROFESSIONALS ARE SUBJECT.

E.    *Injunction*

THE SATISFACTION, RELEASE AND DISCHARGE PURSUANT TO THIS ARTICLE X OF THE PLAN SHALL ALSO ACT AS AN INJUNCTION AGAINST ANY PERSON BOUND BY SUCH PROVISION AGAINST COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, OR RECOVER ANY CLAIM OR CAUSE OF ACTION SATISFIED, RELEASED, OR DISCHARGED UNDER THE PLAN OR THE CONFIRMATION ORDER TO THE FULLEST EXTENT AUTHORIZED OR  PROVIDED BY THE BANKRUPTCY CODE, INCLUDING, WITHOUT LIMITATION, TO THE EXTENT PROVIDED FOR OR AUTHORIZED BY SECTIONS 524 AND 1141 THEREOF.

F.    *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns.

## ARTICLE X.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.        Ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.        Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.        Adjudicate, decide or resolve any and all matters related to Causes of Action;

7.        Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.        Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.        Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.        Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.        Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

12.        Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.        Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

14.        Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.        Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.        Enter an order or final decree concluding or closing the Chapter 11 Cases;

17.        Adjudicate any and all disputes arising from or relating to distributions under the Plan;

18.        Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.        Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.        Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan (other than any dispute arising after the Effective Date under, or directly with respect to, the Exit Credit Documents, which such disputes shall be adjudicated in accordance with the terms of the Exit Credit Documents);

41

21.      Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.      Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

23.      Enforce all orders previously entered by the Bankruptcy Court; and

24.      Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XI.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

A.      *Modification of Plan*

Subject to the limitations contained in the Plan: (1) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

For the avoidance of doubt, the Debtors, with the consent of the Prepetition First Lien Steering Committee and in consultation with the Creditors' Committee, may elect to structure the transactions contemplated by the Plan as a purchase of the Debtors' assets (as described in Section IV.C. herein) and may modify the Plan as necessary to implement such election without resolicitation.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation of Plan*

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests

(irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Fees and Expenses of the Prepetition First Lien Steering Committee*

On the Effective Date, the Reorganized Debtors shall pay in full in Cash all reasonable and documented fees and expenses of the members of the Prepetition First Lien Steering Committee and their counsel through the Effective Date; <u>provided</u> that prior to, and as a condition of, payment, notice of any such fees and expenses shall be served on the United States Trustee, the Debtors and the Committee on five (5) business days notice along with reasonably detailed fee invoices, and <u>provided</u> <u>further</u> that in no event shall such fees and expenses exceed $300,000 in the aggregate.

D.      *Payment of Fees and Expenses of Prepetition Second Lien Agent*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall pay in full in Cash all reasonable and documented fees and expenses of the Prepetition Second Lien Agent and its counsel through the Effective Date; <u>provided</u> that prior to, and as a condition of, payment, notice of any such fees and expenses shall be served on the United States Trustee, the Debtors and the Committee on five (5) business days notice along with reasonably detailed fee invoices, and <u>provided</u> <u>further</u> that in no event shall such fees and expenses exceed $70,000 in the aggregate.

E.      *Payment of Fees and Expenses of the Senior Notes Indenture Trustee*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall pay in full in Cash all reasonable and documented fees and expenses of the Senior Notes Indenture Trustee and its counsel through the Effective Date and usual and customary fees of the Senior Notes Indenture Trustee for services rendered post-Effective Date to implement the Plan; <u>provided</u> that prior to, and as a condition of, payment, notice of any such fees and expenses shall be served on the United States Trustee, the Debtors and the Committee on five (5) business days notice along with reasonably detailed fee invoices, and <u>provided</u> <u>further</u> that in no event shall such fees and expenses exceed $250,000 in the aggregate.

F.      *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

G.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

H.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

I.      *Service of Documents*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| Debtors | Counsel to the Debtors |
|---|---|
| Sbarro, Inc.<br>401 Broadhollow Road<br>Melville, New York 11747<br>Attn.: Stuart Steinberg | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn.: Edward O. Sassower and Nicole L. Greenblatt<br><br>and<br><br>Curtis, Mallet-Prevost, Colt & Mosle LLP<br>101 Park Avenue<br>New York, New York 10178<br>Attn: Steven J. Reisman |
| **Counsel to the Agent for the<br>First Lien Prepetition and DIP Lenders** | **Counsel to the Second Lien Prepetition Lenders** |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attn: Timothy Graulich and Steven Krause | Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York<br>Attn.: Susheel Kirpalani and Daniel Holzman |
| **Counsel to the Creditors' Committee** | **Indenture Trustee for the Senior Notes** |
| Otterbourg, Steindler, Houston & Rosen, P.C.<br>230 Park Avenue<br>New York, New York 10169<br>Attn.: Scott L. Hazan and David M. Posner | The Bank of New York<br>Attn.: Corporate Trust Division, Corporate Finance Unit<br>101 Barclay Street, SW<br>New York, NY 10286 |
| **Counsel to the Ad Hoc<br>Group of Certain Holders of the Senior Notes** | **United States Trustee** |
| Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, New York 10004-2498<br>Attn.: Andrew G. Dietderich | Office of the United States Trustee<br>for the Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn.: Elisabetta Gasparini and Paul K. Schwartzburg |

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

In accordance with Bankruptcy Rules 2002 and 3020(c), within ten (10) Business Days of the date of entry of the Confirmation Order, the Debtors shall serve the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; <u>provided</u> that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the

44

Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. To supplement the notice described in the preceding sentence, within twenty days of the date of the Confirmation Order the Debtors shall publish the Notice of Confirmation once in *The Wall Street Journal* (National Edition).  Mailing and publication of the Notice of Confirmation in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

J.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

K.      *Entire Agreement*

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

L.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided that corporate governance matters relating to Debtors or Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

M.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date or the Solicitation Date, as applicable.  After the exhibits and documents are filed, copies of such exhibits and documents shall have been available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' private website at http://dm.epiq11.com/sbarro or the Bankruptcy Court's website at www.nysb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

N.      *Nonseverability of Plan Provisions upon Confirmation*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the

foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

O.       *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

P.       *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control

Q.       *Dissolution of Creditors' Committee*

On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; <u>provided</u> that after the Effective Date and the conclusion of any appeals or other challenges or matters with respect to entry of the Confirmation Order, the Creditors' Committee's functions shall be restricted to, and the Creditors' Committee shall not be heard on any issue except, obtaining a Final Order of the Bankruptcy Court authorizing or approving Accrued Professional Compensation of its Retained Professionals, or the representation of the Creditors' Committee in connection with the review of and the right to be heard in connection with all Professional Fee Claims.  Following the Confirmation Date, in accordance with the foregoing, the attorneys and financial advisors to the Creditors' Committee shall be entitled to assert any reasonable claims for compensation for services rendered or reimbursement for expenses incurred after the Confirmation Date in connection with services to the Creditors' Committee.

R.       *Section 1125(e) Good Faith Compliance*

The Debtors, Reorganized Debtors, the Prepetition First Lien Agent, the DIP Agent, the Creditors' Committee, and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

S.       *Further Assurances*

The Debtors, Reorganized Debtors, all Holders of Claims receiving distributions hereunder and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

T.       *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

Respectfully submitted, as of the date first set forth above,

**SBARRO, INC. (on behalf of itself and all other Debtors)**

By:     */s/ Nicholas McGrane*
Name:    Nicholas McGrane
Title:    Chief Executive Officer of Sbarro

**<u>EXHIBIT 1</u>**

Existing Letters of Credit

## EXHIBIT 1

Existing Letters of Credit

| Lender | Face Amount of Letters of Credit Outstanding | Beneficiary | Expiration Date |
|---|---|---|---|
| BANK OF AMERICA, N.A. | $665,054.30 | Sol Goldman Investments LLC<br>640 Fifth Avenue,<br>Third Floor<br>New York, NY 10019 | February 29, 2012 |
| BANK OF AMERICA, N.A. | $45,833.33 | Marketplace Redwood Ltd Partnership<br>One Wells Avenue<br>Newton, MA 02459 | December 31, 2011 |
| BANK OF AMERICA, N.A. | $1,000,000.00 | 1604-1610 Broadway Owner, LLC<br>c/o SL Green Management Corp.<br>420 Lexington<br>New York, NY 10170 | December 31, 2011 |
| BANK OF AMERICA, N.A. | $45,833.33 | Marketplace Redwood Ltd Partnership<br>One Wells Avenue<br>Newton, MA 02459 | December 31, 2011 |
| BANK OF AMERICA, N.A. | $108,682.83 | Hauppauge, LLC<br>c/o Lerner-Heidenberg Properties<br>234 Closter Dock Road<br>Closter, NJ 07624 | December 31, 2011 |
| BANK OF AMERICA, N.A. | $90,667.44 | Deer Park, LLC<br>c/o Lerner-Heidenberg Properties<br>234 Closter Dock Road<br>Closter, NJ 07624 | November 30, 2011 |
| **TOTAL** | $1,956,071.23 | | |